#06 70 89

ORIGINAL

FILED
SEP 1 0 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**FORD MOTOR COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES of AMERICA,**

**Defendant.**

**No.** 07-658 T

**COMPLAINT**

Ford Motor Company, EIN 38-0549190 ("Ford") hereby institutes this suit for refund of internal revenue taxes erroneously or illegally assessed or collected by the defendant, United States of America. As the basis for its case Ford alleges as follows:

1. The Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et. seq.* ("FICA"), imposes an excise tax on every employer who pays wages with respect to employment. FICA also imposes a tax on wages received by an individual with respect to his or her employment.

2. In the fourth quarters of 1996 and 1999, Ford made lump-sum payments as described in detail below ("Payments") to Ford's employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (hereinafter, the "UAW").

3. Ford paid to defendant United States FICA employer tax (section 3111 of the Internal Revenue Code of 1986, as amended ("Code")) with respect to the Payments. Ford also withheld FICA employee tax (section 3101 of the Code) from the Payments and paid the withheld amounts to the United States on the employees' behalf.

4. Ford made the lump-sum Payments to induce Ford's employees to ratify new collective bargaining agreements ("CBAs"). As described in detail below, these ratification inducement Payments were not conditioned on the performance of services and had no relationship to any services or to any of the factors used to determine compensation for services such as seniority, job classification, or rate of pay.

5. The Payments were not remuneration for services and thus were not wages for FICA purposes. FICA taxes did not apply to the Payments, and Ford is entitled to a refund of the FICA employer tax Ford paid to the defendant. Ford also is entitled to a refund, on behalf of its employees, of the FICA employee tax Ford withheld and paid to the defendant.

**Required Special Matters and Other Jurisdictional Facts**

6. Tax Years or Periods for which Refunds Are Sought. The tax periods for which Ford seeks refunds are the quarters ending December 31, 1996 and December 31, 1999.

7. Amounts, Dates, and Places of Payments to Be Refunded. The amounts, dates, and places of the tax payments to be refunded are:

| Payment Made for Quarter Ended | Amount of Payment—Employer Tax | Amount of Payment—Employee Tax | Date of Payment | Place of Payment |
|---|---|---|---|---|
| December 31, 1996 | $14,861,649 | $14,861,649 | January 28, 1997 | Payment made electronically |
| December 31, 1999 | $ 7,284,677 | $ 7,284,677 | January 24, 2000 | Payment made electronically |

8. Dates and Places Returns Were Filed. The Forms 941 (Employer's Quarterly Federal Tax Returns) reporting the FICA taxes Ford paid with respect to the Payments were filed on the following dates and at the following places:

| Return for Quarter Ended | Date Return Filed | Place Return Filed |
|---|---|---|
| December 31, 1996 | January 28, 1997 | Cincinnati, Ohio |
| December 31, 1999 | January 24, 2000 | Cincinnati, Ohio |

9. Name, Address, and Identification Number of Taxpayer Appearing on the Returns. The name, address, and identification number Ford used on the returns in issue was:

| Return for Quarter Ended | Name on Return | Address on Return | EIN on Return |
|---|---|---|---|
| December 31, 1996 | Ford Motor Company | The American Road<br>Room 530<br>Dearborn, MI 48121 | EIN 38-0549190 |
| December 31, 1999 | Ford Motor Company | Tax Office,<br>Room 612 WHQ<br>American Road<br>Dearborn, MI 48121 | EIN 38-0549190 |

10. Ford is a Delaware corporation engaged in the manufacture, sale, and financing of motor vehicles.

11. Dates and Places Claims for Refund Were Filed. Ford timely filed claims for refund of the FICA taxes paid with respect to the Payments as set forth in the table below. True and correct copies of the refund claims as originally filed are attached as Exhibits A and B to this Complaint. A true and correct copy of a supplemental protest of defendant's proposed disallowance of Ford's original refund claims, which protest supplemented those original refund claims by addressing defendant's issuance of Rev. Rul. 2004-109, 2004-2 C.B. 958 (November

23, 2004), is attached as Exhibit C to this Complaint. Ford's supplemental protest was dated February 28, 2005 and was stamped received by the defendant on March 2, 2005.

| Original Refund Claim (Form 843) for Quarter Ended | Date Claim Filed | Place Claim Filed |
|---|---|---|
| December 31, 1996 | April 17, 2000 | Cincinnati, Ohio |
| December 31, 1999 | April 11, 2001 | Dearborn, Michigan |

12. Actions on Claims Taken by Department or Agency of the United States—Notices of Claim Disallowance. The Internal Revenue Service ("Service") considered Ford's refund claims and issued notices of disallowance of those claims on the following dates:

| Refund Claim for Quarter Ended | Date of Notice of Claim Disallowance |
|---|---|
| December 31, 1996 | September 29, 2005 |
| December 31, 1999 | September 29, 2005 |

13. Money Mandating Statutes. Code section 6413(b) provides in pertinent part that any overpayment of FICA tax shall be refunded. More generally, Code section 6402(a) provides in pertinent part that the Secretary of the Treasury is authorized to credit the amount of any overpayment of tax, including any interest allowed thereon, against any internal revenue tax liability of the person who made the overpayment and shall refund any balance to such person.

**Statement of Grounds upon which the Court's Jurisdiction Depends**

14. This Complaint seeks refunds of internal revenue taxes erroneously or illegally assessed or collected by the United States. Ford has paid the full amount of FICA taxes (both employer's and employees' portions) defendant has assessed for the quarters in issue in this Complaint. Ford filed the administrative claims for refund required by Code section 7422 as

prerequisites to the maintenance of this suit within the time limits imposed by Code section 6511 on the filing of such claims. In addition, this Complaint is being filed within the time limits imposed by Code section 6532 on the beginning of this suit. Finally, Ford owns the claim asserted in this suit and that claim has not been transferred or assigned. Accordingly, this Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1346(a)(1).

15. Because this suit asserts a claim for judgment against the United States founded upon the Constitution, an Act of Congress, or a regulation of an executive department, this Court also has jurisdiction over this suit pursuant to 28 U.S.C. § 1491(a)(1).

