IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

---

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

---

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT THEREOF**

---

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

**TABLE OF CONTENTS**

Page(s):

DEFENDANT'S MOTION FOR PROTECTIVE ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER . . . . . . . . 4

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 4

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. There are two asserted counts for Ford's tax refund claim. . . . . . . . . . . . . . . . . . . 8

1. Ford contends that ratification bonuses do not meet the statutory definition of "wages" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. Ford also claims that the IRS abused its discretion when it published Rev. Rul. 2004-109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. The discovery requests at issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1. Ford requests production of background documents that concern the drafting and publication of five revenue rulings . . . . . . . . . . . . . . . . . . . 14

2. Ford seeks documents concerning proposals to modify or rescind Revenue Ruling 58-145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3. Ford requests documents concerning the interpretation and application of Revenue Rulings 58-145 and 2004-109 . . . . . . . . . . . . . . 16

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A. The documents Ford seeks are irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1. Background documents concerning Revenue Rulings 58-145, 69-424, 71-532, 74-108, and 2004-109 are not relevant to Ford's claim that ratification bonuses are not FICA "wages" . . . . . . . . . . . . . . 18

2. The background documents are also irrelevant to Ford's abuse-of-discretion claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF CONTENTS**
**(continued)**

Page(s):

3. Ford's requests for documents concerning the interpretation, application, and consideration whether to modify revenue rulings are even more remote from its claims in this case . . . . . . . . . . . . . . . . . . 26

B. The undue burden and expense of assembling, reviewing, and making formal assertions of privilege outweigh the utility, if any, from production of the documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1. It would be unduly burdensome to require defendant to search for and produce documents concerning its application and interpretation of revenue rulings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2. It would be unduly burdensome to require defendant to search for and produce documents concerning proposals to modify or rescind Rev. Rul. 58-145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3. The undue burden of making formal assertions of the deliberative-process privilege outweighs any potential utility from production of background documents for revenue ruling requests . . . . . . . . . . . . . . . . . 31

C. If the Court determined, as a preliminary matter, that the documents requested are relevant, there is good cause for an enlargement of time for defendant to make formal assertions of privilege . . . . . . . . . . . . . . . 32

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

Page(s):

**Cases:**

*CSX Corp. v. United States*, 518 F.3d 1328 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 9

*Carl Zeiss Stiftung v. V.E.B. Cal Zeiss, Jena*, 40 F.R.D. 318 (D.D.C. 1966), *aff'd* 384 F.2d 989 (D.C. Cir. 1967), *cert. denied,* 389 U.S. 952 . . . . . . . . . . . . . . . . 20

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . . 26

*Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001) . . . . . . . . . . 13, 24-25

*Connecticut Railway & Lighting Co.. v. United States*, 142 F. Supp. 907 (Ct. Cl. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25

*Department of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dixon v. United States*, 381 U.S. 68 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251 (Ct. Cl. 1960) . . 13, 25

*Freeeman v. Seligman*, 405 F.2d 1326 (D.C. Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Groves v. United States*, 533 F.2d 1376 (5th Cir. 1976), *cert. denied,* 429 U.S. 1000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*IBM v. United States*, 343 F.2d 914 (Ct. Cl. 1965), *cert. denied,* 382 U.S. 1028 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25

*Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005) . . . . . . . . . . . . . . . . 7, 20-21

*Marriott International Resorts, L.P. v. United States*, 61 Fed. Cl. 411 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 21

*Mulholland v. U.S.*, 16 Cl. Ct. 252 (Fed. Cl. 1989) . . . . . . . . . . . . . . . . 5-6, 11-13, 23-25

*Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977) . . . . . . . . . . . . . . . . . . . . 25-26

**TABLE OF AUTHORITIES**
**(continued)**

**Cases (continued):**

Page(s):

*Rosee v. Board of Trade of City of Chicago*, 36 F.R.D. 684 (N.D. Ill 1965) . . . . . . . . . 19

*Sidell v. Commissioner*, 225 F.3d 103 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194 (5th Cir. 1996), *cert. denied*, 522 U.S. 821 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Spang Industries, Inc. v. United States*, 791 F.2d 906 (Fed. Cir. 1986) . . . . . . . . . . . . . 10

*System Fuels, Inc. v. United States*, 73 Fed. Cl. 206 (2006) . . . . . . . . . . . . . . . . . . . 17-18

*United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001) . . . 10, 13, 21-22, 26-27, 30

*Xerox Corp. v. United States*, 41 F.3d 647 (Fed Cir. 1994), *cert denied*, 516 U.S. 817 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Xerox Corp. v. United States*, 656 F.2d 659 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . 10, 18

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 3121(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 6110(k)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**
**(continued)**

**Miscellaneous:**

Page(s):

Treas. Reg. § 601.601(d)(2)(v)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18, 22

Rev. Rul. 58-145, 1958-1 C.B. 360 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11, 14, 22

Rev. Rul. 69-424, 1969-2 C.B. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Rev. Rul. 71-532, 1971-2 C.B. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

Rev. Rul. 74-108, 1974-1 C.B. 248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 23

Rev. Rul. 2004-109, 2004-2 C.B. 958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10-11, 14

Rev. Rul. 2008-29, 2008-24 I.R.B. 149 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

RCFC 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6 Moore's Federal Practice (3d ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19, 29

Order, *Jade Trading, LLC v. U.S.*, Fed. Cl. No. 03-2164 (August 15, 2005) . . . . . . . 8, 21

Order, *Marriott International Resorts, L.P. v. U.S.*, Fed. Cl. Nos. 01-256-T & 01-257-T (November 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims, defendant, the United States of America, moves for a protective order concerning twelve individual requests for production of documents that plaintiff Ford Motor Company served in this case. In particular, this motion concerns requests #1, #2, #3, and #6 in Ford's First Request for Production of Documents, dated April 28, 2006. This motion also concerns requests #9 through #16 in Ford's Second Request for Production of Documents, dated July 2, 2008. Defendant moves for an order, pursuant to RCFC 26(c)(1), that the "disclosure or discovery not be had." In the alternative, defendant moves for an order, pursuant to RCFC 26(c)(2) that "the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place." This motion is based on the following grounds:

(1) Ford's requests seek information that is not relevant to the claim or defense of any

party, nor are they reasonably calculated to lead to the discovery of admissible evidence.

(2) The relevance, if any, of the information sought by Ford's requests is outweighed by the undue burden and expense to defendant of assembling, reviewing, and redacting documents, drafting privilege logs, and preparing declarations making formal assertions of privilege.

(3) If the Court declines to issue a protective order that the "discovery not be had" on the grounds of relevance or burden with respect to one or more of Ford's requests, there is good cause for an enlargement of defendant's time to make formal assertions of privilege in response to Ford's requests. Defendant respectfully requests an enlargement of four months from the date of the Court's Order resolving this motion to make formal assertions of privilege in response to Ford's requests.

The undersigned has conferred in good faith with counsel for Ford in an effort to resolve the matters in dispute, but the parties have been unable to resolve their differences.

