IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

DECLARATION OF NEIL D. SHEPHERD IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

I, Neil D. Shepherd, declare:

1. I am a Senior Counsel in the Office of Chief Counsel, Internal Revenue Service. I am a member in good standing of the District of Columbia Bar and am an inactive member of the Virginia State Bar and the State Bar of California.

2. I am the representative of the Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities) with responsibility for coordinating with the Department of Justice in connection with defense of the above-captioned case and of related cases pending in other courts. In that role, I have taken the lead in the efforts of the Internal Revenue Service to assemble documents in response to the First Request for Production and Second Request for Production that plaintiff Ford Motor Company served on the United States. I have also communicated with representatives of the U.S.

Department of the Treasury in an effort to assemble documents in its possession that may be responsive to those requests. I have personal knowledge of the facts stated in this declaration.

3. On April 25, 2008, Ford served its First Request for Production on the Department of Justice, Tax Division which promptly transmitted the request to the Office of Chief Counsel, Internal Revenue Service.

4. On July 2, 2008, Ford served its Second Request for Production on the Department of Justice, Tax Division which promptly transmitted the request to the Office of Chief Counsel, Internal Revenue Service.

5. Together, Ford's First Request and Second Request seek information concerning the issuance and application of five revenue rulings published by the Internal Revenue Service during the last fifty years. This declaration describes the efforts of the Internal Revenue Service to collect documents in response to plaintiff's requests.

***Ford's request for documents concerning Revenue Ruling 2004-109***

6. Plaintiff's First Request for Production requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 2004-109:

- "All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 2004-109, 2004-2 C.B. 958." [Document Request No. 1]

- "All documents relating to the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and consequently revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments." [Document Request No. 2]

- "All documents constituting, relating to, or reflecting communications (a) within the IRS, (b) within Treasury, (c) between the IRS and Treasury, (d) between the IRS and/or Treasury and any other party, with respect to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 2004-109, including the decision under Code § 7805(b) to apply Rev. Rul. 2004-109 (and revoke Rev. Rul. 58-145) prospectively with respect to signing bonuses or similar amounts paid to an employee in connection with the employee's initial employment, but retroactively with respect to all other signing bonuses or similar payments." [Document Request No. 6]

7. To collect documents responsive to Ford's requests for documents concerning Revenue Ruling 2004-109, I requested and obtained the legal file for Revenue Ruling 2004-109 from the Internal Revenue Service's Docket, Records & User Fee Branch. In addition, the Internal Revenue Service had previously assembled documents in response to requests made under the Freedom of Information Act ("FOIA"); I requested and obtained the file containing those documents from the Internal Revenue Service's Disclosure & Litigation Support Branch. Finally, I contacted eleven individuals at the Internal Revenue Service and the Department of the Treasury who worked on Revenue Ruling 2004-109 prior to its publication. In response to my request, those individuals assembled both electronic and paper documents and forwarded them to my office.

8. The legal file for Revenue Ruling 2004-109 obtained from the Docket, Records, and User Fee Branch contains approximately 37 documents, consisting of a total of 171 pages. The FOIA file obtained from the Disclosure & Litigation Support Branch contains approximately 108 documents, consisting of a total of 655 pages.

9. During my search of records maintained by individuals at the Internal Revenue Service and the Department of the Treasury, I collected approximately 300 background documents consisting of approximately 1,500 pages. I also collected approximately 850 e-mails with approximately 220 miscellaneous attachments. The documents and e-mails were maintained by the following individuals at the Internal Revenue Service and the Department of the Treasury: (a) Nancy J. Marks, Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities); (b) Catherine E. Livingston, Deputy Division Counsel/Deputy Associate Chief Counsel (Tax Exempt & Government Entities); (c) Kevin Knopf, Attorney-Advisor, Office of Tax Policy, Department of the Treasury; (d) Marie Cashman, Special Counsel (Tax Exempt & Government Entities); (e) Lynne A. Camillo, Branch Chief (Tax Exempt & Government Entities); (f) Janine Cook, Branch Chief (Tax Exempt & Government Entities); (g) Michael A. Swim, Senior Technician Reviewer (Tax Exempt & Government Entities); (h) Alfred G. Kelley, Attorney (Tax Exempt & Government Entities); (i) Elliot M. Rogers, Attorney (Tax Exempt & Government Entities); and (j) Charles V. Dumas, Attorney (Large & Midsize Business).