16. Treas. Reg. § 31.6402(a)-2(a)(2) provides that every claim filed by an employer for refund or credit of employee FICA tax collected from an employee shall include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund or credit. Treas. Reg. § 31.6402(a)-2(a)(2) further provides that every claim filed by an employer for refund or credit of employee FICA tax collected from an employee in a calendar year prior to the year in which the credit or refund is claimed also shall include a statement that the employer has obtained from the employee a written statement to the effect that (a) the employee has not claimed refund or credit of the amount of the overcollection, or if so, such claim has been rejected, and (b) the employee will not claim refund or credit of such amount. These requirements are not jurisdictional, and need not be complied with before this Court has considered the merits of the taxpayer's claim. *See Chicago Milwaukee Corp. v. United States*, 40 F.3d 373 (Fed. Cir. 1994). Ford will obtain the required statements from its employees at the appropriate time and will adjust the amounts of the refunds claimed in this suit accordingly.

**Statement of Ford's Claim for Relief and Grounds Entitling Ford to that Relief**

**Count One: Ford Is Entitled to a Refund of FICA Taxes Paid with Respect to the Payments Because the Payments Were Not Wages**

17. The FICA employer and employee taxes are imposed on "wages" paid or received with respect to "employment." *See* Code sections 3111 and 3101. For this purpose, "wages" means all "remuneration for employment," and "employment" means "any service, of whatever nature, performed . . . by an employee for the person employing him . . . ," subject to certain exceptions not relevant to this case. *See* Code sections 3121(a) and (b). Taking the definitions of wages and employment together, FICA taxes apply to remuneration for services an employee performs for his employer.

18. In 1996, Ford and its UAW-represented employees were bound by a CBA that expired on September 14, 1996. Agreement on a new CBA was not reached by the expiration date and negotiations continued after that date.

19. A new CBA satisfactory to union negotiators was proposed in early September 1996, but the negotiators and Ford were concerned that union employees might not approve the proposed new CBA. Accordingly, on or about September 15, 1996, Ford and the UAW agreed that to induce UAW members to ratify the proposed new CBA Ford would make lump-sum payments to Ford's employees upon ratification.

20. The proposed new CBA provided that, if the CBA were ratified, Ford would pay $2,000 to each UAW employee on Ford's active employment roll on September 30, 1996 (*i.e.*, on the date the CBA, if approved by the employees, would become effective). The employees ultimately ratified the CBA, and Ford made the $2,000 payments to each employee as provided in that agreement.

21. Ford agreed to make and made the $2,000 payments to induce Ford's employees to ratify the new CBA. The payments were not made as remuneration for services. Indeed, the payments were not conditioned on the performance of services and bore no relationship to services or to any of the factors used to determine compensation for services.

22. In 1999, Ford once again made lump-sum payments to induce UAW-represented employees to ratify a new CBA. These payments (collectively referred to in this Complaint, together with the 1996 payments, as the "Payments") were similar in all respects to the 1996 Payments described above, except that the 1999 Payments were $1,350 to each employee (other than temporary part-time employees) on the active employment roll as of the effective date of the 1999 CBA.

23. FICA taxes do not apply to all payments or other benefits an employer provides to its employees in the course of the employer/employee relationship. *See, e.g., Rowan Cos., Inc. v. United States*, 452 U.S. 247 (1981) (meals and lodging provided to offshore drilling platform employees were not FICA wages; also explaining that because wages is a narrower concept than income, employer provided reimbursements can be income to employees without necessarily being wages for withholding tax purposes).

24. Numerous Court of Claims decisions stress the divergence between "income" and "remuneration for services" or "wages." *See, e.g., Allstate Ins. Co. v. United States*, 209 Ct. Cl. 1 (1976) (employer payments or reimbursements for employee indirect moving expenses were not remuneration for services performed and thus were not wages for income tax withholding purposes); *Humble Pipe Line Co. v. United States*, 194 Ct. Cl. 944, 950 (1971) (same holding; stating that "The term 'wages' has a much narrower meaning than the term 'income' . . . ."); *Humble Oil & Refining Co. v. United States*, 194 Ct. Cl. 920, 930 (1971)

(same holding; stating that not every payment, or other economic gain, flowing from an employer to an employee constitutes compensation for services performed upon which withholding is required); *Peoples Life Ins. Co. v. United States*, 179 Ct. Cl. 318, 332 (1967) (employer paid expenses for attending employee conventions were not remuneration for services; stating that "There is no necessary correlation between what constitutes 'wages' or 'remuneration' paid by an employer within the meaning of the employment or withholding tax sections, and what constitutes 'income' to the employee within the meaning of the 'gross income' sections.").

25. The Service has long recognized that a payment made to induce agreement to an employment contract is not remuneration for services and thus is not wages, where the payment is not conditioned on the performance of services or on continuing employment. Rev. Rul. 58-145, 1958-1 C.B. 360, *revoked*, Rev. Rul. 2004-109, 2004-2 C.B. 958, considered signing bonuses paid to baseball players for signing their first contracts. Rev. Rul. 58-145 concluded that, where the bonus payments were not predicated on the performance of services by the player or otherwise contingent on continuing employment, the bonuses were not remuneration for services and thus were not wages for income tax withholding purposes. By contrast, where the bonus payments were contingent on the performance of services or continued employment, Rev. Rul. 58-145 concluded that the bonuses were remuneration for services and thus wages.

26. Rev. Rul. 58-145 remained the published position of the Service on the status of contract signing bonuses as wages or non-wages for over 45 years. In 1999 and 2000, the President proposed changing the non-wage status of contract signing bonuses not conditioned

on the performance of services,[1] as recognized by Rev. Rul. 58-145, but Congress declined to change this longstanding law. The Joint Committee Staff summarized the law in effect at the time of the President's proposals as follows:[2]

> Under present law, the line between whether a signing bonus or similar payment negotiated as part of an employment contract is includible in wages for FICA and FUTA tax purposes and is subject to income tax withholding is determined by whether the payment is contingent upon the performance of future services. If an individual is not required to perform future services after receipt of the signing bonus or other type of payment, then such bonus or payment is not considered remuneration for employment.

27. Because the 1996 and 1999 Payments were not contingent on the performance of services and bore no relationship to services or to any of the factors used to determine compensation for services, they were not remuneration for services and were not wages for FICA purposes. Accordingly, no FICA tax was due with respect to the Payments and Ford is entitled to a refund of the taxes paid.