This motion is supported by the attached Brief in Support of Defendant's Motion for Protective Order, the accompanying Declaration of Neil D. Shepherd, the accompanying Declaration of Jason Bergmann, and all other pleadings in this action.

Respectfully submitted,

s/Jason Bergmann

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section

s/Steven I. Frahm

Of Counsel

August 4, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a tax refund case. Ford Motor Company seeks a refund of employment taxes on "ratification bonuses" – lump-sum payments made to its employees when collective-bargaining agreements between Ford and its employees' union, the UAW, were ratified. Ford alleges that the ratification bonuses do not constitute "wages" subject to tax under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101, *et seq.*

This motion for protective order concerns twelve requests for production of documents that Ford served on the United States. The requests fall into three broad categories. Seven requests seek pre-decisional, deliberative documents concerning revenue rulings published by the Internal Revenue Service. Four seek documents concerning the IRS's interpretation and application of two of those revenue rulings. And one seeks documents concerning the IRS's

consideration whether to modify or rescind one of the rulings. This motion asks the Court to order that defendant is not required to produce documents responding to these requests.

***Relevance.*** First, and foremost, the documents requested are not relevant. Ford alleges that the ratification bonuses do not meet the statutory definition of "wages" and are therefore exempt from tax. Ford's allegation raises a question of law that the Court will resolve after applying pertinent legal authorities to the facts of this case. Those authorities will likely include the text of the Code itself, as well as judicial opinions that discuss the meaning of the term "wages." They may also include revenue rulings that address whether certain payments do (or do not) qualify as "wages" under the Code. However, legal authority bearing on the scope of "wages" does not include unpublished documents that: (1) were authored by individual employees of the IRS, (2) do not constitute official interpretations of the IRS, and (3) were not created with the objective of guiding the public. Such information is simply not probative of the merit of Ford's claims.

Ford separately contends that the IRS abused its discretion when it published Revenue Ruling 2004-109, 2004-2 C.B. 958, which advised that ratification bonuses are subject to employment taxes, and which applied retroactively to ratification bonuses previously paid. The documents that Ford requested are irrelevant to that claim, as well.

Revenue rulings are presumptively retroactive, unless the IRS provides affirmatively that they apply only prospectively. The IRS's decision not to limit a ruling's retroactive application is entitled to broad deference and is reviewed only for an abuse of discretion. Courts undertaking such reviews examine whether the revenue ruling "would work a *change* in settled law *relied* upon by the taxpayers and implicitly approved by Congress." *Mulholland v. U.S.*, 16

Cl. Ct. 252, 262 (Fed. Cl. 1989). The review focuses on the extent to which the new revenue ruling is inconsistent with other of the IRS's published interpretations. Whether published IRS interpretations are inconsistent with one another cannot be determined on the basis of unpublished, internal deliberations of the IRS concerning various revenue rulings.

***Burden.*** The extreme burden and expense of assembling, reviewing, and making claims of privilege for the volume of requested documents constitutes an additional reason for the Court to enter a protective order. Ford's requests purport to require the IRS to comb through fifty years of history for all occasions where it interpreted, applied, or considered whether to modify or revoke a 1958 revenue ruling. A Herculean effort would be necessary to comply. And, while Ford's other requests are less expansive, they would still require defendant to spend months assembling, reviewing, and redacting documents, drafting privilege logs, and preparing declarations making formal assertions of privilege. These burdens dwarf the potential relevance (if any) of the discovery that Ford seeks.

***Privilege.*** On their face, Ford's requests seek "documents reflecting advisory opinions, recommendations and deliberations comprising a part of a process by which governmental decisions and policies are formulated," documents which are covered by the deliberative-process privilege. *Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Defendant intends to assert this privilege, and other applicable privileges as well, in response to Ford's requests.

Formal assertion of the deliberative-process privilege is a very time consuming process. Defendant must carefully review all responsive documents, redacting only the deliberative portions. Defendant then must prepare a detailed privilege log. And defendant must support its

claim of privilege with the declaration of an official who is authorized to assert the privilege.

Due to the scope of Ford's requests and the volume of potentially responsive documents, defendant has not yet made formal assertions of privilege in response to Ford's requests. Ford stipulated that defendant could defer making any formal assertions of privilege until after the Court resolves this motion for protective order. Defendant respectfully submits that, on the basis of the relevance and undue burden objections to Ford's requests, it should not be required to do so. Nevertheless, should the Court decline to issue a protective order on the grounds of relevance or burden with respect to one or more of Ford's requests, defendant requests a four-month enlargement of time to make formal assertions of privilege. Good cause for the enlargement of time is established by the accompanying Declaration of Neil D. Shepherd.

***An acknowledgement.*** This Court has considered similar discovery disputes in the past, and the outcomes of those disputes appear to follow a similar evolution. Initially, the Court expresses skepticism of the government's relevance arguments, citing the breadth of permissible discovery under the rules and the theoretical, if remote, possibility that the taxpayers' requests might unearth pertinent information. *E.g., Jade Trading, LLC v. United States*, 65 Fed. Cl. 487, 491-93 (2005). The government then undertakes the substantial burden of redacting documents, preparing a detailed privilege log, and drafting a declaration asserting privilege. There follows additional briefing and argument on the propriety of the assertions of privilege. The Court reviews a substantial number of documents *in camera*. Finally, only after months of additional work by the parties and the Court, production of the documents is denied – on the ground that any relevance of the deliberative documents is so marginal that the invocation of privilege must

be sustained. *E.g.,* Order Sustaining Defendant's Invocation of Deliberative Process Privilege, *Jade Trading, LLC v. United States*, Fed Cl. No. 03-2164 (August 15, 2005).

Defendant respectfully suggests that the Court should rely on the experience it has gained resolving similar claims in other cases and depart from this pattern here. Discovery like Ford's that seeks the thoughts and writings of disparate IRS employees, and recreations of internal agency deliberations, has no place in a customary legal analysis to resolve a question of law. Moreover, the journey is a long and difficult one for the Court and the parties, yielding nothing of value in the end. The Court should decline this latest invitation by a plaintiff to embark on such a costly and fruitless enterprise.

## II. PROCEDURAL BACKGROUND

Because the rules provide that, to be discoverable, the information sought must be relevant to the parties' specific claims or defenses, the consideration of relevance here should begin with an examination of Ford's claims and a description of its document production requests. This will provide helpful background for defendant's discussion that follows, which addresses why the requested documents are not relevant to Ford's claims.

### A. There are two asserted counts for Ford's tax refund claim.

Ford's Complaint prays for a refund of over $44 million in employment taxes paid to the United States during the fourth quarter of 1996 and the fourth quarter of 1999. (*See* Complaint, ¶ 7 & Demand for Judgment.) The employment taxes were collected on ratification bonuses paid to Ford's employees pursuant to collective bargaining agreements between Ford and its employees' union, the UAW. (*See* Complaint, ¶¶ 3-4 & 20-22.) Ford seeks a refund of "FICA

employer tax" on its own behalf and "FICA employee tax" on behalf of its employees. (Complaint, ¶ 3.) Ford asserts two "counts" in support of its claim.