***Ford's request for documents concerning Revenue Ruling 58-145***

10. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 58-145:

> "All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 58-145, 1958-1 C.B. 360, including but not limited to the

> administrative file and background file documents relating to such ruling." [Document Request No. 9]

11. To collect documents responsive to Ford's request for documents concerning Revenue Ruling 58-145, I requested the legal file for Revenue Ruling 58-145 from the Internal Revenue Service's Docket, Records & User Fee Branch. I was advised that the legal file for Revenue Ruling 58-145 was checked out in connection with the drafting and publication of Revenue Ruling 2004-109, that there is no record that the file was returned, and that the legal file could not be found. The legal file also was not filed among or contained within the legal file or other documents for Revenue Ruling 2004-109. Consequently, notwithstanding having searched all relevant files and records and having contacted all personnel who potentially could have had the file, I was unable to locate the Revenue Ruling 58-145 legal file.

12. The Internal Revenue Service had previously assembled documents relating to the Revenue Ruling 58-145 legal file in response to a request made under FOIA. I requested and obtained the file containing those documents from the Internal Revenue Service's Disclosure & Litigation Support Branch. The FOIA file contains approximately 35 documents, consisting of a total of 85 pages.

***Ford's request for documents concerning Revenue Ruling 69-424***

13. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 69-424:

> "All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 69-424, 1969-2 C.B. 15, including but not limited to the

> administrative file and background file documents relating to such ruling." [Document Request No. 12]

14. To collect documents responsive to Ford's request for the documents concerning Revenue Ruling 69-424, I requested and obtained the legal file for Revenue Ruling 69-424 from the Internal Revenue Service's Docket, Records & User Fee Branch. The legal file for Revenue Ruling 69-424 contains approximately 29 documents, consisting of a total of 48 pages.

***Ford's request for documents concerning Revenue Ruling 71-532***

15. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 71-532:

> "All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 71-532, 1971-2 C.B. 356, including but not limited to the administrative file and background file documents relating to such ruling." [Document Request No. 13]

16. To collect documents responsive to Ford's request for documents concerning Revenue Ruling 71-532, I requested the legal file for Revenue Ruling 71-532 from the Internal Revenue Service's Docket, Records & User Fee Branch. The Docket, Records & User Fee Branch advised me that the legal file for Revenue Ruling 71-532 is missing and could not be found.

***Ford's request for documents concerning Revenue Ruling 74-108***

17. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 74-108:

> "All documents relating to the consideration, drafting, review, revision, approval, preparation, and/or publication of Rev. Rul. 74-108, 1974-1 C.B. 248, including but not limited to the administrative file and background file documents relating to such ruling." [Document Request No. 14]

18. To collect documents responsive to Ford's request for documents concerning Revenue Ruling 74-108, I requested and obtained the legal file for Revenue Ruling 74-108 from the Internal Revenue Service's Docket, Records & User Fee Branch. The legal file for Revenue Ruling 74-108 contains approximately 43 documents, consisting of a total of 222 pages.

***Ford's request for documents concerning proposals to modify or revoke Revenue Ruling 58-145***

19. Plaintiff's First Request for Production requests the United States to produce, *inter alia*, the following documents concerning Revenue Ruling 58-145:

> "For the time period dating from the publication of Rev. Rul. 58-145 to the date of its revocation, all documents relating to the IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145." [Document Request No. 3]

20. In my experience, on those occasions when the Internal Revenue Service considers whether to modify or revise previously-published revenue rulings, any documents generated during those considerations are not kept in centralized files that would be associated with the older revenue ruling. Rather, those documents would have been associated with the various files maintained with respect to an examination of a particular taxpayer or with respect to any particular projects which considered such modifications or revisions. Additionally, Revenue Ruling 58-145 was published more than 50 years ago. All of the people involved in the examination, assessment, analysis,

or consideration of Revenue Ruling 58-145 have retired and it would be expected that many of the files relating to those projects were destroyed in the ordinary course of business. For that reason, I was unable to locate any documents in the files of the Internal Revenue Service which generally collect documents that are responsive to this request.