**Count Two: Rev. Rul. 58-145's Longstanding Conclusion that Contract Signing Bonuses Not Conditioned on the Performance of Services Are Not Wages Continues to Control Ford's Case, Because the Service's Partially Retroactive Change of Position During Ford's Pursuit of its Refund Claims Irrationally Discriminates Against Ford**

28. In support of this alternative ground supporting Ford's claims for refund, Ford repeats the allegations in paragraphs 1-27 above and in addition alleges the following:

29. In Rev. Rul. 58-145, *supra*, the Service recognized that a contract signing bonus, not conditioned on the performance of services, was not remuneration for employment

---

[1] *See* Joint Committee on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 2000 Budget Proposal, JCS-1-99 (Feb. 22, 1999) ("2000 Proposal"), at 317-319; Joint Committee on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 2001 Budget Proposal, JCS-2-00 (March 6, 2000) ("2001 Proposal"), at 470-473.

[2] *See* the 2000 Proposal at 318; 2001 Proposal at 471.

and thus was not wages. Rev. Rul. 58-145 remained the Service's position on the non-wage status of such bonuses for 45 years and Congress did not act on proposals to change the law.

30. In 2004, during Ford's pursuit of the administrative refund claims involved in this action, the Service issued Rev. Rul. 2004-109, *supra*. Rev. Rul. 2004-109 considered two fact situations. The first situation involved the precise facts of Rev. Rul. 58-145, *i.e.*, a contract signing bonus paid to a baseball player pursuant to an employment contract that was not contingent on the performance of services. The second situation involved the facts of Ford's case, *i.e.*, a bonus paid to employees to induce the ratification of a CBA, where all employees on the CBA's effective date received the same amount, the payment was not contingent on the performance of past or future services, and the payment bore no relationship to seniority or any other factor used to determine compensation.

31. Rev. Rul. 2004-109 asserted that Rev. Rul. 58-145 had erred by concluding that whether a signing or ratification bonus was wages depended on whether the bonus was conditioned on the performance of services. According to Rev. Rul. 2004-109, all payments received in connection with the "establishment, maintenance, furtherance, alteration, or cancellation of the employer-employee relationship or any of the terms and conditions thereof" are wages, unless the employee provides "clear, separate, and adequate consideration" for the payments that is not dependent on the employment relationship. Rev. Rul. 2004-109 thus applied a completely different legal analysis from the analysis applied by Rev. Rul. 58-145.

32. The Service decided not to apply its change of position in Rev. Rul. 2004-109 equally to all similarly situated taxpayers. The ruling applies only prospectively to signing bonuses paid to employees who are entering into their *initial employment* (*i.e.*, their *first contracts*) under facts and circumstances substantially the same as those in Rev. Rul. 58-145.

The Service asserts that this relief from the retroactive application of Rev. Rul. 2004-109 does not apply to Ford because the contracts were not for initial employment.

33. Rev. Rul. 58-145 involved a ballplayer who was signing his first contract. The principle recognized by that ruling, however, was that a signing bonus is not remuneration for employment and thus is not wages where it is not conditioned on the performance of services. Whether a contract is the employee's first contract simply is not relevant to the determination whether that contract is conditioned on the performance of services.

34. The changed position asserted by Rev. Rul. 2004-109 is that all payments made in connection with the establishment or maintenance of the employer/employee relationship are wages, unless the employee provides clear, separate, and adequate consideration for the payments. Whether a contract is the employee's first contract also is irrelevant to the determination whether the employee has provided separate consideration for any payment received from the employer.

35. The Service's newly changed position set forth in Rev. Rul. 2004-109 is erroneous. Many payments made or benefits conferred in connection with the employer/employee relationship are not remuneration for employment and thus are not wages, even if no separate consideration is provided by the employee. Whether or not the Service's changed position is correct, however, the Service must apply that position equally to all similarly situated taxpayers, absent a rational reason for disparate treatment. *See, e.g.*, *United States v. Kaiser*, 363 U.S. 299, 308 (1960) (Frankfurter, J. concurring) ("The Commissioner cannot tax one and not tax another without some rational basis for the difference."); *Oshkosh Truck Corp. v. United States*, 123 F.3d 1477, 1481 (Fed. Cir. 1997) (concluding that the Service abused its discretion by applying an excise tax markup to truck sales indistinguishable from sales the

Service had exempted from markup in regulations; stating that the Service's position was "inconsistent with the frequently expressed view that, unless there is a rational reason for different treatment, similarly-situated taxpayers should be treated similarly."); *International Business Machines Corp. v. United States*, 170 Ct. Cl. 357, 367 (1965) ("*IBM*") ("Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed."; "The Internal Revenue Service does not have *carte blanche*. Its choice [to make a ruling prospective or retroactive] must be a rational one, supported by relevant considerations.").

36. The Service cannot apply a new Revenue Ruling prospectively to some taxpayers and retroactively to others without a rational reason for the disparate treatment. Where the Service's discriminatory application of the new ruling does not have a rational basis, all taxpayers are entitled to have the benefit of prospective application of the new position (and thus to continued application of the old position)—even if the position taken in the new ruling is a substantively correct interpretation of the law. *See Exchange Parts Co. of Fort Worth v. United States*, 150 Ct. Cl. 538 (1960) (taxpayer entitled to prospective application of new ruling changing Service's published position, and thus to benefit of the prior position, where Service used irrational factor to distinguish between prospective and retroactive application of the new ruling); *Connecticut Railway and Lighting Co. v. United States*, 135 Ct. Cl. 650 (1956) (same); *Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001) (same); *cf. IBM* (Service had issued private ruling that one computer manufacturer's machines were not subject to excise tax; Service then revoked that ruling prospectively, while issuing a private ruling that IBM's substantially similar machines were subject to the tax, effective retroactively; held, making

IBM's ruling effective retroactively was an abuse of discretion and IBM was entitled to the same prospective application of the Service's new position as IBM's competitor).

37. As published, the retroactive or prospective application of Rev. Rul. 2004-109 depends on whether the payment is made in connection with an employee's first contract. Whether a contract is a first contract is irrelevant to the application of the longstanding legal principle recognized in Rev. Rul. 58-145 and is also irrelevant to the application of the Service's changed position in Rev. Rul. 2004-109. Thus, the fact that Ford's CBAs are not contracts of initial employment does not and cannot justify the discriminatory retroactive application of Rev. Rul. 2004-109 to Ford's case.

38. The Service cannot apply a new position retroactively to Ford while applying it prospectively to similarly situated taxpayers. Under Rev. Rul. 58-145 and the principle long recognized by that ruling, the Payments are not wages because they were not conditioned on the performance of services. That principle must control Ford's case, so that Ford receives the equal treatment to which it is entitled.