**1. Ford contends that ratification bonuses do not meet the statutory definition of "wages."**

First, Ford alleges that the ratification bonuses do not qualify as "wages," as that term is defined in section 3121(a) of the Code.[1] Ford contends that, "[b]ecause the 1996 and 1999 payments were not contingent on the performance of services and bore no relationship to services or any of the factors used to determine compensation for services, . . . they were not wages for FICA purposes." (Complaint, ¶ 27.)

This count of Ford's complaint raises a question of law that the Court will resolve after applying pertinent legal authorities to the facts of the case. If there are no disputed facts concerning the 1996 and 1999 ratification bonuses that Ford paid to its employees, then the Court should be able to resolve the question on cross-motions for summary judgment.

In evaluating whether the ratification bonuses qualify as "wages," the Court will examine the text of section 3121(a), any pertinent legislative history, and judicial opinions that discuss the meaning of the term. The Court will presumably consider the judicial opinions cited in paragraphs 23 and 24 of Ford's Complaint. And the Court will likely consider more recent opinions which hold that "the term 'wages' encompasses more than the amount paid for particular services rendered" and that "as long as the payment in question is remuneration for the overall employment relationship, it is properly encompassed within the term 'wages' under section 3121(a) of FICA." *CSX Corp. v. United States*, 518 F.3d 1328, 1333 (Fed. Cir. 2008).

---

[1] Unless otherwise stated, all sections cited herein refer to the Internal Revenue Code of 1986, 26 U.S.C., in effect during the periods at issue.

The Court may also examine two revenue rulings published by the IRS. Revenue Ruling 2004-109 provides specifically that "a ratifying bonus pursuant to a collective bargaining agreement" constitutes "wages" for FICA purposes. The 2004 ruling separately advises that "amounts paid to an employee as a signing bonus for a baseball contract" are wages, as well. That portion of the 2004 ruling revoked an earlier ruling, Revenue Ruling 58-145, 1951-1 C.B. 360, which had held that "bonuses which are not predicated on continuing employment, made to new baseball players solely for signing their first contracts," are not "wages" for income-tax-withholding purposes. Ford contends that the ratification bonuses it paid in 1996 and 1999 constitute "contract signing bonuses" governed by Rev. Rul. 58-145, notwithstanding the many factual differences between Ford's circumstances and the baseball player situation.

To the extent that the Court considers Revenue Rulings 2004-109 and 58-145 when it addresses the meaning of the term "wages," the rulings are not dispositive. Revenue rulings are "interpretation[s] of the law published by the IRS in its biannual cumulative bulletin, indicating how the IRS believes the tax law should be applied to a particular set of facts." *Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 6 (2001). Under Federal Circuit jurisprudence, they may be entitled to "some weight as reflecting the Commissioner's interpretation," but they do "not have the same force as a regulation." *Id.* (quoting *Spang Industries, Inc. v. United States*, 791 F.2d 906, 913 (Fed. Cir. 1986)). They "do not commit the Department to any interpretation of law." *Id.* (quoting *Xerox Corp. v. United States*, 41 F.3d 647, 657 (Fed Cir. 1994), *cert. denied*, 516 U.S. 817 (1995)). At most, "they may be helpful in interpreting" the Code. *Xerox Corp. v. United States*, 656 F.2d 659, 671 n.20 (Ct. Cl. 1981).

**2. Ford also claims that the IRS abused its discretion when it published Rev. Rul. 2004-109.**

The second count of Ford's complaint alleges that the IRS abused its discretion when it published Revenue Ruling 2004-109. In addition to stating that ratification bonuses constitute "wages" for FICA purposes, the revenue ruling revoked two earlier rulings (58-145 and 74-108) broadly for all situations, except with respect to:

> . . . any signing bonus, sign-on fee, or similar amount paid to an employee in connection with the employee's initial employment with the employer pursuant to a sign-on agreement or other contract entered into before January 12, 2005, provided the amount [was] paid under facts and circumstances that are substantially the same as in Rev. Rul. 58-145 or Rev. Rul. 74-108.

Revenue Ruling 58-145 addressed bonuses "not predicated on continuing employment, made to new baseball players solely for signing their first contracts," and Revenue Ruling 74-108, 1974-1 C.B. 248, addressed "a sign on fee paid by a domestic team of an international professional soccer league" as "compensation for the promises made by the [recipient] in the sign on agreement which in essence amounted to a covenant not to compete." Ford asserts that the decision by the IRS to revoke the earlier revenue rulings "prospectively [for] some taxpayers" and "retroactively [for] others" constituted an abuse of discretion, because there is no "rational reason for the disparate treatment." (*See* Complaint, ¶¶ 35-36.)

Revenue rulings are "presumptively retroactive to the date of enactment of the statute to which they relate *unless* the Commissioner prescribes otherwise." *Mulholland*, 16 Cl. Ct. at 262 (emphasis in original). The IRS's decision not to apply a revenue ruling retroactively "commands broad deference." *Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 203-04 (5th Cir. 1996), *cert. denied*, 522 U.S. 821 (1997). Such a decision "may *only* be reviewed by this court

for an abuse of discretion." *Mulholland*, 16 Cl. Ct. at 262 (emphasis in original). Abuse of discretion may be inferred only if Ford shows that "one of the following situations exist: 1) retroactivity would work a *change* in settled law *relied* upon by the taxpayers and implicitly approved by Congress, 2) [retroactive application] leads to inequality of treatment between competitor taxpayers; or 3) in general, the results of retroactivity in this case would be unduly harsh." *Id.* (emphasis in original).

Thus, in resolving Ford's abuse-of-discretion argument, the Court will examine whether Revenue Ruling 2004-109 was inconsistent with "settled law" at the time the ruling was published. If the FICA treatment of ratification bonuses either was consistent with the law or the treatment of such bonuses was unsettled, then Ford's claim must fail.

Ford suggests that Revenue Ruling 2004-109 altered the legal treatment of ratification bonuses, because under Revenue Ruling 58-145 such bonuses are not wages where they are not "contingent on the performance of services." (Complaint, ¶ 27.) In evaluating this argument, the Court should be mindful that revenue rulings are "directly responsive to and limited in scope by the pivotal facts stated in the revenue ruling." Treas. Reg. § 601.601(d)(2)(v)(a). Because revenue rulings represent "the conclusion of the Service as to the application of the law to the entire state of facts involved," treasury regulations caution taxpayers "against reaching the same conclusion in other cases unless the facts and circumstances are substantially the same." Treas. Reg. § 601.601(d)(2)(v)(d). The regulations also emphasize that taxpayers must "consider the effect of subsequent legislation, regulations, court decisions, and revenue rulings." *Id.* Accordingly, Ford's abuse-of-discretion claim will likely depend upon the outcome of two questions of law – whether the facts of Rev. Rul. 58-145 are substantially the same as Ford's

situation and whether the outcome of Rev. Rul. 58-145 has been undermined by any subsequent legislation, regulations, court decisions, or revenue rulings.