21. In a further attempt to collect documents that are responsive to this request, I attempted to ascertain whether there were any particular projects which considered whether to modify or revise Revenue Ruling 58-145, so that I could request any files that were associated with such projects. I determined that the Internal Revenue Service has considered or has cited as authority Revenue Ruling 58-145 in connection with the following projects:

1. Revenue Ruling 2004-109, 2004-2 C.B. 958.
2. Revenue Ruling 74-108, 1974-1 C.B. 248.
3. Revenue Ruling 71-532, 1971-2 C.B. 356.
4. General Counsel Memorandum 35396 (July 11, 1973).
5. General Counsel Memorandum 35016 (August 31, 1972).
6. Field Service Advisory (March 16, 1995).
7. Non Docketed Service Advice Review (2001).
8. <u>Foreign Athletes and Entertainers</u> (1994).

22. I have attempted to locate any files that are associated with these eight projects in order to determine whether those files contain information that is responsive to Ford's request. A search for those files is underway and has not yet been completed. First, with respect to the three revenue rulings (71-532, 74-108, and 2004-109), Ford has already requested documents concerning those revenue rulings in connection with other requests. Second, with respect to the General Counsel Memoranda, to the extent that any files exist, the Internal Revenue Service's Docket, Records & User Fee Branch

stores them at an off-site facility. I have asked that the off-site facility be searched, but I do not yet know whether any files have been found. Third, with respect to the Field Service Advisory, I have been advised that the legal file was destroyed in accordance with the Office of Chief Counsel's standard file retention policy. Fourth, the Non Docketed Service Advice Review was prepared by attorneys in the Area Counsel Great Lakes office located in Chicago, Illinois. The National Office does not maintain files with respect to field service advice originating outside of the National Office. However, attorneys in the Area Counsel Great Lakes office are attempting to locate any documents relating to the Non Docketed Service Advice Review. Fifth, with respect to the market specialization program guidelines relating to foreign athletes and entertainers, the National Office does not maintain files relating to such guidelines. I am currently attempting to determine whether the Internal Revenue Service has retained any files relating to the guidelines.

23. I am also aware that revenue provisions contained in the President's fiscal year 2000 and 2001 budget proposals included revenue provisions relating to signing bonuses. Under the provisions in these budget proposals, signing bonuses would be subject to income-tax withholding and would be included in the definition of wages for FICA purposes. However, the budget provisions cautioned that no inference was intended by their proposal with respect to the application of prior law withholding rules to signing bonuses. Ford requested documents concerning those budget proposals in connection with other requests and, in response, the government produced publicly-available documents discussing those proposals.

24. In a further effort to determine whether, other than the occasions discussed in paragraphs 22 and 23, above, there were any other projects which considered whether to modify or revise Revenue Ruling 58-145, I conferred with Marie Cashman of the Office of Chief Counsel, Internal Revenue Service and Kevin Knopf of the Office of Tax Policy, Department of the Treasury who were involved in deliberations relating to Revenue Ruling 2004-109. Ms. Cashman and Mr. Knopf advised me that they are unaware of any other proposals to modify, revise, or revoke Revenue Ruling 58-145. However, Revenue Ruling 58-145 is over fifty years old, and neither Ms. Cashman nor Mr. Knopf could be expected to know the full history of any deliberations concerning that revenue ruling at the Internal Revenue Service or the Department of the Treasury.

***Ford's request for documents concerning the Internal Revenue Service's interpretation or application of Revenue Ruling 58-145***

25. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning the Internal Revenue Service's interpretation or application of Revenue Ruling 58-145:

- "For the time period from the publication of Rev. Rul. 58-145 through the present, all documents relating to the IRS's and/or Treasury's interpretation, analysis, assessment or consideration of the application of Rev. Rul. 58-145 to signing bonuses, sign on fees and/or ratification payments, except for specific taxpayer returns and return information relating to persons other than Ford that are protected from disclosure by 26 U.S.C. § 6103." [Document Request No. 10]

- "For the time period dating from the publication of Rev. Rul. 58-145 through the present, all documents relating to the application of Rev. Rul. 58-145 to signing bonuses, sign on