**Demand for Judgment**

Wherefore, Ford respectfully asks this Court to enter a judgment that Ford is entitled to refunds of the $44,292,652 in FICA taxes Ford paid to the defendant with respect to the Payments, plus interest as provided by law.

Ford also requests such further and additional relief as may be proper.

Signed: ______________________

Date: September 10, 2007

Thomas D. Johnston
Counsel of Record
c/o Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 508-8022
Facsimile: (202) 508-8100

Of Counsel:

Ian C. Friedman
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, DC 20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI 48121

# EXHIBIT A

## 1996

## Original Claim for Refund

Form **843**
(Rev. January 1997)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).*

Please type or print

| | |
|---|---|
| Name of claimant<br>**Ford Motor Company** | Your social security number |
| Address (number, street, and room or suite no.)<br>**P.O. Box 1899** | Spouse's social security number |
| City or town, state, and ZIP code<br>**Dearborn, Michigan 48121** | Employer identification number<br>**38 : 0549190** |
| Name and address shown on return if different from above<br>**Attention: Timithoy McGraw, Senior Tax Counsel**<br>**Ford World Headquarters, Room 626** | Daytime telephone number<br>**( 313 ) 377-8085** |
| 1 Period—prepare a separate Form 843 for each tax period<br>From **January 1**, 19 **96**, to **December 31**, 19 **96** | 2 Amount to be refunded or abated<br>$ **30,600,000** |

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶ ____________

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

**Ford Motor Company paid and withheld FICA and FUTA taxes on a one time lump sum bonus payment to employees in 1996**

**Revenue Ruling 58-145 held that such bonuses, which are not for the performance of services, are not subject to employment taxes.**

**Attached is Form 941c as well as a summary of legal principals in support of the refund claim.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Diane P. Dossin
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Diane P. Dossin, Assistant Tax Officer April 14, 2000
Signature Date

## Medicare Tax Adjustment

| | (a) Period Corrected (For quarterly returns, enter date quarter ended. For annual returns, enter year.) | (b) Wages and Tips Previously Reported for Period | (c) Correct Wages and Tips for Period | (d) Medicare Tax Adjustment |
|---|---|---|---|---|
| 1 | | 1020390741.25 | 820390741.25 | (5,800,000) |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | Totals. If more than one page, enter totals on first page only . . . ▶ | | | (5,800,000) |

| | | | |
|---|---|---|---|
| 6 | Net Medicare tax adjustment. If more than one page, enter total of **ALL** columns (d) on first page only. Enter here and on the appropriate line of the return with which you file this form . . . ▶ | 6 | (5,800,000) |
| 7 | Net wage and tip adjustment. If more than one page, enter total of **ALL** lines 7 on first page only. If line 5(c) is smaller than line 5(b), enter difference in parentheses . . . . . . . . . . . . . ▶ | 7 | (200,000,000) |

## Explanation of Adjustments

**Please see attached.**

# MEMORANDUM IN SUPPORT OF FICA AND FUTA TAX REFUND CLAIMS

**of**

**FORD MOTOR COMPANY**

**EIN: 38-0549190**

This memorandum sets forth the facts and legal arguments in support of the claims for refund reflected on the attached Forms 843 and accompanying Form filed by Ford Motor Company ("Ford" or the "Company").

In accordance with Reg. § 31.6402(a) 2(a)(2)(i) and Rev. Rul. 81-310, 1981-2 C.B. 241, Ford is working on soliciting and will retain as part of its records the written consents of the affected employees and required statements from the employees as to any claims or credits by the employees with respect to the employee share of FICA taxes.

In the last quarter of 1996, the Company paid to its represented employees a one time lump sum bonus and subjected the bonuses to FICA and FUTA taxes. The bonuses were paid as a consequence of the collective act of the employees in ratifying the applicable collective bargaining agreement that the Company had negotiated with the workers' unions. In connection with the ratification, a $2,000 bonus was paid to each represented employee on the active employment roll of the Company as of the effective date of the new agreement. The same bonus was paid to each such employee without regard to whether the employee actually voted for or against ratification, without regard to the employee's past services for the Company, and without regard to whether the employee continued performing services for the Company.

In order for amounts an employer pays its employees to be subject to FICA and FUTA taxes, the amounts must be wages paid for the performance of services by the employee.

Code section 3121(a) and section 3121(b); Code section 3306(b) and (c); Reg. § 31.3121(a)-1(b) and § 31.3306(c)-2(b). The Internal Revenue Service has ruled that bonuses paid solely for signing a contract, and not conditioned on the performance of future services or continued employment, are not wages. Rev. Rul. 58-145, 1958-1 C.B. 360. The rationale of Rev. Rul. 58-145 was that the signing bonus therein was not compensation for personal services, but was paid for the promises made by the individual in agreeing to be bound by the contract. GCM 35396 (July 11, 1973).

The bonuses paid by the Company were not paid in consideration for the performance of services by the employees, but were paid for the promises implicit in the ratification of the applicable collective bargaining agreement, i.e., the promises to be bound by the wage, working condition, and other terms of the agreement. Like the signing bonuses in Rev. Rul. 58-145, the Company's bonuses are not wages subject to FICA and FUTA taxes. Consequently, Ford and its employees are entitled to a refund of the FICA taxes paid and withheld with respect to the bonuses.

The attached claims reflect a $200,000,000 wage adjustment (estimated 100,000 UAW employees receiving a $2,000 signing bonus) as a consequence of the corrected characterization of the bonuses as not wages, but Ford requests a refund of a larger or lesser amount than shown on the forms, as determined based on data to be submitted. First, Ford is working to determine the precise wage adjustment that would result from the characterization of the bonuses as not wages and will supplement this submission with that information. In addition, Ford is working to determine what proportion of the employees who received the bonuses had already reached the $62,700 social security wage base in 1996 so that the proper characterization of the bonuses would not result in a refund of the social security taxes (as contrasted to the

Medicare taxes). The enclosed forms assume all individuals had not reached the wage base. Finally, even once these wage and wage base amounts are determined, the amount of the refund with respect to the collective employee share of FICA taxes will depend on the extent to which the affected employees consent to Ford seeking the refunds on their behalf.