Under the applicable standard, the Court may also examine whether retroactive application of Revenue Ruling 2004-109 to Ford's situation led to "inequality of treatment between competitor taxpayers." *Mulholland*, 16 Cl. Ct. at 262 (emphasis in original). In *IBM v. United States*, 343 F.2d 914, 924 (Ct. Cl. 1965), *cert. denied,* 382 U.S. 1028 (1966), the Court of Claims held that the Commissioner abused his discretion by issuing private letter rulings that treated competing taxpayers differently. This doctrine applies only "where (i) two or more taxpayers in direct economic competition have each applied for a ruling and only one has received a favorable ruling; and (ii) the taxpayer denied the favorable ruling is arguing that the Commissioner abused his discretion under section 7805(b) by failing to apply a new position only prospectively." *Vons*, 51 Fed. Cl. at 10. Ford suggests that the doctrine applies more broadly to similarly-situated taxpayers whether or not they are competitors.[2] (*See* Complaint, ¶¶ 35-36.) Regardless, whichever standard is used, the Court will compare Ford's circumstances with the excepted situations in Revenue Ruling 2004-109 to determine whether they treat either "competitor" or "similarly-situated" taxpayers differently without any rational basis.

[2] In support of this suggestion, Ford cites three opinions holding that the IRS abused its discretion when applying revenue rulings or private letter rulings retroactively to some taxpayers and prospectively to others based on timing issues, such as the dates of filing of returns or payment of taxes. *See, e.g., Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001); *Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251 (Ct. Cl. 1960); *Connecticut Railway & Lighting Co.. v. United States*, 142 F. Supp. 907 (Ct. Cl. 1956). The Court has questioned the validity of those opinions. *See, e.g., Vons*, 51 Fed. Cl. at 10 n.10 (questioning *Computer Sciences Corp.* and noting that "the manifest weight of precedent rejects a 'least common denominator' notion of federal taxation, in which the law that Congress actually enacts can be short-circuited and disregarded any time the IRS has afforded a single taxpayer or even a group of taxpayers treatment more favorable than the law provides").

**B. The discovery requests at issue**

This motion for protective order concerns twelve individual requests for production of documents that Ford served on the United States in this case. Copies of the requests and defendant's responses are attached to the accompanying Declaration of Jason Bergmann. Defendant's efforts to assemble responsive documents are outlined in the accompanying Declaration of Neil D. Shepherd.

Ford's requests fall into three broad categories. This brief discusses each, below.

**1. Ford requests production of background documents that concern the drafting and publication of five revenue rulings.**

Requests #1, #2, #6, #9, #12, #13, and #14 seek the production of IRS background documents for five revenue rulings. (*See* Decl. Bergmann, Exs. A & C.) The rulings are:

(1) Rev. Rul. 58-145, involving initial signing bonuses paid to baseball players, which Ford claims supports its assertion that union contract ratification bonuses are not wages under FICA [Request #9];

(2) Rev. Rul 69-424, 1969-2 C.B. 15, which concerns tuition payments made to a college by a minor league baseball club on behalf of one of its players pursuant to an employment contract between the player and the club [Request #12];

(3) Rev. Rul. 71-532, 1971-2 C.B. 356, which modified Revenue Ruling 69-424 and limited its application to wages paid after January 1, 1970 [Request #13];

(4) Rev. Rul. 74-108, which addressed a signing bonus paid to a professional soccer player in exchange for a covenant not to compete [Request #14]; and,

(5) Rev. Rul. 2004-109, the ruling whose publication Ford claims constitutes an abuse of discretion [Requests #1, #2, & #6].

Defendant has collected and is in the process of reviewing documents that are potentially responsive to these requests. The background documents for Revenue Ruling 2004-109 are the

most voluminous. For Rev. Rul. 2004-108, defendant has located approximately 446 paper documents totaling approximately 2300 pages, and there are approximately 852 electronic-mail messages with 223 electronic documents attached to those messages. (Decl. Shepherd, ¶¶ 8-9). For Rev. Rul. 58-145, defendant has located approximately 35 paper documents, consisting of 85 pages. (*Id.*, ¶ 12). For Rev. Rul. 69-424, defendant has located approximately 29 documents, consisting of 48 pages. (*Id.*, ¶ 14.) For Rev. Rul. 71-532, defendant has located no documents. (*Id.*, ¶ 16.) And, for Rev. Rul. 74-108, defendant has located 43 documents, consisting of 222 pages. (*Id.*, ¶ 18.)

In an effort to determine the amount of time needed for to review and make formal assertions of privilege for the background documents, defendant prepared a privilege log for a sample of ten electronic-mail messages, with their attachments. The sample privilege log took approximately 15 hours of time to prepare. It is attached to the Shepherd Declaration.

**2. Ford seeks documents concerning proposals to modify or rescind Revenue Ruling 58-145.**

Request #3 seeks the following documents:

> For the time period dating from the publication of Rev. Rul. 58-145 to the date of its revocation, all documents relating to the IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145.

(*See* Decl. Bergmann, Ex. A.) Because the request seeks documents created over a fifty-year time span and because such documents, if they existed, would not have been kept "in centralized files that would be associated with the older revenue ruling," it has been difficult for defendant to locate responsive information. (Decl. Shepherd, ¶¶ 20, 24.) In an effort to locate potentially responsive documents, defendant identified various IRS publications that have either considered

Rev. Rul. 58-145 or cited it as authority. (*Id.*, ¶ 21.) Defendant is in the process of searching for IRS files relating to those publications. To the extent that any such files may exist, they would be located in IRS field offices or off-site storage facilities, not at the IRS national office. A search of the field offices and off-site storage facilities is underway, but it has not yet been completed. (*Id.*, ¶ 22.)

**3. Ford requests documents concerning the interpretation and application of Revenue Rulings 58-145 and 2004-109.**

Requests #10, #11, #15 and #16 seek all documents that relate either to "the application of" or to "the IRS's and/or Treasury's interpretation, analysis, assessment, or consideration of the application of" Rev. Rul. 58-145 and Rev. Rul. 2004-109 to "signing bonuses, sign on fees, and/or ratification payments." (*See* Decl. Bergmann, Ex. C.) The requests exclude from their scope "specific taxpayer returns and return information relating to persons other than Ford that are protected from disclosure by 26 U.S.C. § 6103." (*Id.*)

The IRS does not maintain documents that are potentially responsive to these requests in a single, centralized location. Rather, responsive documents are associated with the various files that the IRS maintains with respect to particular projects or the examinations of particular taxpayers. (Decl. Shepherd, ¶¶ 26 & 31.) IRS files that may contain responsive information include "audits or examinations of taxpayers who paid or received signing bonuses over the last fifty years," "administrative claims for tax refund in which the taxation of signing bonuses are at issue," "closing agreements, ruling requests, and offers in compromise involving taxpayers who paid or received signing bonuses over the last fifty years," and "litigation involving other taxpayers in which the revenue rulings were cited or discussed." (Decl. Shepherd, ¶¶ 27 & 31.)