> fees and/or ratification payments, including but not limited to communications between the IRS and/or Treasury and any other party, and except for specific taxpayer returns and return information relating to persons other than Ford that are protected from disclosure by 26 U.S.C. § 6103."
> [Document Request No. 11]

26. As noted above, the Internal Revenue Service does not maintain "all documents relating to the IRS's and/or Treasury's interpretation, analysis, assessment or consideration of the application of Revenue Ruling 58-145 to signing bonuses, sign on fees and/or ratification payments" in a centralized location. Nor does the Internal Revenue Service maintain "all documents relating to the application of Revenue Ruling 58-145 to signing bonuses, sign on fees and/or ratification payments" in a single location. Rather, those documents are associated with the various legal and administrative files maintained with respect to particular projects or with respect to the examinations of particular taxpayers.

27. Among other things, the requests could implicate: (a) audits or examinations of taxpayers who paid or received signing bonuses over the last fifty years; (b) administrative claims for tax refund in which the taxation of signing bonuses were at issue; (c) closing agreements, ruling requests, and offers in compromise involving taxpayers who paid or received signing bonuses over the last fifty years; and (d) litigation involving other taxpayers in which Revenue Ruling 58-145 was cited or discussed. The Internal Revenue Service generally maintains files concerning such projects on a taxpayer-by-taxpayer basis, rather than by subject matter. Accordingly, there is no simple method for the Internal Revenue Service to determine which audits, refund claims, administrative proceedings, or lawsuits would, or would not, contain

information that is responsive to Ford's request. Therefore, in order to comply with the requests for production described above, a request for responsive documents would have to be sent to virtually all Internal Revenue Service and Department of the Treasury employees who may have worked on any such projects, over the last fifty years. The Office of Chief Counsel would then have to review the documents provided to determine whether such documents were responsive and whether privileges apply.

28. The documents requested would likely include a substantial sum of information concerning other taxpayers whose disclosure is prohibited by 26 U.S.C. § 6103. Although Ford's requests properly exclude such information from their scope, that exclusion would not minimize the burden to the Internal Revenue Service of guarding against the disclosure of such information. In the Internal Revenue Service's files concerning taxpayer examinations, administrative claims for refund, ruling requests, and lawsuits which might contain responsive information, confidential taxpayer information would likely be interspersed with legal analysis that could possibly apply or interpret Revenue Ruling 58-145. In reviewing (and potentially producing) such documents, the Internal Revenue Service would be required to undertake the burden of carefully redacting confidential taxpayer information from any responsive legal analysis.

29. As described above, individuals involved in the drafting, review, and publication of Revenue Ruling 2004-109 have performed a comprehensive search for documents relating to Revenue Ruling 58-145. The legal files relating to published guidance referencing Revenue Ruling 58-145 have also been obtained (where available). And a search is underway for files concerning projects where the Internal

Revenue Service considered Revenue Ruling 58-145 or cited it as authority. To require the Internal Revenue Service to go further would impose an enormous burden on the Office of Chief Counsel and would establish damaging precedent with implications extending well beyond this case.

***Ford's request for documents concerning the Internal Revenue Service's interpretation or application of Revenue Ruling 2004-109***

30. Plaintiff's Second Request for Production of Documents requests the United States to produce, *inter alia*, the following documents concerning the Internal Revenue Service's interpretation or application of Revenue Ruling 2004-109:

- "For the time period dating from the publication of Rev. Rul. 2004-109 through the present, all documents relating to the IRS's and/or Treasury's interpretation, analysis, assessment or consideration of the application of Rev. Rul. 2004-109 to signing bonuses, sign on fees and/or ratification payments, except for specific taxpayer returns and return information relating to persons other than Ford that are protected from disclosure by 26 U.S.C. § 6103." [Document Request No. 15]

- "For the time period dating from the publication of Rev. Rul. 2004-109 through the present, all documents relating to the application of Rev. Rul. 2004-109 to signing bonuses, sign on fees and/or ratification payments, including but not limited to communications between the IRS and/or Treasury and any other party, and except for specific taxpayer returns and return information relating to persons other than Ford that are protected from disclosure by 26 U.S.C. § 6103." [Document Request No. 16]