# EXHIBIT B

## 1999

## Original Claim for Refund

Office of Tax Counsel
Tami Lopez, Room 629-A6

Ford Motor Company
P.O. Box 1899
Dearborn, Michigan 48121-1899

April 11, 2001

Ms. Peggy Harbaugh
Schaefer Building – Suite 203
13530 Michigan Ave.
Dearborn, MI 48126

**RE: IDR #31 Supplemental Response for 1999 UAW FICA Refund Claim**

Dear Peggy:

This is a supplemental response to IDR #31 regarding whether there were any other employment tax claims in the process of being filed in the near future. Attached please find Form 843, Claim for Refund and Request for Abatement, for the 1999 UAW lump-sum bonus overpayment of FICA taxes.

Additionally, attached are the CD-ROM's with the 1996 and 1999 payroll reports for the UAW refund claims for the overpayment of FICA taxes.

As previously discussed Form 941C is not attached at this time because of the disruption that a "proposed" 941C causes to the payroll records. The amending of the 941C's should be coordinated with Kathie Watson in Ford Motor Company Payroll Department when appropriate.

If you have any further questions or require more information please contact me at the above address or at (313) 845-4114.

Respectfully,

Tami Lopez

Form **843**
(Rev. January 1997)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund of fuel taxes;*
- *An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).*

Please type or print

| | |
|---|---|
| Name of claimant<br>Ford Motor Company | Your social security number<br>: : |
| Address (number, street, and room or suite no.)<br>PO BOX 1899 | Spouse's social security number<br>: : |
| City or town, state, and ZIP code<br>Dearborn, MI 48121 | Employer identification number<br>38 : 0549190 |
| Name and address shown on return if different from above<br>Attention: Tami Lopez, Room 629-A6 (313) 845-4114 and Timothy McGraw, Room 626 (313) 377-8085 Ford World Headquarters Building, 1 The American Road | Daytime telephone number<br>( 313 ) 377-8085 |
| 1 Period—prepare a separate Form 843 for each tax period<br>From January 1, 19 99, to December 31, 19 99 | 2 Amount to be refunded or abated<br>$ 17,628,956.94 |

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶ ____________

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

Ford Motor Company paid and withheld FICA and FUTA taxes on a one-time lump sum bonus payment to employees in 1999.

Revenue Ruling 58-145 held that such bonuses, which are not held for the performances of services, are not subject to employment taxes.

Attached is (1) a summary of legal principals in support of the refund claim, (2) a CD-ROM containing the list of UAW employees receiving the lump sum bonus and the amount of FICA and FUTA taxes withheld, (3) a summary spreadsheet listing the first and last 10 employees illustrating the sum totals and (4) a copy of the 1999 UAW contract language regarding the lump-sum bonus is also provided.

Form 941C will be provided when appropriate. Due to the large number of employees, Ford Motor Company files numerous 941C's and any 941C filed at this point in time would soon be obsolete.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Diane P. Dossin
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date 4/10/01

Diane P. Dossin, Assistant Tax Officer
Signature Date April, 2001

**MEMORANDUM IN SUPPORT OF FICA
TAX REFUND CLAIMS
UAW LUMP SUM BONUS 1999**

**of**

**Ford Motor Company
EIN: 38 - 0549190**

This memorandum sets forth the facts and legal arguments in support of the claims for refund reflected on the attached Forms 843 and accompanying Form 941c filed by Ford Motor Company ("Ford").

In accordance with Reg. § 31.6402(a) 2(a)(2)(i) and Rev. Rul. 81-310, 1981-2 C.B. 241, Ford is working on soliciting and will retain as part of its records the written consents of the affected employees and required statements from the employees as to any claims or credits by the employees with respect to the employee share of FICA taxes.

In the last quarter of 1999, Ford paid to its employees a one time lump sum bonus and subjected the bonuses to FICA and FUTA taxes. The bonuses were paid as a consequence of the collective act of the employees in ratifying the agreement that the Company had negotiated with the workers' unions. In connection with the ratification, a $1,350 bonus was paid to each employee on the active employment roll of the Company as of the effective date of the agreement. The same bonus was paid to each such employee without regard to whether the employee actually voted for ratification, without regard to the employee's past services for the Company, and without regard to whether the employee continued to perform services for the Company.

In order for amounts an employer pays its employees to be subject to FICA and FUTA taxes, the amounts must be wages paid for the performance of services by the employee.

Code section 3121(a) and section 3121(b); Code section 3306(b) and (c); Reg. § 31.3121(a)-1(b) and § 31.3306(c)-2(b). The Internal Revenue Service has ruled that bonuses paid solely for signing a contract, and not conditioned on the performance of future services or continued employment, are not wages. Rev. Rul. 58-145, 1958-1 C.B. 360. The rationale of Rev. Rul. 58-145 was that the signing bonus therein was not compensation for personal services, but was paid for the promises made by the individual in agreeing to be bound by the contract. GCM 35396 (July 11, 1973).

The bonuses paid by Ford were not paid in consideration for the performance of services by the employees, but were paid for the promises implicit in the ratification of the agreement, i.e., the promises to be bound by the wage, working condition, and other terms of the agreement. Like the signing bonuses in Rev. Rul. 58-145, Ford's bonuses are not wages subject to FICA taxes. Consequently, Ford and its employees are entitled to a refund of the FICA taxes paid and withheld with respect to the bonuses.

The attached claims reflect a wage adjustment as a consequence of the corrected characterization of the bonuses as not wages.

FORD MOTOR COMPANY
FEIN: 38-0549190
FORM 843 - CLAIM FOR REFUND AND REQUEST FOR ABATEMENT
PERIOD 1/1/99 - 12/31/99

Due to the large size of the Ford's 1999 lump sum bonus report, this schedule includes the first and last ten recipients of the 1999 lump sum bonus.