The Shepherd Declaration explains the difficulty of assembling and reviewing such information in order to locate and produce responsive information (at paragraph 27) :

> The IRS generally maintains files concerning such projects on a taxpayer-by-taxpayer basis, rather than by subject matter. Accordingly, there is no simple method for the Service to determine which audits, refund claims, administrative proceedings, or lawsuits would, or would not, contain information that is responsive to Ford's requests. Therefore, in order to comply with the requests for production described above, a request for responsive documents would have to be sent to virtually all IRS and Department of Treasury employees who may have worked on any such projects, over the last fifty years. The Office of Chief Counsel would then have to review the documents provided to determine whether such documents were responsive and whether privileges apply.

(*See also id.*, ¶ 31.) Due to the extreme difficulty of complying with these requests, defendant has not conducted a search for information that is responsive to these requests.

## III. ARGUMENT

### A. The documents Ford seeks are irrelevant.

RCFC 26(b)(1) provides that, unless otherwise limited by court order, parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Thus, the threshold question presented in any discovery dispute is whether the information sought is relevant. This definition, corresponding to Rule 26 of the Federal Rules of Civil Procedure, was narrowed by amendments adopted in 2000. Previously, the Rules permitted discovery so long as material was relevant to the "subject matter of the pending action." Under the amended rule, it is not enough that the discovery is connected to the subject matter of the suit. Instead, a fact must be "germaine to a specific claim or defense asserted in the pleadings for information concerning [the fact] to be a proper subject of discovery." *System*

*Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 215 (2006) (relying on and quoting from 6 Moore's Fed Practice § 26.41[2][a] at 26-109 & 26-110 (3d ed. 2003)).

**1. Background documents concerning Revenue Rulings 58-145, 69-424, 71-532, 74-108, and 2004-109 are not relevant to Ford's claim that ratification bonuses are not FICA "wages."**

Ford requests discovery of background files for five different revenue rulings. Such background files generally contain unpublished documents authored by individual IRS employees that are not official interpretations of the IRS and were not created with the objective of guiding the public. Such information does not constitute legal authority and is not probative of Ford's legal claim that its ratification bonuses were not "wages" under FICA.

Ford's claim will rise or fall based on the text of section 3121(a), pertinent legislative history, and judicial opinions that discuss the meaning of the term "wages." Published revenue rulings may also "be helpful in interpreting" the term, but they will not be dispositive. *Xerox Corp.*, 656 F.2d at 671 n.20. Other published statements by the IRS, such as private letter rulings or technical advise memoranda, "may not be used or cited as precedent" and therefore have no authoritative value. *See* 26 U.S.C. § 6110(k)(3). The IRS's unpublished rulings also lack authority, even if they are official. Treas. Reg. § 601.601(d)(2)(v)(d) ("No unpublished ruling or decision will be relied on, used, or cited, by any officer or employee of the Service as a precedent in the disposition of other cases."). Statements made by individual employees of the IRS that are *both* unpublished and unofficial are even less authoritative, and they simply have no bearing on the legal questions in this case.

The purpose of civil discovery is to "allow ultimate resolution of disputed issues to be based on full and accurate understanding of true facts." 6 Moore's Federal Practice, § 26.02 at

26-30 (3d ed. 2008). Discovery is about facts, not law. The meaning of “wages” under section 3121(a) is a *legal* question that the Court will decide after a review of governing authorities. The background documents, which do not concern any *factual* matters in this case, are irrelevant to the Court’s determination of the issue. *See Groves v. United States*, 533 F.2d 1376, 1380 (5th Cir. 1976) (affirming order denying discovery of background documents for revenue ruling on ground that materials are not relevant to legal questions), *cert. denied*, 429 U.S. 1000.

Whatever weight is given to the revenue rulings whose background documents Ford seeks should be determined by the Court’s analysis of the published words of the rulings themselves. The background documents reflect the IRS’s deliberative process in reaching the official interpretations in its revenue rulings. For that reason, they may well reflect individual employees’ views of the law that vary, even in some small way, from the final, official published product. However, any such differences (should they exist) would be of no consequence to the Court’s consideration of the legal question.

> “In its attempt to decipher the meaning of a statute a court may rely on various tools, including official agency interpretations. Courts may not, however, rely on unpublished opinions of agency staff.”

*United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) (citations omitted). The “suppositions” of government staff members expressed in internal memoranda are “not pertinent to th[e] task” of interpreting a statute’s meaning. *Id.*

In general, “[t]he cerebrations and mental processes of government officials, leading to admittedly proper exercises of power, can never be a factor in a judicial proceeding and, therefore, need not be disclosed.” *Rosee v. Bd. of Trade of City of Chicago*, 36 F.R.D. 684, 689 (N.D. Ill 1965). Ford’s claim that background documents for a revenue ruling must be examined

to determine what deference should be given to the ruling is akin to a suggestion that, in determining the weight to be given to a court's opinions, one should consider the opinions' unpublished drafts, law clerks' bench memoranda, and judges' handwritten notes. "No judge could tolerate an inquisition into the elements comprising his decision – indeed, '[s]uch an examination of a judge would be destructive of judicial responsibility' – and by the same token 'the integrity of the administrative process must be equally respected.'" *Carl Zeiss Stiftung v. V.E.B. Cal Zeiss, Jena*, 40 F.R.D. 318, 325-26 (D.D.C. 1966), *aff'd* 384 F.2d 989 (1967), *cert. denied* 389 U.S. 952. *See also United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381, 1387 (D.D.C. 1981).

The general principle that working-level views in a government agency do not evidence institutional intent applies with even greater force in the tax context. "The tax code is an intricate web and demands clear rules so that it may be administered with as little uncertainty as possible. To achieve this goal, the IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings." *Sidell v. Commissioner*, 225 F.3d 103, 110-111 (1st Cir. 2000). For that reason, "statements by individual IRS employees cannot bind the Secretary," and "internal memoranda represent[ing] the personal views of the authors, not the official position of the agency," should not "figure in the Court's decisional calculus." *See id.* (finding irrelevant a treasury regulation's background documents, notwithstanding the taxpayer's claim that they were inconsistent with an interpretation of the regulation that the government asserted in litigation).

As explained above, when resolving similar discovery disputes over the past few years, this Court has agreed that such information is of little, if any, utility. Thus, in *Jade Trading*,

*LLC v. United States*, although the Court initially held that background documents "would potentially be relevant to the extent they embody the IRS' interpretations of" a statutory term (65 Fed. Cl. at 492), the Court ultimately declined to order their production. *See Jade* Order, August 15, 2005, *supra*, at 5-6. In reaching this decision, the Court reasoned:

> In the instant case, production of the deliberative documents will not advance the accuracy and integrity of fact finding. Rather, the documents address solely internal government debate on matters of law – the scope and content of a regulation and the interpretation of a legal term. Both the validity of the regulation and the interpretation of the term 'liabilities' can be adjudicated by the court without resort to the Government's predecisional debate and opinion.