31. As described above, the Internal Revenue Service does not maintain "all documents relating to the IRS's and/or Treasury's interpretation, analysis, assessment or consideration of the application of Revenue Ruling 2004-109 to signing bonuses, sign on fees and/or ratification payments" in a centralized location. Nor does the Internal

Revenue Service maintain “all documents relating to the application of Revenue Ruling 2004-109 to signing bonuses, sign on fees and/or ratification payments” in a single location. Rather, those documents are associated with the various legal and administrative files maintained with respect to particular projects or with respect to the examination of particular taxpayers. Therefore, to comply with the requests for production described above, a request for responsive documents would have to be sent to virtually all Internal Revenue Service and Department of the Treasury employees who could have considered the interpretation or application of Revenue Ruling 2004-109 in any audit or taxpayer examination, administrative claim for tax refund, ruling request, or lawsuit occurring since the ruling was published. The Office of Chief Counsel would then have to review the documents provided to determine whether such documents were responsive and whether privileges apply.

32. The documents requested would likely include a substantial sum of information concerning other taxpayers whose disclosure is prohibited by 26 U.S.C. § 6103. Although Ford’s requests properly exclude such information from their scope, that exclusion would not minimize the burden to the Internal Revenue Service of guarding against the disclosure of such information. In the Internal Revenue Service’s files concerning taxpayer examinations, administrative claims for refund, ruling requests, and lawsuits which might contain responsive information, confidential taxpayer information would likely be interspersed with legal analysis that could possibly apply or interpret Revenue Ruling 2004-109. In reviewing (and potentially producing) such

documents, the Internal Revenue Service would be required to undertake the burden of carefully redacting confidential taxpayer information from any responsive legal analysis.

33. As Ford is aware, similar lawsuits have been filed by other automobile and parts manufacturers which claim that ratification bonuses paid to employees represented by the UAW union are exempt from FICA taxes. Those lawsuits were preceded by administrative claims for refund. Many documents have been created in connection with the defense of those lawsuits and the resolution of those administrative claims for refund. Ford's requests purport to require the Internal Revenue Service to pour through those documents, producing those portions which contain responsive legal analysis and redacting those portions which include confidential taxpayer information.

34. Revenue Ruling 2008-29 cites Revenue Ruling 2004-109 as authority for characterizing a signing bonus paid prior to the commencement of employment as wages for employment tax purposes. In an effort to determine whether any responsive documents were created during the deliberations preceding Revenue Ruling 2008-29, I requested the legal file for Revenue Ruling 2008-29 from the Internal Revenue Service's Docket, Records & User Fee Branch. I do not currently know the number of documents or volume of material associated with Revenue Ruling 2008-29 that may be responsive to the request for production.

***The government's intent to assert the deliberative-process privilege in response to Ford's document production requests***

35. The Office of Chief Counsel has considered the institutional interests implicated by the disclosure of documents pertaining to published guidance and has

determined that it will assert discretionary privileges in accordance with the following procedures (except in extraordinary circumstances):

> Documents pertaining to published guidance that are exempt from disclosure pursuant to discretionary discovery privileges or FOIA exemptions will be withheld. Published guidance includes regulations, revenue rulings, revenue procedures, notices, and announcements and is disclosed to the public by publication in the Federal Register or the Internal Revenue Bulletin. See 5 U.S.C. § 552(a)(1) and (2). The U.S. Department of Treasury's Office of Tax Policy and the Office of Chief Counsel have determined that it is inappropriate to waive applicable discretionary privileges or FOIA exemptions for privileged documents generated during the preparation of published guidance. The basis for this determination is twofold: (1) to protect against public confusion that might result from the disclosure of various internal positions that do not reflect the grounds for the adoption of the guidance that was published (or the decision not to publish guidance at all); and (2) to protect against exposing the decision making processes of the Department of the Treasury, Internal Revenue Service, and Office of Chief Counsel that would discourage candid discussion within these offices and undermine their ability to perform this critical tax administration function. See Office of Chief Counsel Notice 2005 005.

36. Each of Ford's requests seeks documents containing information that reflects recommendations, advisory opinions, deliberations, and other similar matters, comprising the process by which the associated governmental decisions and policies were formulated. The Internal Revenue Service contends that the deliberative-process privilege protects such information from disclosure, and the Internal Revenue Service intends to assert that privilege in response to Ford's document production requests. Those documents may also contain information protected by other privileges, such as the attorney-client privilege.