| OBS | SOCIAL | NAME | ADDRESS | CITY | STATE | ZIPCODE | GROSS | FICATAX | MEDITAX | YTDGROS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 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 | INGERSOLL,M | 9339 HEMINGWAY | REDFORD | MI | 48239 | 1350 | 83.7 | 19.58 | 22634.09 |
| 2 | 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 | LEWIS,B R | 255 WILLIAMSBURG CT | MCDONOUGH | GA | 30253 | 1350 | 83.7 | 19.58 | 19776.92 |
| 3 | 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 | WHITE,J L | 1642 SEE AVE. | HAMILTON | OH | 45011 | 1350 | 83.7 | 19.57 | 24594.64 |
| 4 | 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 | SPRAGUE,T D | 3460 CO. RD. 5 | DELTA | OH | 43515 | 1350 | 83.7 | 19.57 | 20039.43 |
| 5 | 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 | KASTEN,T M | 4212 ASBURY DR. | TOLEDO | OH | 43612 | 1350 | 83.7 | 19.57 | 14654.44 |
| 6 | 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 | DICKMAN,P W | 654 PLEASANT PLACE | TOLEDO | OH | 43609 | 1350 | 83.7 | 19.58 | 14686.67 |
| 7 | 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 | LEHMAN,L D | 715 OAK PARK | TOLEDO | OH | 43617 | 1350 | 83.7 | 19.58 | 16465.44 |
| 8 | 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 | PATTON,T T | 28300 GRIX | NEW BOSTON | MI | 48164 | 1350 | 0 | 19.57 | 101089.68 |
| 9 | 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 | BROWN,R | 4937 WILLIAMS | DEARBORN HGTS | MI | 48125 | 1350 | 83.7 | 19.58 | 41616.4 |
| 10 | 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 | LAFATA,A M | 24737 CALVIN | DEARBORN | MI | 48124 | 1350 | 83.7 | 19.58 | 10544.13 |
| 101879 | 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 | PETIT,J J | 8700 S. STONEY CRK | CARLETON | MI | 48117 | 1350 | 83.7 | 19.58 | 76823.85 |
| 101880 | 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 | JOHNSON,M A | 25350 PLEASANT CREE | BROWNSTOWN | MI | 48134 | 1350 | 83.7 | 19.58 | 53718.02 |
| 101881 | 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 | BOROWICZ,T J | 41515 HAMLIN | BELLEVILLE | MI | 48111 | 1350 | 83.7 | 19.58 | 73040.54 |
| 101882 | 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 | VOSS,D | 3960 HOLLYHOCK | W. BLOOMFIEL | MI | 48322 | 1350 | 83.7 | 19.57 | 59906.41 |
| 101883 | 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 | BROWN,R A | 24773 BALSAM COURT | FLAT ROCK | MI | 48134 | 1350 | 83.7 | 19.57 | 76935.29 |
| 101884 | 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 | HAY,G W | 1450 ANN ARBOR RD6 | PLYMOUTH | MI | 48170 | 1350 | 83.7 | 19.58 | 64733.42 |
| 101885 | 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 | SANDERS,S E | 18678 GILL | LIVONIA | MI | 48152 | 1350 | 83.7 | 19.57 | 59703.2 |
| 101886 | 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 | O DONNELL,J T | 4436 ROOSEVELT | DEARBORN HTS | MI | 48125 | 1350 | 83.7 | 19.58 | 52702.51 |
| 101887 | 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 | VICK,L J | 1803 SUPERIOR ROAD | YPSILANTI | MI | 48198 | 1350 | 83.7 | 19.58 | 65947.5 |
| 101888 | 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 | | 36911 LADYWOOD | LIVONIA | MI | 48154 | 1350 | 83.7 | 19.58 | 36939.49 |
| | | | | | | Employee Amount | | 6,819,493.45 | 1,994,985.02 | |
| | | | | | | Company Amount | | 6,819,493.45 | 1,994,985.02 | |
| | | | | | | Total | | 13,638,986.90 | 3,989,970.04 | |

**Total Refund** **$17,628,956.94**

October 9, 1999

Mr. Ron Gettelfinger
Vice President and Director
UAW, National Ford Department
8000 East Jefferson Avenue
Detroit, Michigan 48214

Mr. Gettelfinger:

Subject: Up Front Lump Sum Payment

During the present negotiations, the parties agreed to provide an up front lump sum payment of $1,350 to each employee (excluding temporary part-time employees) on the active employment roll on September 30, 1999.

Very truly yours,

ROBERT H. MARCIN,
Executive Director
Labor Affairs
Human Resources

Concur: Ron Gettelfinger

# EXHIBIT C

## 2005 Supplemental Protest

## Supplementing Original Claims for Refund

Ford Motor Company

Office of Tax Counsel

Ford Motor Company
The American Road
Room 629
Dearborn, MI 48121
Ph: (313) 845-4114
Fax (313) 845-4294

February 28, 2005

Mr. Theodore J. Stein
IRS Appeals Team Leader
Room 470, McNamara Bldg., Stop 33
477 Michigan Avenue
Detroit, MI 48226

RECEIVED
MAR 02 2005
INTERNAL REVENUE SERVICE
GENERAL APPEALS-AREA 3
DETROIT, MI

Re: Claim for Refund – 1996 and 1999 UAW Signing Bonus
Ford Motor Company EIN: 38-0549190

Dear Mr. Stein:

Ford Motor Company ("Ford") is supplementing its August 2, 2002 protest of the proposed disallowance of the refund claims filed with respect to its 1996 and 1999 UAW signing bonuses.

Statement of Facts.

In April, 2000 Ford timely filed a claim requesting a refund of FICA taxes that Ford paid with respect to its 1996 UAW national labor contract's signing bonus. In April, 2001 Ford timely filed a claim requesting refund of FICA taxes paid with respect to its 1999 UAW national labor contract's signing bonus. In July 2002, LMSB proposed to disallow the refund claims with respect to both the 1996 and 1999 UAW signing bonuses. On August 2, 2002, Ford filed a protest of the proposed claim disallowance. After Ford filed the protest, the IRS issued Rev. Rul. 2004-109. At the Appeals Office meeting with you on December 7, 2004, Appeals provided several cases in support of the IRS's new position that signing bonuses constitute wages and further indicated that the new ruling position is to be applied retroactively unless the signing bonus was part of an initial employment.

In response to these arguments, Ford now supplements its August 2, 2002 protest to (i) assert that the Commissioner abused his discretion by applying Revenue Ruling 2004-109 in a disparate manner between similarly situated taxpayers without any rational basis for the disparate treatment and (ii) describe why the cases included in the list of twenty-three that you provided at our last meeting do not effectively support the position that Ford's signing bonuses are not wages for FICA tax purposes.

**Law and Argument.**

### A. The Commissioner Abused His Discretion.

On November 23, 2004, the IRS issued Rev. Rul. 2004-109 to reverse its long-held position with respect to the qualification of signing bonuses as wages. The IRS had established its position in Rev. Rul. 58-145 which considered whether a signing bonus paid to a ballplayer for signing his initial contract constituted wages. The 1958 ruling held that since the bonus did not constitute remuneration for services it did not constitute wages, without regard to whether the bonus was paid before the ballplayer's commencement of employment or in installments during the time he was an employee. The ruling's holding turned entirely on the question whether the signing bonus was contingent on the performance of future services. Because the bonus considered in the ruling was not contingent on the ballplayer's performance of future service, the IRS held it did not constitute wages. The ruling explicitly indicated that a bonus that was contingent on the provision of future services would be treated as wages.