Likewise, in *Marriott International Resorts, L.P. v. United States*, 61 Fed. Cl. 411, 416 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006), the Court held that "background files to the IRS's final actions" might "prove informative" in evaluating "different interpretations of the law that have been applied at different points in time." However, after an *in camera* review of the background documents, the Court declined to order them produced. *See* Order, *Marriott International Resorts, L.P. v. United States*, Fed Cl. Nos. 01-256-T & 01-257-T (November 2, 2007). Finally, in *Vons Companies, Inc. v. United States*, 51 Fed Cl. 1, 21 (2001), the Court explained that background documents concerning revenue ruling requests may "be relevant . . . only in very limited circumstances" and that "various materials in those files undoubtedly will shed no light whatsoever on what the IRS, as an agency, felt the ruling meant or means."

A review of the particular revenue rulings about which Ford's requests inquire confirms the irrelevance of any background documents. On its face, Revenue Ruling 2004-109 includes a lengthy legal analysis that explains and supports its conclusion that ratification bonuses are wages for FICA purposes. To the extent that the Court is inclined to give that ruling "some

weight as reflecting the Commissioner's interpretation" (*Vons*, 51 Fed. Cl. at 6), the text of the ruling itself provides sufficient context for the Court to determine how much weight is appropriate. Ford will undoubtedly suggest that Rev. Rul. 2004-109 is entitled to little deference, because it was published after Ford brought the administrative proceedings that underlie its tax refund claims and is merely the IRS's litigating position. However, the filing dates of Ford's amended returns and the revenue ruling's publication date are a matter of record, and Ford needs no discovery to establish their timing.

Revenue Ruling 58-145 concerns "bonuses which are not predicated on continuing employment, made to new baseball players solely for signing their first contracts," rather than ratification bonuses like those that Ford made to its employees. That ruling could be relevant here only if its "facts and circumstances are substantially the same" as the situation at Bar, and if the ruling's analysis has not been undermined by "subsequent legislation, regulations, court decisions, and revenue rulings." Treas. Reg. § 601.601(d)(2)(v)(d). To determine whether the facts are substantially the same, the Court will compare Ford's circumstances with the situation described in the text of Rev. Rul. 58-145. IRS background documents cannot add to or detract from whether the facts are substantially the same, and the opinion of IRS employees, if there are any, on that question would be irrelevant. Whether Rev. Rul. 58-145 has been undermined by subsequent authority will depend on a comparison of the analysis in the revenue ruling with any later authorities. Again, the background documents would be unhelpful.

The three other rulings are even more remote from Ford's tax refund claims. Revenue Ruling 69-424 concerns tuition payments made to a college by a minor league baseball club on behalf of one of its players, pursuant to an employment contract between the player and the club.

Revenue Ruling 71-532 modified Revenue Ruling 69-424 and limited its application to wages paid after January 1, 1970. And Revenue Ruling 74-108 addressed a signing bonus paid to a professional soccer player in exchange for a covenant not to compete. These published rulings themselves have no bearing on whether payments to existing employees to ratify a collective bargaining agreement are wages. The background documents to those rulings are even more remote. They are irrelevant.

**2. The background documents are also irrelevant to Ford's abuse-of-discretion claim.**

The same factors that impair the usefulness of the background documents to the merit of Ford's tax-refund claim also render the documents irrelevant to Ford's abuse-of-discretion claim. In resolving Ford's challenge to the retroactive application of Rev. Rul. 2004-109, the Court does not conduct a plenary review of the IRS's decision. The Supreme Court has held that the IRS is not bound by a revenue ruling containing a mistake of law and may correct such mistake by retroactively revoking the ruling, "even where a taxpayer may have relied to his detriment." *Dixon v. United States*, 381 U.S. 68, 72-73 (1965). Accordingly, retroactive application is presumed to be proper, and it "may *only* be reviewed by this court for an abuse of discretion." *Mulholland*, 16 Cl. Ct. at 262 (emphasis in original).

The Court's review of the IRS's exercise of discretion focuses on three factors, none of which requires examination of the background documents for the challenged revenue ruling. First, whether "retroactivity would work a *change* in settled law *relied* upon by the taxpayers and implicitly approved by Congress" (*id.*) will depend on whether the facts of Rev. Rul. 58-145 are substantially the same as Ford's situation and whether the outcome of Rev. Rul. 58-145 has been undermined by subsequent legislation, regulations, court decisions, or revenue rulings. Those

are legal questions for which the text of Revenue Rulings 58-145 and 2004-109 might be relevant, but for which any background documents will not. And, while Ford's reliance could be a question of fact, any such facts would be within Ford's possession and would not be affected by the revenue rulings' background documents.

Second, whether retroactive application leads "to inequality of treatment between competitor taxpayers" (*Mulholland*, 16 Cl. Ct. at 262) or, as Ford suggests, similarly-situated taxpayers, is unaffected by the rulings' background documents. The Court will compare Ford's circumstances with the excepted situations in Revenue Ruling 2004-109 to determine whether they treat either "competitor" or "similarly-situated" taxpayers differently without any rational basis. Are baseball teams who pay signing bonuses competitors with Ford, or, under the standard Ford suggests, are baseball players receiving initial signing bonuses similarly situated with Ford's existing employees receiving ratification bonuses? Is there a rational basis for distinguishing between these situations? Unpublished, unofficial documents authored by individual IRS employees will not be helpful in answering these questions.

Third, the background documents are also irrelevant to whether "in general, the results of retroactivity in this case would be unduly harsh." *Mulholland*, 16 Cl. Ct. at 262. This factor focuses on the effect of the revenue ruling on Ford, for which the revenue ruling's background documents would be unimportant.

Notably, in *none* of the cases that Ford cites in the abuse-of-discretion count in its Complaint did the courts conclude that a ruling's retroactive application was inappropriate based on the a review of the ruling's background files. The holding in *Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388, 393-98 (2001), was based on the language of a challenged

revenue ruling, its application to hypothetical facts, and a comparison of that ruling with a prior revenue ruling.[3] There was no discussion of the ruling's background files. The holding in *IBM v. United States*, 343 F.2d 914, 921-25 (Ct. Cl. 1965), was based on a comparison of private letter rulings given to IBM and Remington Rand, Inc., and the fact that IBM and Remington were the only two competitors in a market to sell the devices affected by the rulings. Again, there was no discussion of background documents. The holding in *Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251, 254 (Ct. Cl. 1960), was based solely on the language of two revenue rulings, and there was no discussion of background documents. So, too, was the holding in *Connecticut Railway & Lighting Co. v. United States*, 142 F. Supp. 907, 908-09 (Ct. Cl. 1956), which compared the language of two rulings without considering background documents. *See also Mulholland*, 16 Cl. Ct. at 262-65 (applying three-factor test to resolve abuse-of-discretion claim without consideration of background documents for challenged revenue ruling).