37. The Internal Revenue Service understands that defendant's counsel has also objected to Ford's document production requests on the grounds of relevance and

undue burden. Because of the time and expense required for the Internal Revenue Service to make a formal assertion of the deliberative-process privilege in response to Ford's document production requests, the Internal Revenue Service has not made a formal assertion of the privilege pending the resolution of the relevance and undue burden issues. If the Court determines that Ford's document production requests are relevant and not unduly burdensome, and, therefore, it becomes necessary for the Internal Revenue Service to make formal assertions of privileges in response to Ford's document production requests, the Internal Revenue Service will need additional time in order to assert the privilege formally.

***The administrative burden associated with asserting the deliberative-process privilege in response to Ford's document production requests***

38. It is very time-consuming and burdensome for the Internal Revenue Service to make a formal claim of the deliberative-process privilege. In the United States Court of Federal Claims, the government must formally invoke the deliberative-process privilege for documents in the possession of the Internal Revenue Service by a declaration signed by the Deputy Associate Chief Counsel (Procedure and Administration), to whom authority to invoke the deliberative-process privilege has been delegated by the Commissioner of Internal Revenue.

39. Before the Deputy Associate Chief Counsel prepares the declaration making the formal assertion of the deliberative-process privilege, the Internal Revenue Service carefully reviews the affected documents to ensure that any claim of the privilege is narrow. When asserting the deliberative-process privilege with respect to

predecisional/deliberative documents, the privilege is claimed only to protect those intra-governmental documents reflecting advisory opinions, recommendations, and deliberations that comprise part of the process by which agency decisions and policies are formulated. The agency does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by Government officials that the factual material cannot be excised from the privileged material or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental processes or the agency's deliberations.

40. After reviewing and properly redacting the affected documents to ensure that any claim of privilege is properly narrow, the Internal Revenue Service prepares a detailed privilege log, which identifies each document and explains, for each, the basis of the Internal Revenue Service's claim of privilege.

41. The Office of Chief Counsel does not employ attorneys, paralegals, or other personnel dedicated to the production of discovery and to the preparation of associated privilege logs. Addtionally, as discussed above, the Office of Chief Counsel does not have a centralized filing system where all records relating to a particular issue are stored.

42. In response to Ford's discovery requests the Office of Division Counsel/Associate Chief Counsel (Tax Exempt and Government Entities) has assembled a team consisting of one paralegal, two docket attorneys, a grade 15 senior counsel, and a grade 15 special counsel. Additionally, the Office of Division Counsel

(Large and Mid-Size Business) has assigned a docket attorney and ancillary support staff to assist with the collection and review of responsive documents and with the preparation of privilege logs. Finally, the Office of Associate Chief Counsel (Procedure and Administration) has assigned a docket attorney to provide legal assistance in reviewing responsive documents, asserting applicable privileges, and preparing a privilege log. However, each team member is responsible for numerous cases and legal matters in addition to this project.

43. To the extent that it becomes necessary for the Internal Revenue Service to make formal claims of the deliberative-process and other privileges in response to Ford's requests for production, the team assigned to this project would generally follow the following procedure.

44. First, an attorney or paralegal would carefully examine the documents and any related attachments to make a preliminary determination whether each document is responsive. The attorney or paralegal then analyzes each document to determine whether the government can assert any of the following privileges: § 6103 (confidential returns and return information); attorney-client privilege; work-product doctrine; and deliberative-process privilege. The attorney or paralegal also attempts to determine to what extent the responsive documents and e-mails are identical to e-mails produced by other respondents in an effort to reduce the number of responsive documents. Further with respect to a series of e-mails that contain some, but not all identical communications, it is important that the privileges asserted with respect to identical documents are uniform, and the process of ensuring so is time-consuming. The

attorney or paralegal prints the documents and marks any language proposed for redaction. The same steps are taken for any attachments to the documents.

45. Second, the attorney or paralegal would prepare a privilege-log entry for the documents. The privilege log contains the following information for each document: (a) document date; (b) document author; (c) addressee/recipient; (d) document type; (e) document description; (f) basis for claiming privilege.