In reversing the 1958 ruling, Revenue Ruling 2004-109 explicitly changed the test applicable to determine whether a signing bonus constitutes wages. The ruling abandoned the Rev. Rul. 58-145 test of whether or not the bonus was contingent on the performance of future services and replaced it with a test turning on whether the bonus recipient provides clear, separate and adequate consideration for the bonus apart from the employee-employer relationship. Thus, under Rev. Rul. 2004-109, a signing bonus would be considered wages without regard to whether or not it is contingent on the performance of future services.
The 2004 ruling evaluates two situations.

> Situation 1 dealt with the fact pattern of Rev. Rul. 58-145 -- a baseball club paying a signing bonus to a baseball player signing his initial contract with the club. The signing bonus was not contingent on the player's future performance of services.
>
> Situation 2 dealt with Ford's basics facts -- an employer paying a signing bonus for ratification of a collective bargaining agreement. The signing bonus was not contingent on past, present or future performance of services.

Rev. Rul. 2004-109 holds that the signing bonuses at issue in both situations 1 and 2 constitute wages for FICA purposes. In both situations, the IRS simply applies the test of whether the bonus recipient provides clear, separate and adequate consideration for the bonus apart from the employee-employer relationship.. In neither situation was the fact that the bonus was not contingent on past, present or future services viewed as relevant. In neither situation was the fact that the ballplayer bonus relating to an initial contract mentioned as in any way important.

The "Application" section of Rev. Rul. 2004-109 provides:

> Under the authority of section 7805(b), the Service will not apply the position adopted in this ruling to any signing bonus, sign –on fee or similar amount paid to

an employee in connection with the employee's initial employment with the employer pursuant to a sign –on agreement or other contract entered into before January 12, 2005, provided the amount is paid under facts and circumstances that are substantially the same as in Rev. Rul. 58-145 or Rev. Rul. 74-108.

This Application section provision is curious in that, even though Rev. Rul, 2004-109 contains identical analyses and conclusions for each of situations 1 and 2, it refers to situation 1's particular (but unimportant) fact that the bonus is paid in connection with the employee's initial employment. Since in every important respect, situations 1 and 2 are effectively identical, it would be illogical to draw a distinction based on whether the bonus was paid in connection with an initial employment. Accordingly, the provision's reference to payment in connection with initial employment is best read as just a general statement as to the facts of the particular revenue ruling (Rev. Rul. 58-145) that Rev. Rul. 2004-109 reversed, as opposed to an attempt to intentionally limit the availability of prospective effect for situation 2 and other situations that are substantially similar. Unfortunately, however Appeals has, in fact, proposed to treat Rev. Rul. 2004-109 as having retroactive effect with respect situation 2.

Assuming arguendo that (i) the Commissioner's new position that signing bonuses constitute wages is correct and (ii) Appeals' assertion that Rev Rul. 2004-109 should be given retroactive effect for Ford is correct, Ford asserts that the Commissioner abused his discretion by applying the new position retroactively for situation 2 taxpayers but prospectively for other taxpayers. The Commissioner has some discretion to determine the extent to which a ruling will be applied retroactively. I.R.C. §7805(b). However, the Commissioner may be held to have abused his discretion where the circumstances reveal an unfair disparity in the treatment of similarly situated taxpayers. Exchange Parts Co. v. U.S., 279 F.2d 251 (Ct.Cl. 1960)(court found the IRS's distinction to be discriminatory when the IRS, in revoking its previous rulings, stated it would not seek to recover unpaid taxes but that it would not refund taxes that had been paid). The Commissioner's distinction will be held to have abused his discretion if the distinction is devoid of rational basis. Dixon v. U.S., 381 U.S. 68, 79 (1965).

The Eleventh Circuit, in Baker v. U.S., 748 F.2d 1465 (11th Cir. 1984) considered a similar discrimination situation as that presented in the instant situation. In Baker, the Commissioner had issued Rev. Rul. 62-213, 1962-2 C.B. 59 holding that educational expenses by veterans were deductible despite receiving nontaxable educational benefit payments from the Veterans Administration ("VA"). In 1980, the Commissioner issued Revenue Ruling 80-173, 1980-2 C.B. 60 holding that tuition and fees for flight training for which veterans receive nontaxable reimbursements from the VA were not deductible. With respect to all other VA educational benefits, however, the 1980 ruling reconfirmed that the prior 1962 ruling continued to apply. The Commissioner distinguished the flight-training allowances from the other educational benefit payments by characterizing the flight-training payments as direct reimbursements for tuition or fees whereas the other educational payments were in the nature of living stipends. In 1983, the Commissioner revoked the 1962 ruling and held that no veteran may deduct education expenses that are allocable to tax-exempt payments from the VA. The revocation was applied prospectively with respect to general VA educational allowances but applied retroactively with respect to flight-training allowances.

The taxpayer in Baker argued that the Commissioner abused his discretion by drawing an unfair distinction between the two types of payments. The 11th Circuit Court of Appeals held that the Commissioner had created an arbitrary distinction devoid of any rational basis. The court noted that "by adopting Revenue Ruling 83-3, which holds that no veteran may deduct from taxable income education expenses allocable to VA benefits, the IRS has apparently recognized that all veterans who received education benefits should be taxed similarly." The court was "not persuaded that [the Commissioner's] distinction permits retroactive denial of a deduction for some veterans receiving certain educational benefits, while allowing others who received similar educational benefits to retain the advantage of the deduction." *But see*, Becker v. Commissioner, 85 T.C. 291 (3rd Cir. 1985)(distinction not irrational). The Commissioner ultimately acquiesced in the Baker decision and chose to apply Revenue Ruling 80-173 on a prospective basis for all taxpayers, regardless of the circuit they resided in. Action on Decision Baker v. Commissioner, AOD 1995-05, (August 7, 1995).