The Court should decline to follow the contrary opinion of a district court in *Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977). There, the District Court of Delaware held that requests seeking a revenue ruling's background documents were relevant when a taxpayer challenged the ruling's retroactive application to its circumstances. *Id.* at 391-92. However, *Pierson* applied an incorrect standard of review to the taxpayer's abuse-of-discretion claim. *Pierson*'s holding that review of the "full administrative record" would be appropriate (*id.*), was based on the standard used to review, under the Administrative Procedure Act, 5 U.S.C. § 706, a Department of Transportation decision concerning the location of an interstate highway, where

[3] As explained, Judge Allegra has since questioned the validity of this holding. *See, e.g.*, *Vons*, 51 Fed. Cl. at 10 n.10.

the Secretary of Transportation failed to make formal findings in support of the decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-20 (1971) (cited in *Pierson*, 428 F. Supp. at 391.) The abuse-of-discretion standard for claims challenging retroactive application of a revenue ruling under section 7805(b) of the Code is markedly different. Moreover, the *Pierson* opinion was published when the discovery standards under the Federal Rules of Civil Procedure were more permissive and focused on relevance to the subject matter of the action, rather than relevance to the claims and defenses in the action.

Finally, even if the Court were to follow the result in the *Pierson* case and determine that the background file for the challenged ruling (here, Rev. Rul. 2004-109) might be relevant, the background documents for the other four revenue rulings would still be irrelevant, and at a minimum, a protective order should issue with respect to Ford's requests for those files.

**3. Ford's requests for documents concerning the interpretation, application, and consideration whether to modify revenue rulings are even more remote from its claims in this case.**

Ford's remaining requests seek documents concerning the interpretation, application, and consideration whether to modify Revenue Ruling 58-145, and documents concerning the interpretation and application of Revenue Ruling 2004-109. Such information is even more remote from the issues than the background documents discussed above.

In *Vons*, 51 Fed. Cl. 1, 23-24, this Court held that requests seeking background files for private letter rulings, technical advice memoranda, and general counsel memoranda "were not reasonably calculated to lead to the discovery of admissible evidence," notwithstanding the taxpayer's argument that such information might shed light on the meaning of a revenue ruling "by demonstrating not only the understanding given it by the Service's team of experts but also

how those experts arrived at that understanding." The Court also held that requests seeking all documents relating to the application of a revenue ruling to particular factual situations did not seek information that was "relevant or likely to lead to the discovery of admissible evidence." *Id.*

Ford's requests #10 and #11 seek such documents concerning the application or interpretation of Revenue Ruling 58-145. Ford's requests #15 and #16 seek such documents concerning the application or interpretation of Revenue Ruling 2004-109. Those requests could implicate audits or examinations of taxpayers who paid or received signing bonuses over the past fifty years, administrative claims for tax refund in which the taxation of signing bonuses were at issue, closing agreements, ruling requests, and offers in compromise involving taxpayers who paid or received signing bonuses, and litigation involving other taxpayers in which the ruling was discussed. (Decl. Shepherd, ¶ 27.) To the extent that there are responsive private letter rulings or other unpublished IRS documents, such documents cannot be cited as authority and are therefore irrelevant.

The requests could be construed to seek documents created in connection with the defense of similar lawsuits by other auto manufacturers and the resolution of the administrative claims that preceded them. (*See* Decl. Shepherd, ¶ 34.) Such information would also be irrelevant here. While such documents do concern the treatment of Ford's competitors (which is theoretically pertinent to Ford's abuse-of-discretion claim), Rev. Rul. 2004-109 creates a blanket rule for ratification bonuses that treats Ford and its competitors identically. Moreover, as Ford knows from the close cooperation of its counsel with the taxpayers' counsel in the other pending

lawsuits, the IRS denied the refund claims of Ford's competitors, just as the IRS denied Ford's refund claims here.

The requests could also be construed to seek documents concerning Revenue Ruling 2008-29, 2008-24 I.R.B. 1149, which was recently published on June 16, 2008, and which cited Rev. Rul. 2004-109. (Decl. Shepherd, ¶ 34.) Rev. Rul. 2008-29 addresses an employer's income-tax withholding obligations in "nine different situations involving the payment of supplemental wages." One situation involves a signing bonus paid pursuant to an employment contract. The ruling does not address ratification bonuses. To the extent that any background documents for this ruling may be responsive to Ford's request, they are irrelevant to Ford's claims here.

Finally, Ford's request #3 for documents concerning the "IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145" also seeks information that is irrelevant to Ford's claims. The occasions when the revenue ruling has been cited, modified, revised, or revoked are matters of public record. Some of those occasions include the published revenue rulings which Ford already requested, and which this brief has addressed elsewhere. Other occasions include general counsel memoranda, field service advisories, and other IRS publications. However, none of those publications can be cited as authority, and *unpublished* background documents associated with those publications therefore can have no effect on the merit of Ford's claims.

**B. The undue burden and expense of assembling, reviewing, and making formal assertions of privilege outweigh the utility, if any, from production of the documents.**

"A court must limit the frequency or extent of use of any discovery method provided under the Federal Rules of Civil Procedure and by any local rule when the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving issues." 6 Moore's Federal Practice, § 26.60[5] at 26-433 (3d ed. 2008). Defendant contends that Ford's discovery requests are irrelevant and that a protective order should issue on that basis. Nevertheless, if the Court were to determine that the documents sought by Ford's requests may be relevant, but only marginally, the burden and expense of assembling, reviewing, and making claims of privilege for the requested documents would constitute an alternative ground for entry of a protective order.

**1. It would be unduly burdensome to require defendant to search for and produce documents concerning its application and interpretation of revenue rulings.**

Paragraphs 25 through 34 of the Shepherd Declaration describe the difficulty of assembling and reviewing documents in response to Ford's requests for documents concerning the application and interpretation of IRS revenue rulings. Ford's requests broadly seek documents concerning audits or examinations of taxpayers, administrative claims for tax refund, closing agreements, ruling requests, offers in compromise, and litigation. Such information is not kept by subject matter, and there is no simple method of determining which files would or would not contain responsive information. Moreover, because the requests seek information

created over a fifty-year time period, it would be necessary to undertake a massive search to unearth all potentially responsive information.

In *Vons*, 51 Fed. Cl. 1, 24, this Court held that requests seeking such information were unduly burdensome. Such requests were, according to Judge Allegra, "extraordinarily broad, covering not only written determinations, but also informal communications and all associated documents." *Id.* On that basis, the Court excused the government from responding to such requests. The same rationale applies here.

Moreover, any responsive information would be interspersed with confidential information concerning other taxpayers whose disclosure is prohibited by 26 U.S.C. § 6103. Thus, even though Ford has excluded such information from the scope of its requests, "that exclusion would not minimize the burden to the IRS of guarding against the disclosure of such information," because the IRS "would be required to undertake the burden of carefully redacting the confidential taxpayer information from any responsive legal analysis." (Decl. Shepherd, ¶¶ 28, 32.) In *Vons*, 51 Fed. Cl. 1, 24, the Court determined that requests were "unduly burdensome and cumbrous" where "many of the materials requested would contain tax return information protected by section 6103(a)."