46. Third, after completing a sufficient number of privilege-log entries, the attorney or paralegal would submit the draft privilege log to a docket attorney with the Office of Associate Chief Counsel (Procedure and Administration) for review. The docket attorney reviews the privilege log to ensure the accuracy of all claimed privileges and proposed redactions. The attorney or paralegal team member revises the privilege log to conform with the guidelines of the Office of Associate Chief Counsel (Procedure and Administration).

47. Fourth, where necessary, the reviewer would redact the affected documents by applying white tape to cover any privileged information. The redacted document is photocopied in preparation for production.

48. This process would be applied to all potentially responsive documents that the Internal Revenue Service collected for review in connection with Ford's document production requests, to the extent that the Court determined that such documents were relevant and the production of such information would not be unduly burdensome.

49. After the review of all affected documents is completed and a privilege log is prepared, the Deputy Associate Chief Counsel (Procedure and Administration) would

then prepare and sign a declaration making the formal assertion of privilege. The declaration would set forth the context in which the declaration is being made, the authority under which the declaration is being made, the context in which the documents for which the privilege is being claimed were generated, and a description of each of the documents for which the privilege is being claimed. Additionally, the declaration would set forth explicitly why the documents fall within the claimed privilege. The Deputy Associate Chief Counsel's work in this regard is not *pro forma*. She and her staff independently evaluate all assertions of privilege suggested by the reviewing team and, where necessary, revise them.

***Estimated time to make formal assertions of privilege based on work undertaken to date***

50. If the Court determines that Ford's document production requests are relevant and not unduly burdensome, and, therefore, it becomes necessary for the Internal Revenue Service to make formal assertions of privileges in response to Ford's document production requests, the Internal Revenue Service will need additional time in order to assert the privilege formally. In order to determine the amount of time that would be necessary, the reviewing team reviewed a sample of ten e-mails, with their attachments, that are responsive to Ford's requests for documents concerning the publication of Revenue Ruling 2004-109 [Request Nos. 1, 2, and 6]. Those e-mails and attachments generally consist of correspondence between and among attorneys responsible for proposing, drafting, reviewing, and publishing guidance relating to signing bonuses, i.e., Revenue Ruling 2004-109. The reviewing team recommended that the Internal Revenue Service should assert the deliberative-process privilege with

respect to the entirety of ten sample e-mail and with respect to two of the three attachments. The reviewing team then prepared a proposed privilege log for those e-mail and their attachments. A copy of the proposed privilege log is attached hereto as Exhibit A.

51. Review of the sample documents and preparation of the proposed privilege log took approximately 15 hours for the combined team. Assuming that: (a) the reviewing team would work at the same pace in reviewing and preparing privilege-log entries for other potentially responsive documents, and (b) members of the reviewing team would be able to spend half of their time (20 hours per week) working on this project, I estimate that the reviewing team would need the following amount of time in order to complete its work:

(a) For responsive documents (excluding e-mails and related attachments) concerning Revenue Ruling 2004-109, Revenue Ruling 58-145, Revenue Ruling 69-424, and Revenue Ruling 74-108, approximately 10 weeks.

(b) For responsive e-mails and related attachments concerning Revenue Ruling 2004-109, approximately 12 weeks.

(c) For documents concerning proposals to modify or revoke Revenue Ruling 58-145 [Request No. 3], unknown until document search has been completed and volume of responsive documents has been determined.

(d) For documents concerning the Service's interpretation or application of Revenue Ruling 58-145 [Request Nos. 10, 11], unknown until document search has been completed and volume of responsive documents has been determined.

(e) For documents concerning the Service's interpretation or application of Revenue Ruling 2004-109 [Request Nos. 15, 16], unknown until document search has been completed and volume of responsive documents has been determined.

52. After the reviewing team would complete its work, the Deputy Associate Chief Counsel would need additional time in order to evaluate the recommendations of the reviewing team and draft a declaration making a formal assertion of privilege. At a minimum, an additional four weeks would be required in order for the Deputy Associate Chief Counsel to perform this work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 4, 2008.

s/Neil D. Shepherd
NEIL D. SHEPHERD