In any event, in order to justify the disparate treatment, there must be some rational basis for the difference in treatment. In the instant case, the attempt to distinguish between a signing bonus paid in situation 1 and a signing bonus paid in situation 2 is completely devoid of any rational basis. Appeals purports to draw a distinction by noting that the signing bonus paid in situation 1 was part of an initial contract but the IRS has not articulated why it is in any way relevant whether the signing bonus was paid as part of an initial signing or whether it was paid in an existing employer-employee situation. The rationale for the holding in Rev. Rul. 58-145 turned solely on whether the bonus was contingent on the performance of services. It did not turn on whether there was a pre-existing employer-employee relationship. In fact it was the very fact that the 1958 ruling didn't even consider the employer-employee relationship that provided the basis for revoking the 1958 ruling:

> Specifically, it failed to apply the correct definition of wages and to consider whether the bonus was paid in connection with establishing the employer-employee relationship. Accordingly, Rev. Rul 58-145 is revoked.
> Rev. Rul 2004-109

Furthermore, the idea that the conclusion in Rev. Rul. 58-145 hinged on whether the signing bonus was paid by an employer to an existing employee was expressly rejected not just in the 1958 ruling itself but in GCM 35396 (1973)(revoking an earlier GCM concurrence because the earlier GCM erroneously inferred that Rev. Rul. 58-145 turned on whether there was an existing employer-employee relationship). Since there is no difference between a signing bonus paid in situation 1 and a signing bonus paid in situation 2, Appeal's attempt to apply the IRS's new ruling position prospectively to situation 1 but retroactively to situation 2 is clearly an abuse of discretion.

**B. The Cases Provided to us do not Support the Position that Ford's Signing Bonuses are not Wages for FICA Tax Purposes.**

Ford continues to maintain that the signing bonuses in the instant case are not wages for FICA tax purposes. We have reviewed the list of twenty-three cases you provided at our last meeting

and note that twelve of these cases actually support Ford's position either because they support the proposition that the definition of wages is dependent on the provision of services or because taxpayers are entitled to rely on previously published rulings. Specifically, the following cases applied a provision of services standard in determining whether the payment constituted wages. Central Illinois Public Service Co. v. United States, 435 U.S. 21 (1978)(rejecting government's argument that all reimbursements in employer-employee relationship are subject to withholding); Old Colony Trust v. Commissioner, 279 U.S. 716 (1929)(payment of employees taxes are wages because they were paid in consideration of services rendered); North Dakota State University v. United States, 255 F.3d 599 (8th Cir. 2001)(payment to give up tenure rights not wages because it was for relinquishment of a contractual right and not for services rendered); Royster Co. v. United States., 479 F.2d 387 (4th Cir. 1973)(meal reimbursements not wages because not for services rendered); Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d 1142 (5th Cir. 1971)(per diem payments not wages since not for services rendered and not all payments by employers are wages); Donnel v. United States, 50 Fed. Cl. 375 (2001)(termination payments are wages because they were for past services rendered); Humble Oil Pipe Line Co. v. United States, 442 F.2d 1353 (Ct.Cl. 1971); and Humble Oil Pipe Line Co. v. United States, 442 F.2d 1362 (Ct. Cl. 1971)(moving expenses not wages because not for services rendered). The following cases state that taxpayers should be able to rely on previously published rulings. Estate of McLendon v. Commissioner, 135 F.3d 1017 (5th Cir. 1998)(taxpayers can rely on previously rulings where facts are substantially similar); Silco Inc. v. U.S., 779 F.2d 282 (5th Cir. 1986)(taxpayers can rely on previous rulings); The Travelers Insurance Co. v. U.S. 35 Fed Cl. 138 (1996)(taxpayers can rely on previous rulings); Beneficial Foundation, Inc. v. U.S. 8 Cl. Ct. 639(1985)(education grants not subject to excise tax because IRS cannot point to distinctions without difference to avoid their rulings).

Seven of the cases cited were simply not dispositive because their holdings were based on unrelated grounds, *e.g.*, People's Life Insurance Co v. united States, 373 F.2d 924 (Ct. Cl. 1967)(meal and entertainment expenses not wages because they fall within one of the enumerated exceptions); Acacia Mutual Life Insurance Co. v. United States, 272 F. Supp. 188 (D. Md 1967)(meal and entertainment expenses not wages because they fall within one of the enumerated exceptions); Commissioner v. LoBou, 351 U.S. 243 (1956)(gain in taxable income at time of exercise). Included in this latter grouping is Social Security Board v. Nierotko, 327 U.S. 358 (1946) which was not an employment tax case but instead applied a broad definition of wages for social security benefit purposes. It is important to note that in a subsequent case, the Supreme Court did not adopt the same broad definition of wages for employment tax purposes. *See*, Central Illinois, *infra*.

Of the twenty-three cases cited, only arguably support the Commissioner's new position that wages include any payment within the employee-employer relationship but even here the four cases are distinguishable. Ritter v. U.S. 183 C. Cl. 875 (1968)(moving expenses held to be taxable income to employee – not a withholding case where definition of wages is narrower); Associated Electric Cooperative v. U.S., 42 Fed. Cl. 867 (1999)(termination payments were wages because based on length of service and employer didn't establish it was paid for securing a promise not to strike); Abrahamsen v. U.S., 44 Fed. Cl. 260 (1999)(downsizing payment in settlement of lawsuit held to be taxable income because payment was for remuneration); and

General Elevator Corp. V. U.S., 20 Cl. Ct 345 (1990)(per diem payments held to be wages because taxpayer didn't show payments were reasonable reimbursements of business expense).

Given this amalgamation of case law, it can scarcely be maintained that the Service's new position is incontrovertible or that Ford's position is completely without merit, particularly given the fact that there was the 1958 ruling directly on point. As a general matter, revenue rulings "are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose." Rev. Proc. 89-14, 1989-1 C.B. 814, §7.01(4).

**Summary**

The assertion that employer-employee relationship standard has always been the legal standard for purposes of withholding taxes is simply not supported by the case law and Ford should be able to rely on the 1958 ruling. The better reading of Rev. Rul. 2004-109 is that it is not intended to be given the broad retroactive application proposed by Appeals but if it is to be given such a construction, providing for retroactive application in certain situations while providing prospective application on indistinguishable fact is an abuse of discretion. Accordingly, Ford requests that the signing bonuses paid with respect to its 1996 and 1999 collective bargaining agreements be accorded the same prospective relief as that granted to taxpayer's in situation 1 and its refund claims be allowed in full.

Please call and we can discuss this further.

Respectfully,

Tami Lopez