**2. It would be unduly burdensome to require defendant to search for and produce documents concerning proposals to modify or rescind Rev. Rul. 58-145.**

Paragraphs 19 through 24 of the Shepherd Declaration outline the lengthy steps defendant has taken in an effort to locate documents that are potentially responsive to Ford's request #3 for documents concerning the "IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145."

Because the IRS does not maintain such documents "in centralized files that would be associated with the older revenue ruling," the IRS has been required to search *ad hoc* through the files of various projects that may or may not contain responsive information. (Decl. Shepherd, ¶¶ 20-21.) Many such files must be obtained from off-site storage before they are reviewed. (*Id.*, ¶ 22.)

Defendant should be excused from the burden of conducting a further search for documents that are responsive to this request. The request is cumulative to the extent that it overlaps with Ford's requests for background documents concerning revenue ruling requests. The burden of continuing to search off-site files for responsive information is outweighed by the minimal relevance, if any, of background documents for general counsel memoranda and the other IRS publications in which Rev. Rul. 58-145 is cited.

**3. The undue burden of making formal assertions of the deliberative-process privilege outweighs any potential utility from production of background documents for revenue ruling requests**

Without the protective order it seeks here, defendant intends to assert the deliberative-process privilege, and other applicable privileges as well, in response to Ford's requests for production of the background documents for the revenue ruling requests. Paragraphs 38 through 49 of the Shepherd Declaration describe the time-consuming process that is necessary for defendant to make a formal assertion of the deliberative-process privilege. Defendant must carefully review all responsive documents, redacting only the deliberative portions, and producing the remainder. Defendant must prepare a detailed privilege log. And defendant must support its claim of privilege with the declaration of an official who is authorized to assert the deliberative-process privilege on its behalf.

Defendant has collected a substantial number of documents that are potentially responsive to these requests. There are more than 550 paper documents totaling over 2,600 pages. And, there are approximately 850 electronic-mail messages with 223 electronic documents attached to those messages. Each document must be reviewed to determine whether it is responsive and, if so, whether it is proper for defendant to assert privileges in response to Ford's requests. It will take many months of work to complete this task. (*See* Decl. Shepherd, ¶¶ 42, 51-52.)

Defendant respectfully submits that a protective order should issue, because the burdens associated with reviewing and producing such documents outweigh any potential benefit from their production. That is due to the lack of relevance of the documents Ford seeks, the sheer number of responsive documents, and the time and resources necessary for defendant to review the documents and make formal assertions of privilege.

**C. If the Court determined, as a preliminary matter, that the documents requested are relevant, there is good cause for an enlargement of time for defendant to make formal assertions of privilege.**

Defendant has not yet made formal assertions of the deliberative-process privilege, and other applicable privileges, in response to Ford's discovery requests. Because of the broad scope of Ford's requests and the large volume of potentially responsive documents, it was not possible for defendant to make formal assertions of privilege before bringing this motion for protective order. In addition, because relevance is a threshold question in a discovery dispute, "matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968). Accordingly, defendant requests that the Court resolve the

relevance and undue burden objections first, before defendant is required to undertake the burden of making formal assertions of privilege in response to Ford's requests.

Should the Court determine as a preliminary matter that the documents requested are relevant and that Ford's requests do not impose an undue burden, defendant requests a four-month enlargement of time, from the date of the Court's Order resolving this motion, to make formal assertions of privilege in response to Ford's requests. Good cause for the enlargement of time is established by the accompanying Shepherd Declaration.

There are more than 550 paper documents totaling over 2,600 pages that are potentially responsive to Ford's requests for background documents for revenue rulings identified in Ford's discovery requests. There are also approximately 850 electronic-mail messages, with 223 electronic documents attached to those messages. It would be very time consuming for defendant to make formal assertions of privilege with respect to these documents.

Because the deliberative-process privilege applies only to advisory opinions, recommendations, and deliberations comprising the process by which agency decisions are formulated, defendant must analyze all potentially privileged documents to determine whether assertions of privilege are appropriate. Moreover, because factual matter is generally not subject to the privilege unless it is intertwined with privileged information, defendant must carefully review and redact the documents to ensure that the assertions of privilege are narrow, while producing any non-privileged portions. (Decl. Shepherd, ¶ 39.) Paragraphs 43 through 49 of the Shepherd Declaration describe in detail the lengthy process of reviewing and making formal assertions of privilege.

The time required to make formal assertions of privilege is amplified by defendant's limited resources to perform the work. The IRS's "Office of Chief Counsel does not employ attorneys, paralegals, or other personnel dedicated to the production of discovery and to the preparation of associated privilege logs." (Decl. Shepherd, ¶ 41.) Thus, while the IRS has assembled a team to review responsive documents, suggest assertions of privilege, and prepare a privilege log, those individuals are "responsible for numerous cases and legal matters in addition to this project." (*Id.*, ¶ 42.)

Defendant has attempted to estimate the amount of time needed to make formal assertions of privilege for the revenue-ruling background documents that Ford has requested. To do this, the team assigned to this project reviewed a sample of ten e-mail documents, along with three attachments thereto. The team suggested assertions of privilege for those documents, and it drafted a privilege log. The work took approximately 15 hours. Assuming that the reviewing team would work at the same pace in reviewing and preparing privilege-log entries for other potentially responsive documents, it would take 22 weeks to prepare a privilege log, plus an additional four weeks to prepare a declaration making the formal assertions of privilege.[4]

Defendant understands that this computation may be too conservative, because the reviewing team would hopefully become more efficient as the work progressed. For that reason, rather than requesting a 26-week (or six-month) enlargement of time, defendant is requesting only four months, in the sincere hope that it could complete the work over that time, if it was required to do so. Defendant further suggests that the Court should schedule a status conference

[4] This computation assumes that three members of the reviewing team would spend half of their time (20 hours per week) reviewing the 550 paper documents. Afterwards, the three members of the reviewing team, assisted by two additional attorneys, would spend half of their time reviewing the 850 electronic-mail messages and their attachments.

after two months, at which time defendant would be required to report on the status of its work and the schedule could be revised, if necessary.

## IV. CONCLUSION

In refund suits in the Court of Federal Claims, more and more taxpayers seeking non-public, deliberative documents that have only the most tenuous connection to their case. These discovery requests impose substantial burdens on the IRS of collecting, reviewing, and either producing or making assertions of privilege for responsive documents. And they impose substantial burdens on the Court of reviewing documents *in camera* in order to resolve challenges to defendant's assertions of privilege. In the end, they only sidetrack the proper and expeditious consideration of the merits of the taxpayer's claims.

Defendant respectfully suggests that the Court should examine carefully the relevance and burden of such requests at the front end of the process, rather than waiting to do so during an *in camera* inspection of the requested documents. For the reasons stated above, defendant respectfully requests that the Court enter a protective order excusing it from producing documents in response to the requests at issue or, in the alternative, a four-month enlargement of time for making formal assertions of privilege.

Respectfully submitted,

s/Jason Bergmann

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section

s/Steven I. Frahm

Of Counsel

August 4, 2008