IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

---

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

---

**PLAINTIFF'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE AND OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

---

Thomas D. Johnston
Attorney of Record for Plaintiff
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 508-8022
Facsimile: (202) 508-8100

Of Counsel:

Ian C. Friedman
Natalie Waites
Shearman & Sterling LLP

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........................................................................................ ii

PLAINTIFF'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE ........................................................................ 1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE ........................................................................................................... 7

I. INTRODUCTION ........................................................................................... 7

II. BACKGROUND ........................................................................................... 12

A. The Ratification Bonuses in Issue ........................................................ 12

B. The Statutory Definition of "Wages" for FICA, FUTA, and Income Tax Withholding Purposes .......................................................................... 13

C. "Wages" as Interpreted by Rev. Rul. 58-145 and Rev. Rul. 2004-109 with Respect to Contract Signing and Ratification Bonuses. ........................... 14

III. ARGUMENT ................................................................................................ 16

A. The Materials Sought by Ford Are Relevant. ........................................ 17

1. The materials sought by Ford are relevant to the Court's determination of whether the Ratification Bonuses are wages. ............... 17

2. The materials sought by Ford also are relevant to the Court's review of the IRS's discretionary determination to apply Rev. Rul. 2004-109 prospectively to some taxpayers but retroactively to Ford and its UAW employees. ....................................................................... 24

B. Ordering Defendant to Produce or to Properly Claim Privilege with Respect to the Documents Sought Would Not Subject Defendant to Undue Burden or Expense. ....................................................................................... 33

1. The requirements of asserting the deliberative process privilege do not render Ford's requests unduly burdensome. ........................................ 35

2. Ford will not oppose a reasonable enlargement of time to assert privilege if the Court considers an enlargement appropriate. ................. 37

IV. CONCLUSION ............................................................................................. 37

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir. 1977) ....24, 28

*Branerton v. Comm'r*, 64 T.C. 191 (1975) .... 31

*Camp v. Pitts*, 411 U.S. 138 (1973).... 30

*Chock Full O' Nuts Corp. v. United States*, 453 F.2d 300 (2d Cir. 1971) .... 24

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .... 30

*Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001) ....25, 28

*Conn. Ry. & Lighting Co. v. United States*, 135 Ct. Cl. 650, 142 F. Supp. 907 (Ct. Cl. 1956) ....25, 28

*Eley v. Herman*, 2005 U.S. Dist. LEXIS 30476 (N.D. Ind. Nov. 21, 2005).... 35

*Exchange Parts Co. of Fort Worth v. United States*, 150 Ct. Cl. 538, 279 F.2d 251 (Ct. Cl. 1960).... 25

*Farmers' and Merchants' Bank v. United States*, 476 F.2d 406 (4th Cir. 1973).... 24

*Flamingo Fishing Corp. v. United States*, 22 Ct. Cl. 625 (1991) .... 20

*Hanover Bank v. Comm'r*, 369 U.S. 672 (1962).... 17

*Int'l Bus. Machs. v. United States*, 170 Ct. Cl. 357 (1965) .... 17, 25, 26, 29

*Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005) ....*passim*

*Marriott Int'l Resorts, L.P. v. United States*, 61 Fed. Cl. 411 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006)....19, 36

*Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006)....22, 36

*Mulholland v. United States*, 16 Cl. Ct. 252 (Fed. Cl. 1989).... 28

*Murphy v. Comm'r*, 469 F.3d 27 (1st Cir. 2006) .... 31

*Oshkosh Truck Corp. v. United States*, 123 F.3d 1477 (Fed. Cir. 1997).... 28

*Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977) ........ 25, 30, 31

*Robinette v. Comm'r*, 439 F.3d 455 (8th Cir. 2006) ........ 31

*Rowan Cos. v. United States*, 452 U.S. 247 (1981) ........ 17

*Shipkovitz v. United States*, 1 Ct. Cl. 400 (1983) ........ 21

*Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325 (D. Kan. 1991) ........ 35

*Vons Co. v. United States*, 51 Fed. Cl. 1 (2001) ........ 19

**DOCKETED CASES**

*In re Delphi Corp.*, No. 08-01038 (Bankr. S.D.N.Y. filed Jan. 18, 2008) ........ 23

**STATUTES**

Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et. seq* ........ 13

Internal Revenue Code of 1986, 26 U.S.C. § 3121(a),(b) ........ 13, 14

Internal Revenue Code of 1986, 26 U.S.C. § 3306(b),(c) ........ 14

Internal Revenue Code of 1986, 26 U.S.C. § 3401(a) ........ 14

Internal Revenue Code of 1986, 26 U.S.C. § 6110(k)(3) ........ 17

Internal Revenue Code of 1986, 26 U.S.C. § 7805(b) ........ *passim*

Taxpayer Bill of Rights 2, Pub. L. No. 104-168, §1101, 110 Stat. 1452 (1996) ........ 10

**REGULATIONS**

26 C.F.R. § 601.601(d)(2)(v)(c) ........ 25

26 C.F.R. § 601.601(d)(2)(v)(d) ........ 18

**MISCELLANEOUS**

H.R. Rep. No. 104-506 (1996) ........ 10

Joint Comm. on Taxation, 106th Cong., Description of Revenue Provisions Contained in the President's Fiscal Year 2000 Budget Proposal (Comm. Print 1999)........................ 15

Joint Comm. on Taxation, 106th Cong., Description of Revenue Provisions Contained in the President's Fiscal Year 2001 Budget Proposal (Comm. Print 2000)........................ 15

Memorandum of Law in Support of the Government's Motion for an Order Withdrawing the Reference, *In re Delphi Corp.*, No. 08-01038 (Bankr. S.D.N.Y. May 13, 2008) ........................................................................................................ 23

Office of Mgmt. & Budget, Exec. Office of the President, Budget of the United States Government, Fiscal Year, 2000 (1999)........................................................................ 14

Office of Mgmt. & Budget, Exec. Office of the President, Budget of the United States Government, Fiscal Year, 2001 (2000)........................................................................ 14

Order, *Jade Trading, LLC v. United States*, Fed. Cl. No. 03-2164-T (Aug. 15, 2005)............... 22

Order, *Marriott Int'l Resorts, L.P. v. United States*, Fed. Cl. Nos. 01-256-T & 01-257-T (Nov. 2, 2007)........................................................................................................ 22

RCFC 7(b)(1) ........................................................................................................ 2

RCFC 26(b)(1) ........................................................................................................ 17

RCFC 26(c)........................................................................................................ 16

RCFC 30(b)(6) ........................................................................................................ 33

RCFC 37(a)(2)(B) ........................................................................................................ 1, 12

Rev. Rul. 58-145, 1958-1 C.B. 360........................................................................*passim*

Rev. Rul. 69-424, 1969-2 C.B. 15........................................................................ 9

Rev. Rul. 71-532, 1971-2 C.B. 356........................................................................ 9

Rev. Rul. 74-108, 1974-1 C.B. 248........................................................................ 9

Rev. Rul. 2004-109, 2004-2 C.B. 958....................................................................*passim*

8A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2214 (3d ed. 2008)........................................................................................................ 35

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

**PLAINTIFF'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE**

Pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Ford Motor Company ("Ford"), in response to Defendant United States' Motion for Protective Order, cross-moves for an order compelling Defendant either (i) to produce the documents sought in 12 related requests for production of documents served by Ford in this case; or (ii) to claim privilege properly with respect to those documents. Ford's cross-motion, like Defendant's motion, concerns document requests numbered 1, 2, 3, and 6 in Ford's First Request for Production, dated April 25, 2008, and document requests numbered 9 through 16 in Ford's Second Request for Production, dated July 2, 2008. The 12 requests in issue are hereinafter referred to as the "Requests."

If the Court decides to grant Defendant's Motion for Protective Order, Ford, pursuant to RCFC 7(b)(1), respectfully requests an order precluding Defendant from using in this case documents within the scope of the Requests.

Ford's opposition to Defendant's motion and Ford's cross-motion are based on the following grounds:

(1) The documents sought are relevant to Ford's claims. This case asks the Court to decide whether Ford and its employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (the "UAW") are entitled to a refund of social security and Medicare ("FICA") taxes. Ford erroneously paid the taxes with respect to contract ratification bonuses Ford paid to its UAW employees in 1996 and 1999. The resolution of this issue requires the Court to decide (i) whether ratification bonuses are "wages" for FICA purposes, and (ii) whether the Internal Revenue Service ("IRS") abused its discretion when it revoked its longstanding interpretation of "wages" and provided that its new interpretation would apply prospectively to some taxpayers but retroactively as to Ford and its UAW employees. The documents sought in the Requests are relevant or likely to be relevant to both determinations.

Specifically, the documents sought in the Requests relate to two conflicting revenue rulings published by the IRS: Revenue Ruling 58-145, 1958-1 C.B. 360, and Revenue Ruling 2004-109, 2004-2 C.B. 958. Rev. Rul. 58-145 considered contract signing bonuses and concluded that some of those bonuses were, and others of those bonuses were not, "wages" for withholding tax purposes. The ruling's rationale is that a contract signing bonus is remuneration for services and thus wages only if the bonus is contingent on the performance of services or on continuing employment.

Rev. Rul. 58-145 remained the IRS's interpretation of the law for more than 45 years, until the IRS changed its mind and issued Rev. Rul. 2004-109. The 2004 ruling concludes that Rev. Rul. 58-145's "contingent on services or on continuing employment" standard was a mistake. In its place, Rev. Rul. 2004-109 adopted a new and quite different test for when contract signing or ratification bonuses are wages. Rev. Rul. 2004-109 effectively asserts that all payments made by an employer to an employee are wages, unless the employee provides separate and adequate consideration for the payments that is not dependent on the employer-employee relationship.

Rev. Rul. 2004-109 revoked Rev. Rul. 58-145, but did so *prospectively* with respect to contracts for *initial employment* and *retroactively* with respect to contracts such as Ford's, which were entered into with *existing employees*. The IRS took this action only after Ford had filed administrative claims for refund of the taxes in issue in this case, after other automobile and automobile parts manufacturers had filed similar significant refund claims, and after Congress had twice declined to act on a legislative proposal to amend the Internal Revenue Code ("Code") to subject contract signing bonuses to withholding and employment taxes.

Against this background, the documents sought by Ford are relevant for two reasons. First, the IRS has changed its longstanding interpretation of "wages." The documents sought will help the Court determine the proper meaning of that term in the context of this case. Second, the IRS has exercised its discretion under Code section 7805(b) to apply its new interpretation in Rev. Rul. 2004-109 prospectively to some taxpayers and retroactively to other similarly situated taxpayers such as Ford and its UAW employees. Ford asserts that this differing application of Rev. Rul. 2004-109 is an abuse of discretion because it lacks a rational basis and is intended to provide the IRS with an advantage in dealing with Ford's administrative

refund claims, this litigation, and other similar cases. Many of the documents sought—and the vast majority of the potentially responsive documents so far identified by Defendant—constitute the administrative record or background of Rev. Rul. 2004-109. Those documents should help the Court determine whether the IRS's exercise of discretion in Rev. Rul. 2004-109 lacks a rational basis or otherwise is an abuse of discretion.

(2) The relevance of the documents sought is not outweighed by undue burden or expense. As Defendant expressly acknowledges in its brief, the Court in similar discovery disputes has rejected relevance arguments asserted by Defendant. In consequence, Defendant urges the Court to bar the production sought on grounds of undue burden and expense—including the burden and expense that would result if the Court required Defendant properly to assert privilege in this case.

Defendant so far has identified approximately 2600 pages of potentially responsive documents and approximately 852 potentially responsive emails (with 223 electronic documents attached). The vast majority of the documents identified—approximately 2300 pages of the documents and all of the emails and attachments—apparently constitute the background file or administrative record of Rev. Rul. 2004-109. The vast majority of the documents thus likely would help the Court decide whether the IRS abused its discretion when it decided to apply Rev. Rul. 2004-109 prospectively to certain taxpayers but retroactively as to Ford and its UAW employees.

Given the relevance of these documents, the dollar amounts at stake, and the resources of the parties, requiring Defendant to produce or review this amount of material would not be unduly burdensome. Defendant argues that having to assert privilege claims properly would be an undue burden; this puts the cart before the horse. At this juncture, the Court is

evaluating relevance; an inquiry into privilege should take place only after relevance has been determined and Defendant has claimed privilege in a manner permitting meaningful review of that claim by the Court.

(3) If the Court declines to compel production, the Court should preclude Defendant from using any documents within the scope of the Requests. Defendant so far has not produced a single document in response to the Requests. Defendant's position is that the only relevant information concerning Rev. Ruls. 58-145 and 2004-109 is the text of those rulings. If the Court concludes that the documents sought by Ford are not relevant or otherwise grants Defendant's motion, Ford respectfully requests that the Court issue an order precluding Defendant from using in this case any documents within the scope of the Requests. If the materials Ford seeks are irrelevant or otherwise protected, Defendant should not be able to use the materials to support either the interpretations of Rev. Rul. 58-145 and Rev. Rul. 2004-109 Defendant offers in this litigation or Defendant's assertion that the differential application of Rev. Rul. 2004-109 is not an abuse of discretion.

The undersigned certifies that the parties have on several occasions conferred by telephone in good faith in an attempt to narrow or resolve discovery issues, but have been unable to resolve their differences with respect to the Requests.

In support of this motion, Ford submits the attached brief responding to Defendant's Motion for Protective Order and supporting Plaintiff's Cross-Motion to Compel. Ford's cross-motion also is supported by the accompanying Declaration of Thomas D. Johnston, and all other pleadings in this action.

Dated: August 18, 2008

Respectfully submitted,

s/ Thomas D. Johnston

Thomas D. Johnston
Attorney of Record for Plaintiff
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 508-8022
Facsimile: (202) 508-8100

<u>Of Counsel</u>:

Ian C. Friedman
Natalie Waites
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI 48121

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE**

## I. INTRODUCTION

Plaintiff Ford Motor Company ("Ford") respectfully submits this memorandum of law (i) in response to Defendant's Motion for Protective Order and (ii) in support of Ford's Cross-Motion to Compel Production of Documents or Proper Assertion of Privilege. Both Defendant's motion and Ford's cross-motion concern 12 related requests ("Requests") for production of documents served by Ford in this case. Specifically, both motions concern document requests numbered 1, 2, 3, and 6 in Plaintiff Ford Motor Company's First Request for Production to the United States of America, dated April 25, 2008, and document requests

numbered 9 through 16 in Plaintiff Ford Motor Company's Second Request for Production to the United States of America, dated July 2, 2008.[1]

This case asks the Court to decide whether Ford and its employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (the "UAW") are entitled to a refund of social security and Medicare ("FICA") taxes Ford erroneously paid with respect to contract ratification bonuses. The bonuses were paid to Ford's UAW-represented employees in 1996 and 1999 to secure contract ratification. The bonuses were not paid for services and were not conditioned on employees rendering past or future services.

Contrary to Defendant's assertions, the documents sought in the Requests are relevant to the Court's consideration of Ford's refund claim. Also contrary to Defendant's assertions, requiring Defendant to produce the documents or properly to assert privilege with respect to the documents would not be unduly burdensome. The Court should accordingly deny Defendant's motion, grant Ford's cross-motion, and order Defendant either to produce the documents sought by the Requests or to make a proper claim of privilege with respect to any document not produced.

The reasons why the Court should deny Defendant's motion and grant Ford's cross-motion are summarized and then discussed in detail below.

The Requests seek the production of documents relating to two conflicting revenue rulings: Rev. Rul. 58-145, 1958-1 C.B. 360, and Rev. Rul. 2004-109, 2004-2 C.B. 958.[2]

---

[1] Copies of Ford's first and second requests for production, as well as copies of Defendant's responses to those requests, are attached as Exhibits A through D to the Declaration of Jason Bergmann in Support of Defendant's Motion for Protective Order.

[2] All but three of the Requests expressly seek documents relating to Rev. Rul. 58-145 or Rev. Rul. 2004-109. The remaining three Requests—those numbered 12, 13, and 14—seek

Rev. Rul. 58-145 considered certain contract signing bonuses and concluded that some of those bonuses were, and others of those bonuses were not, "wages" for withholding tax purposes. The ruling's rationale is that a contract signing bonus is remuneration for services and thus wages only if the bonus is contingent on the performance of services or on continuing employment.

Rev. Rul. 58-145 remained the IRS's interpretation of the law for more than 45 years until the IRS changed its mind and issued Rev. Rul. 2004-109. That ruling concludes that Rev. Rul. 58-145's "contingent on services or on continuing employment" standard was a mistake. In its place, Rev. Rul. 2004-109 adopted a new and quite different test for when contract signing or ratification bonuses are wages. Rev. Rul. 2004-109 effectively asserts that all payments made by an employer to an employee are wages, unless the employee provides separate and adequate consideration for the payments that is not dependent on the employer-employee relationship.

Due to the 45-year-old mistake perceived by the IRS, Rev. Rul. 2004-109 revoked Rev. Rul. 58-145, but did so *prospectively* with respect to bonuses paid under contracts for *initial employment* and *retroactively* with respect to bonuses paid under contracts such as Ford's, which were entered into with *existing employees*. The IRS took this action only after Ford had filed the administrative claims at issue in this case, after other automobile and automobile parts manufacturers had filed similar significant refund claims, and after Congress had twice declined

---

documents relating to three other published rulings, but the documents responsive to those Requests may shed light on the meaning of Rev. Rul. 58-145 and may be part of the background file or administrative record of Rev. Rul. 2004-109. Specifically, Rev. Rul. 71-532, 1971-2 C.B. 356, and Rev. Rul. 74-108, 1974-1 C.B. 248, discuss Rev. Rul. 58-145, and Rev. Rul. 69-424, 1969-2 C.B. 15, was modified by Rev. Rul. 71-532 based in part on that ruling's discussion of Rev. Rul. 58-145. All three rulings were revoked or obsoleted by Rev. Rul. 2004-109.

to act on legislative proposals to amend the Internal Revenue Code of 1986 ("Code") to subject all contract signing bonuses to employment taxes.

Against this background, the documents sought in the Requests are relevant for two reasons. First, Ford asserts it is entitled to a refund because the contract ratification bonuses it paid are not "wages" for FICA purposes, under the longstanding interpretation of wages evidenced by Rev. Rul. 58-145. By issuing Rev. Rul. 2004-109, the IRS has changed its long-held interpretation of wages. The documents sought concern the development, promulgation, interpretation, and application of these two rulings and will help the Court determine the meaning of "wages" in the context of this case.

Second, the IRS abused its discretion under Code section 7805(b) by applying its new interpretation of "wages" in Rev. Rul. 2004-109 prospectively to some taxpayers and retroactively to other similarly situated taxpayers such as Ford and its UAW employees.[3] This discrimination lacks a rational basis and is intended merely to give the IRS an advantage in dealing with Ford's administrative refund claims, this litigation, and other similar cases. Many of the documents sought in the Requests—and the vast majority of the potentially responsive documents so far identified by Defendant—constitute the administrative record or background of the IRS's exercise of discretion in Rev. Rul. 2004-109. They should help the Court determine whether that exercise lacked a rational basis or otherwise was an abuse of discretion.

[3] Code section 7805(b)(8) provides that "The Secretary may prescribe the extent, if any, to which any ruling . . . relating to the internal revenue laws shall be applied without retroactive effect." Before amendment in 1996, Code section 7805(b) was not divided into paragraphs and the Secretary's discretion to provide for the prospective application of revenue rulings was contained in section 7805(b) instead of section 7805(b)(8). No change in the Secretary's discretion with respect to revenue rulings was intended by this amendment. *See* Taxpayer Bill of Rights 2, Pub. L. No. 104-168, § 1101, 110 Stat. 1452 (1996) (amending section 7805(b)); H.R. Rep. No. 104-506, at 44 (1996) (legislative history of 1996 amendment; stating that present law with respect to rulings is unchanged).

Defendant acknowledges that the Court in other discovery disputes has rejected similar relevance arguments made by Defendant. Consequently, Defendant asserts that the Court should bar the production sought on grounds of undue burden or expense.

Defendant so far has identified approximately 2600 pages of potentially responsive documents and approximately 852 potentially responsive emails (with 223 electronic documents attached). The vast majority of the documents identified—approximately 2300 pages of the documents and all of the emails and attachments—apparently constitute the background file or administrative record of Rev. Rul. 2004-109. The vast majority of the documents would thus help the Court decide whether the IRS abused its discretion when it decided to apply Rev. Rul. 2004-109 prospectively to certain taxpayers but retroactively as to Ford and its UAW employees.

Given the relevance of these documents, the dollar amounts at stake, and the resources of the parties, requiring Defendant to produce or review this amount of material would not be unduly burdensome or expensive. Defendant argues that having properly to assert privilege claims would be an undue burden; this puts the cart before the horse. At this juncture, the Court is evaluating relevance; an inquiry into privilege should take place only after relevance has been determined and the Defendant has claimed privilege in a manner permitting meaningful review of that claim by the Court.

Defendant so far has not produced a single document in response to the Requests.[4] Defendant's position is that the only information concerning Rev. Ruls. 58-145 and 2004-109 relevant to the Court's consideration of Ford's claims is the text of the rulings themselves. As

[4] In response to Request 1, Defendant agreed to produce "copies of documents addressing Rev. Rul. 2004-109 which were made available to the public in response to a request under the Freedom of Information Act." Ford has not yet received these documents from Defendant.

required by RCFC 37(a)(2)(B), Ford's counsel has met and conferred with Defendant's counsel several times by telephone in a good faith attempt to resolve or narrow differences with respect to the Requests. These attempts have been unsuccessful due to Defendant's insistence that only the text of the rulings, and not a single document related to the development, promulgation, interpretation, application, or reconsideration of the rulings, is relevant to this case.

For all the above reasons, Ford respectfully requests that the Court deny Defendant's motion for protective order, grant Ford's cross-motion, and order Defendant to produce the documents sought by the Requests or to make a proper claim of privilege with respect to any document not so produced. If the Court concludes that the documents sought in the Requests are not relevant or otherwise grants Defendant's motion, Ford respectfully requests that the Court issue an order precluding Defendant from using in this case any document within the scope of the Requests. If the materials Ford seeks are irrelevant or are protected for other reasons, Defendant should not be able to use them to support either the interpretations of Rev. Rul. 58-145 and Rev. Rul. 2004-109 Defendant advances in this litigation, or Defendant's assertion that the discriminatory application of Rev. Rul. 2004-109 was not an abuse of the IRS's discretion.

## II. BACKGROUND

### A. The Ratification Bonuses in Issue

Ford periodically negotiates collective bargaining agreements ("CBAs") covering its employees represented by the UAW. These CBAs, as negotiated between Ford and the UAW leadership, must be approved by vote of the UAW members to become effective.

The 1996 CBA provided that, if the UAW members ratified the CBA, Ford would make a $2,000 up front lump sum payment to each full-time employee on Ford's active employment roll. The only conditions for entitlement to the bonus payment were (i) that the

CBA be approved by the UAW members and (ii) that the recipient be listed as a full-time employee on Ford's active employment roll as of the CBA's effective date. All eligible employees received the same $2,000 payment; the amount of the payment did not depend on job title, seniority, hourly rate, or any of the other factors on which Ford generally bases compensation for services. Entitlement was not conditioned on an employee performing services either before or after ratification of the CBA. The 1999 CBA similarly provided that, if that CBA were ratified, Ford would make a $1,350 up front lump sum payment to each full-time employee listed on the active employment roll. These $2,000 and $1,350 up front lump sum payments are referred to hereinafter as the "Ratification Bonuses."

### B. The Statutory Definition of "Wages" for FICA, FUTA, and Income Tax Withholding Purposes

The Federal Insurance Contributions Act, 26 U.S.C. § 3101 *et. seq.*, imposes social security and Medicare taxes on payments of "wages." For FICA purposes, "wages" are defined as "all remuneration for employment." "Employment" is defined as "any service . . . performed . . . by an employee for the person employing him . . . ." [5] Taking these definitions together, wages for FICA purposes are remuneration for services performed by an employee for his employer.

Ford never has contended that the Ratification Bonuses are not taxable income or otherwise are not taxable to the employees who received them. Instead, Ford contends that the payments are not wages for FICA purposes because they are not remuneration for services. This is because the Ratification Bonuses were not contingent on the performance of services or on continued employment by the recipient employees.

[5] *See* Code §§ 3121(a) and (b). The FICA definitions of wages and employment are subject to exceptions not relevant to this case.

### C. "Wages" as Interpreted by Rev. Rul. 58-145 and Rev. Rul. 2004-109 with Respect to Contract Signing and Ratification Bonuses.

Rev. Rul. 58-145 considered whether two types of bonuses paid to baseball players for signing their first contracts are remuneration for services and thus wages for income tax withholding purposes. The ruling concluded that a signing bonus not contingent on the performance of subsequent service or continued employment is not remuneration for services and thus is not wages. The ruling contrasted a signing bonus that is contingent on the performance of subsequent service or continued employment, and found that such a bonus is remuneration for services and thus wages. The ruling thus based classification of a signing bonus as wages as dependent on whether the bonus is contingent on the performance of services or on continuing employment.[6]

Rev. Rul. 58-145 remained the IRS's interpretation of the law for more than 45 years. In 1999 and 2000, President Clinton proposed legislation that would have amended the Code to subject all signing bonuses to withholding and employment taxes, but Congress declined to act on these proposals.[7] In its contemporaneous explanations of those proposals, the Staff of

---

[6] Although Rev. Rul. 58-145 only considered whether the signing bonuses were wages for income tax withholding purposes, the statutory definition of wages is the same for FICA, Federal unemployment tax ("FUTA"), and Collection of Income Tax at Source (Federal income tax withholding) purposes. *See* Code §§ 3121(a) and (b) (defining wages for FICA purposes as "all remuneration for employment," and "employment" as "any service . . . performed . . . by an employee for the person employing him . . . ."); Code §§ 3306(b) and (c) (defining wages for FUTA purposes as "all remuneration for employment," and employment as "any service . . . performed . . . by an employee for the person employing him . . . ."); Code § 3401(a) (defining wages for income tax withholding purposes as "all remuneration . . . for services performed by an employee for his employer . . . ."). The definitions are subject to exceptions not relevant to this case.

[7] Office of Mgmt. & Budget, Exec. Office of the President, Budget of the United States Government, Fiscal Year, 2000 (1999); Office of Mgmt. & Budget, Exec. Office of the President, Budget of the United States Government, Fiscal Year, 2001 (2000).

the Joint Committee on Taxation cited Rev. Rul. 58-145 and described the law then in effect as follows:[8]

> Under present law, bonuses paid to individuals for signing contracts of employment are required to be included in gross income in the taxable year in which paid. However, the IRS has ruled that if the contract does not contain a provision requiring the performance of future services, then the bonus payment does not constitute remuneration for services performed and, accordingly, does not constitute wages for income tax withholding purposes.

The IRS eventually changed its mind about the longstanding interpretation of "wages" contained in Rev. Rul. 58-145. The IRS issued Rev. Rul. 2004-109, which concludes that Rev. Rul. 58-145's "contingent on services or on continuing employment" standard was a mistake. The IRS took this action only after Ford had filed the administrative refund claims at issue in this case,[9] after other automobile and automobile parts manufacturers had filed similar significant refund claims, and after Congress twice had declined to act on the President's proposals to amend the Code to subject all signing bonuses to FICA and other withholding taxes.

In place of the interpretation set forth in Rev. Rul. 58-145, Rev. Rul. 2004-109 adopted a new and quite different test for determining when contract signing or ratification bonuses are wages. Rev. Rul. 2004-109 considers whether bonuses paid to baseball players for signing a contract and bonuses paid to employees for ratifying a CBA are wages for FICA, FUTA, and Federal income tax withholding purposes. Instead of applying Rev. Rul. 58-145's

---

[8] Joint Comm. on Taxation, 106th Cong., Description of Revenue Provisions Contained in the President's Fiscal Year 2001 Budget Proposal, at 470-71 (Comm. Print 2000). *See also* Joint Comm. on Taxation, 106th Cong., Description of Revenue Provisions Contained in the President's Fiscal Year 2000 Budget Proposal, at 317 (Comm. Print 1999).

[9] Ford filed its administrative claim for refund of the FICA taxes paid with respect to the 1996 Ratification Bonuses in April 2000. Ford filed its administrative refund claim for FICA taxes on the 1999 Ratification Bonuses in April 2001.

interpretation of wages, which depends on whether the bonus was contingent on the performance of services or continued employment, Rev. Rul. 2004-109 asserts that any payment made in connection with "the establishment, maintenance, furtherance, alteration, or cancellation of the employer-employee relationship or any of the terms and conditions thereof" is wages, unless the employee provides "clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship and its component terms and conditions." Based on this new interpretation, the IRS concluded in Rev. Rul. 2004-109 that Rev. Rul. 58-145 was a mistake and revoked that ruling.

The IRS provided that its new interpretation in Rev. Rul. 2004-109 would be applied prospectively to some taxpayers but retroactively to others such as Ford and its UAW employees. Rev. Rul. 2004-109 states that the IRS's new interpretation does not apply to any signing bonus paid in connection with an employee's *initial employment* pursuant to a contract entered into before January 12, 2005, provided the amount was paid under facts and circumstances substantially the same as those in Rev. Rul. 58-145. The ruling expressly applies retroactively to all bonus payments under a CBA.

Because Rev. Rul. 2004-109 was issued on November 23, 2004, but the prospective relief granted certain taxpayers in connection with initial employment extended until January 12, 2005, Rev. Rul. 2004-109 did not merely grant the favored taxpayers the benefit of Rev. Rul. 58-145 until the issuance of the later ruling. It also gave those taxpayers an additional 50 days to enjoy the benefits of the interpretation contained in Rev. Rul. 58-145.

## III. ARGUMENT

Under RCFC 26(c), the party moving for a protective order must show good cause for its issuance. Because Defendant has failed to demonstrate that the documents sought by Ford are irrelevant or that Ford's document requests are unduly burdensome, Defendant has failed to

meet this burden. Ford thus respectfully requests that the Court deny Defendant's motion for a protective order and grant Ford's cross-motion to compel production.

### A. The Materials Sought by Ford Are Relevant.

RCFC 26(b)(1) provides that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Court of Federal Claims has underscored the breadth of Rule 26, noting that "[r]elevance for the purposes of Rule 26 is broadly construed." *See Jade Trading, LLC v. United States*, 65 Fed. Cl. 487, 491 (2005).

#### 1. The materials sought by Ford are relevant to the Court's determination of whether the Ratification Bonuses are wages.

As noted, this case will require the Court to decide whether Ford's Ratification Bonuses are remuneration for services and thus "wages" for FICA purposes. The IRS issues several forms of guidance to taxpayers on the meaning of the tax laws. Some of these forms of guidance, such as private letter rulings and technical advice memoranda, cannot be cited as precedent and generally apply only to the taxpayer to whom they were issued, although they nevertheless may evidence the administrative practice of the IRS or show that the IRS has treated similarly situated taxpayers differently. *See* Code § 6110(k)(3) (providing that a "written determination," which term includes private letter rulings and technical advice memoranda, may not be used or cited as precedent unless otherwise provided by regulations); *Rowan Cos. v. United States*, 452 U.S. 247, 261 n.17 (1981) (considering private letter rulings as evidence of the IRS's practice); *Hanover Bank v. Comm'r*, 369 U.S. 672, 686 (1962) (although private letter rulings are not precedent, they do reveal the interpretation put upon the statute by the IRS); *Int'l Bus. Machs. v. United States*, 170 Ct. Cl. 357 (1965) ("*IBM*") (considering private ruling issued

to one taxpayer in determining that private ruling issued to a similarly situated taxpayer was an abuse of discretion). Other forms of guidance, such as Treasury regulations and published revenue rulings like those at issue in this case, can be cited as precedent and apply to all taxpayers. S*ee* 26 C.F.R. § 601.601(d)(2)(v)(d) (noting that revenue rulings are "precedents to be used in the disposition of other cases and may be cited and relied upon for that purpose.").

The IRS has published conflicting precedential guidance on the standard for determining whether contract signing and ratification bonuses are wages for FICA purposes. As discussed in detail above, Rev. Rul. 58-145 provided that whether a contract signing bonus is remuneration for services and thus wages depends on whether the bonus is contingent on the performance of services or continued employment. Rev. Rul. 2004-109 reversed this longstanding interpretation and effectively asserts that all payments made by an employer to an employee are wages, unless the employee provides separate and adequate consideration for the payments that is not dependent on the employer-employee relationship. In determining whether Ford's Ratification Bonuses are wages, both rulings are relevant and the Court will be required to determine how much weight or deference, if any, either of the rulings should receive.

Interpreting the term "wages" also will necessarily require the Court to address the *meaning and scope* of Rev. Ruls. 58-145 and 2004-109. Ford assumes Defendant will admit, as it must, that the IRS reversed a longstanding interpretation of "wages" when it published Rev. Rul. 2004-109. Defendant asserts this change did not affect Ford, because (in Defendant's view) Ford's Ratification Bonuses were not paid in circumstances substantially similar to the circumstances in Rev. Rul. 58-145, and Ford's situation thus is not covered by the guidance

provided by that ruling and revoked by Rev. Rul. 2004-109. Ford disagrees and believes the Ratification Bonuses are not wages under the plain meaning of Rev. Rul. 58-145.[10]

Under these circumstances—where the Court is required to determine the meaning of a statutory term, the IRS has published precedential guidance on the meaning of that term, and the published guidance either conflicts or is alleged to conflict—the Court of Federal Claims has concluded that background materials relating to the guidance, as well as other materials concerning the IRS's interpretation of the same statutory term, are relevant. These materials, like the legislative history of a statute, can shed light on the meaning and scope of the IRS's varying interpretations over time, on the reasonableness of those interpretations, and on the degree of deference, if any, to give those interpretations. They thus can help the Court determine the proper meaning of the statute.

In *Vons Co. v. United States*, 51 Fed. Cl. 1 (2001), the Court ordered Defendant to produce for *in camera* inspection the prepublication package for a revenue ruling and any similar associated files, noting the analogy between the background materials of a published revenue ruling and the legislative history of a statute. In *Marriott Int'l Resorts, L.P. v. United States*, 61 Fed. Cl. 411 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006), the Court of Federal Claims concluded that all documents relied upon by the IRS in formulating its position with respect to the definition of the statutory term "liability" in various Treasury regulations and revenue rulings were relevant. The Court noted that the parties were preparing to ask the Court to evaluate different interpretations of the law that had been applied at different points in time

---

[10] The meaning and scope of Rev. Rul. 58-145 also will be relevant to the Court's consideration of the abuse of discretion issue. This is because the IRS has provided that Rev. Rul. 2004-109 applies prospectively to bonuses paid pursuant to contracts of initial employment "under facts and circumstances that are substantially the same as in Rev. Rul. 58-145 . . . ."

and reasoned that background files, just as a statute's legislative history, might prove informative.

In *Jade Trading v. United States*, 65 Fed. Cl. 487 (2005), the Court concluded that documents relating to the promulgation of a Treasury regulation and background files relating to IRS interpretations of the term "liabilities" in Code section 752 were relevant. The Court noted *Marriott's* conclusions that documents relating to the ongoing consideration and interpretation of a revenue ruling by the IRS are relevant to determine whether the IRS had abandoned a longstanding interpretation of a statutory term, and that conflicting interpretations by the IRS might constitute an important framework for the matters in issue. Because the taxpayers in *Jade Trading* were lodging challenges with respect to assertedly inconsistent interpretations of a statutory term, the Court held that identical considerations compelled a conclusion that similar types of documents were relevant in that case.[11]

Based on these authorities, the documents sought in the Requests clearly are relevant to help the Court decide whether Ford's Ratification Bonuses are wages. In a moment of candor, Defendant's brief essentially admits that at least some of the materials sought by Ford are relevant under these authorities. *See* "**An acknowledgement**," Def.'s. Br. 7-8 (citing *Jade Trading*; noting that the Court has considered similar discovery disputes in the past, initially expresses skepticism of the Government's relevance arguments, requires the Government formally to assert privilege, but, after reviewing the disputed documents, ultimately decides against requiring production). In response to this acknowledgement, Defendant, as it did in *Jade*

[11] In addition to the authorities discussed in the text, in *Flamingo Fishing Corp. v. United States*, 22 Ct. Cl. 625, 630 (1991), this Court's predecessor concluded that the relevance of a revenue ruling's background file would be "unassailable" if the IRS chose to rely on the ruling.

*Trading*, asserts that the possibly privileged nature of some or all of the documents sought justifies the Court's denying production.

Although Defendant's argument is not entirely clear, Defendant appears to suggest that the potentially privileged nature of the materials either should inform the Court's determination of relevance or should lead the Court to conclude that ordering Defendant properly to assert privilege would be unduly burdensome. Although this argument is phrased in terms of relevance or undue burden, Defendant effectively is asking the Court to conclude that the materials should not be produced on grounds of privilege—even though Defendant so far has refused properly to assert that claim in a manner that could meaningfully be challenged by Ford and reviewed by the Court.

The Court should reject Defendant's argument for the same reason it rejected that argument in *Jade Trading*. A determination of relevance is the threshold inquiry for deciding whether a document is discoverable. *Shipkovitz v. United States*, 1 Ct. Cl. 400, 401 (1983) ("Relevant material may subsequently be protected from discovery by proper claims of privilege, but the initial question is that of relevance."). As the Court stated in *Jade Trading,* 65 Fed. Cl. at 492, n.14:

> The court recognizes the tension between relevance and privilege in this case. Defendant, in essence, argues that by virtue of their deliberative nature, the predecisional opinions of IRS employees cannot be relevant because such opinions have no bearing upon the Court's legal interpretations of statute and regulations. This approach puts the cart before the horse in that the Court would be accepting Defendant's assertion of privilege and concluding that the documents at issue are deliberative in assessing relevance. At this stage, the Court cannot examine whether the 3,350 pages of documents for which this privilege has been asserted are truly deliberative because Defendant has not properly invoked the privilege.

It would similarly be inappropriate here for the Court to protect all responsive documents from disclosure simply because some of those documents may also be privileged.[12] The Court should decline the Defendant's invitation to so subvert the relevance inquiry. Disputes over privilege, if any should arise, must take place only after the Defendant has properly asserted privilege and provided a privilege log.[13]

Finally, in determining whether the documents sought in the Requests are relevant, the Court should reject Defendant's attempt to understate the importance of published revenue rulings. Defendant's brief asserts only that the Court might take Rev. Rul. 58-145 and Rev. Rul. 2004-109 into account and might give them some limited deference.[14] This approach is diametrically opposed to the approach Defendant is taking in a pending case involving similar

---

[12] Defendant cites the following unpublished orders in support of its assertion that, because the materials sought are likely to be privileged, the Court should deny production on the ground of relevance or undue burden: Order, *Jade Trading, LLC v. United States*, Fed. Cl. No. 03-2164-T (Aug. 15, 2005) and Order, *Marriott Int'l Resorts, L.P. v. United States*, Fed. Cl. Nos. 01-256-T & 01-257-T (Nov. 2, 2007). Although these unpublished orders show that all documents reviewed *in camera* were deemed privileged, it appears likely that the taxpayers in those cases received some documents Defendant had asserted were irrelevant. *See Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) (the Federal Circuit noted that "the 339 documents in issue came from a larger cache of more than 4,000 relevant pages of material"); *Jade Trading*, 65 Fed. Cl. at 492 n.15 (noting that the production of background files underlying a Treasury regulation already had been ordered produced).

[13] In support of its claim that requiring Defendant to assert privilege properly would be unduly burdensome, Defendant prepared a sample privilege log with respect to approximately 15 documents, *see* Exhibit A to Declaration of Neil D. Shepherd. This "log" shows that not all of the documents sought are privileged. *See* the entry entitled "Bates Nos D-7 attachment" in Shepherd Dec. Exhibit A.

[14] *See*, *e.g.*, Def.'s Br. 9-10 (stating that in evaluating whether Ford's Ratification Bonuses are "wages," the Court will examine the Code, any pertinent legislative history, and judicial opinions; then stating that the Court "may also examine" Rev. Ruls. 2004-109 and 58-145, but warning that "To the extent that the Court considers" the rulings when it addresses the meaning of "wages," the rulings, *inter alia*, are not dispositive, do not have the same force as a regulation, do not commit the IRS or Treasury to any interpretation of law, and at most may be helpful in interpreting the Code).

ratification bonuses.[15] It also is opposed to the approach Ford expects Defendant to take in the substantive consideration of this case.

Automobile parts manufacturer Delphi paid similar ratification bonuses to its workers represented by the UAW and has filed a similar suit for refund of the FICA taxes paid. This suit was before the U.S. District Court for the Southern District of New York in bankruptcy. Defendant's memorandum of law supporting its motion to withdraw that case from the bankruptcy court states with respect to Rev. Rul. 2004-109:[16]

> The IRS promulgates revenue rulings pursuant to its statutory authority to "prescribe all needful rules and regulations for the enforcement of" the Internal Revenue Code (citations omitted). Revenue rulings are formal interpretative rulings involving "substantive tax law." 26 C.F.R. § 601.601(d)(2)(v)(a). They are issued by the IRS National Office and published in the Internal Revenue Bulletin as the agency's "official" position to guide taxpayers and IRS officials alike. *Id*. § 601.601(d)(2)(i)(a). Revenue rulings are written and reviewed at the same levels within the IRS and the Treasury Department as notice-and-comment regulations. *See* Treas. Order 111-2. Like regulations, revenue rulings have legal force and effect, as they are "precedents to be used in the disposition of other cases" that "may be cited and relied upon for that purpose." 26 C.F.R. § 601.601(d)(2)(v)(d). . . .
>
> For these reasons, the Government believes that revenue rulings have the "force of law" within the meaning of *Mead* [*United States v. Mead Corp*., 533 U.S. 218 (2001)] and *Chevron* deference is therefore required [the reference is to *Chevron USA, Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984)].

[15] *In re Delphi Corp.*, No. 08-01038 (Bankr. S.D.N.Y. filed Jan. 18, 2008) ("*Delphi*"). Defendant's approach in *Delphi* is discussed in the next paragraph of the text.

[16] *See* United States, Memorandum of Law in Support of the Government's Motion for an Order Withdrawing the Reference, *In re Delphi Corp.*, No. 08-01038, at 24 (Bankr. S.D.N.Y. May 13, 2008). A true copy of this memorandum is attached to the Declaration of Thomas D. Johnston as Exhibit A to that Declaration.

Although Ford does not assert that revenue rulings are entitled to *Chevron* deference, Ford does believe that Rev. Rul. 58-145 applies to Ford's case and confirms that the Ratification Bonuses are not wages because they are not contingent on the performance of services or continued employment. By contrast, Ford believes that Rev. Rul. 2004-109 does not apply to its case because that ruling (i) adopts an erroneous legal standard, (ii) was promulgated to gain an advantage in dealing with administrative refund claims, this litigation, and similar litigation,[17] and (iii) applies prospectively to some taxpayers and retroactively as to others, in a manner that, for the reasons discussed immediately below, abused the IRS's discretion under Code section 7805(b).

**2. The materials sought by Ford also are relevant to the Court's review of the IRS's discretionary determination to apply Rev. Rul. 2004-109 prospectively to some taxpayers but retroactively to Ford and its UAW employees.**

Although revenue rulings generally are presumed to have retroactive effect, Code section 7805(b) gives the IRS discretion to determine the extent to which any revenue ruling will be applied prospectively, *i.e.*, *without* retroactive effect. The exercise of this administrative

[17] Courts have recognized that the IRS, which is both an agency and a litigant, cannot use its regulatory powers to gain an advantage in litigation and that less deference, if any, should be afforded to interpretations promulgated to gain a litigation advantage. *See*, *e.g.*, *Chock Full O' Nuts Corp. v. United States*, 453 F.2d 300, 303 (2d Cir. 1971) (stating that the Commissioner "may not take advantage of his power to promulgate retroactive regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulations," and considering it "questionable" whether a treasury regulation promulgated almost a year after litigation began and three years after the plaintiff filed its claim for refund represented a valid exercise of the Commissioner's power, but ultimately finding it unnecessary to decide the question). *See also Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 981 n.19 (5th Cir. 1977) (noting that while the "relationship in time between the promulgation of a regulation and litigation in which that regulation would be controlling if applied" should not be dispositive, it may inform the court's determination as to whether the retroactivity was an abuse of discretion), *and Farmers' and Merchants' Bank v. United States*, 476 F.2d 406, 408 (4th Cir. 1973) (remarking on the "unfairness…that [Rev. Rul.] 68-630 was promulgated more than two and one-half years after the refund claim was filed—the rules of the game were changed at the end of the contest.").

discretion is reviewable for abuse of discretion. *See, e.g., IBM*, 170 Ct. Cl. at 367 (1965); *Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388, 393 (2001) (stating that "the Service's decision to act retroactively [pursuant to Code section 7805(b)] must be a rational one and is subject to review for abuse of discretion," citing *Auto. Club of Mich. v. Comm'r*, 353 U.S. 180, 184-86 (1957); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 981 (5th Cir. 1977), and *Chock Full O' Nuts Corp. v. United States*, 453 F.2d 300, 302-03 (2d Cir. 1971)); *Pierson v. United States*, 428 F. Supp. 384, 391 (D. Del. 1977). The IRS's policy is to exercise its discretion under Code section 7805(b) and to provide for prospective application whenever a new revenue ruling revokes an existing ruling in a manner adverse to taxpayers.[18]

There are many ways in which the IRS can its abuse its discretion under section 7805(b) and more generally. Most relevant to this case, the IRS abuses its discretion when it applies a new ruling prospectively as to one taxpayer and retroactively as to a similarly situated taxpayer, without having a rational reason for the disparate treatment. Where such irrational discrimination exists, courts remedy that discrimination by concluding that all similarly situated taxpayers are entitled to the same prospective application of the new ruling. *See Conn. Ry. & Lighting Co. v. United States*, 135 Ct. Cl. 650, 142 F. Supp. 907, 909-10 (Ct. Cl. 1956) (an IRS mimeograph, which changed the IRS's position on the taxability of certain payments and applied retroactively or prospectively depending on whether the taxpayers had or had not paid taxes on such payments before a specified date, irrationally discriminated against taxpayers who had paid their taxes); *Exchange Parts Co. of Fort Worth v. United States*, 150 Ct. Cl. 538, 279 F.2d 251, 254 (Ct. Cl. 1960) (reiterating the holding in *Conn Ry*. that a revenue ruling's prospective or

[18] *See* 26 C.F.R. § 601.601(d)(2)(v)(c) ("Where Revenue Rulings revoke or modify rulings previously published in the [Internal Revenue] Bulletin the authority of section 7805(b) of the Code ordinarily is invoked to provide that the new rulings will not be applied retroactively to the extent that the new rulings have adverse tax consequences to taxpayers.").

retroactive application based solely on whether a taxpayer had or had not paid taxes was impermissible discrimination); *Computer Sciences Corp.*, 50 Fed. Cl. at 396-98 (finding abuse of discretion where the prospective or retroactive application of a new ruling depended on whether a taxpayer had or had not filed a return before a specified date). *See also IBM*, 170 Ct. Cl. at 367 (concluding that the IRS abused its discretion when it issued a private ruling to IBM concluding that certain computer sales were subject to excise tax, effective retroactively, and at the same time prospectively revoked a competitor's private ruling that sales of similar machines were not subject to the tax; stating that "Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed.").

As noted, Rev. Rul. 2004-109 provides that it will apply prospectively only to bonuses paid in connection with contracts for *initial employment*, under facts and circumstances substantially similar to those in Rev. Rul. 58-145. Ford believes that the IRS did not have a rational reason for limiting the prospective application of Rev. Rul. 2004-109 to contracts for initial employment. Whether a bonus is paid for the signing or ratification of a first contract or a second or later contract has nothing to do with whether that bonus is wages, *i.e.*, whether it is paid for the rendition of services. Although Rev. Rul. 58-145 considered bonuses paid to new baseball players for their first contracts, the relevant fact in that ruling is the presence or absence of a condition making payment of the bonus contingent on the performance of services or continued employment. For this reason, Ford's Ratification Bonuses were paid under facts and circumstances substantially similar to those in Rev. Rul. 58-145.

Defendant has not yet explained why Defendant believes Ford's UAW-represented employees receiving Ratification Bonuses not conditioned on services or continuing employment are meaningfully different from the baseball players in Rev. Rul. 58-145, who also

receive contract signing bonuses not conditioned on services or continuing employment. Defendant's brief does refer to, without specifying, "the many factual differences between Ford's circumstances and the baseball player situation."[19] Defendant's brief also states that, in considering whether the IRS abused its discretion in Rev. Rul. 2004-109, the Court will ask "are baseball players receiving initial signing bonuses similarly situated with Ford's existing employees receiving ratification bonuses?"[20] If, as Defendant appears to suggest, the prospective relief provided in Rev. Rul. 2004-109 is intended to apply only to signing bonuses paid to baseball players and not to signing or ratification bonuses paid to UAW-represented autoworkers, Ford asserts that this differential treatment of professional athletes and autoworkers also lacks a rational basis, is an abuse of discretion, and offends the idea of nondiscriminatory treatment by the U.S. Government.

Defendant both misstates the law of abuse of discretion and mischaracterizes the nature of Ford's claim. Defendant's brief lists three *examples* of situations in which courts have concluded that the IRS abused its discretion under section 7805(b) and asserts that the IRS can be found to have abused its discretion *only* in those circumstances. If Defendant were correct, the *only* similarly situated taxpayers the IRS could be required to treat consistently would be those in direct economic competition. But, Defendant is not correct. The IRS can abuse its

[19] *See* Def.'s Br. 10.

[20] *See* Def.'s Br. 24. Defendant believes this question is not relevant unless Defendant's assertion that only economic competitors are entitled to protection against an abuse of discretion by the IRS is incorrect. As explained in the next paragraph of the text, that assertion is incorrect because the IRS can abuse its discretion by discriminatory treatment of any similarly situated taxpayers.

discretion by treating similarly situated taxpayers differently without a rational reason for the disparate treatment.[21]

Similarly, Ford is not asserting that the IRS abused its discretion simply by allowing Rev. Rul. 2004-109 to have retroactive application. Although there may be some circumstances in which the IRS cannot revoke a revenue ruling retroactively as to all taxpayers, Ford is not arguing that this is such a case. Ford instead asserts that the IRS abused its discretion, not because it provided that Rev. Rul. 2004-109 would apply retroactively, but because it provided that Rev. Rul. 2004-109 would apply prospectively as to some similarly situated taxpayers and retroactively as to others.

Due to this mischaracterization of Ford's claim, Defendant's assertion that the Court's abuse of discretion review should focus on whether Rev. Rul. 58-145 was *settled law*, whether *subsequent cases or other later developments* suggested that Rev. Rul. 58-145's conclusion might no longer be correct, and whether Ford justifiably *relied* on Rev. Rul. 58-145 is

---

[21] In *Oshkosh Truck Corp. v. United States*, 123 F.3d 1477, 1481 (Fed. Cir. 1997) the Federal Circuit unequivocally stated that treating "similarly situated" taxpayers disparately without justification can constitute an abuse of discretion. Relying in part on *Oshkosh*, the court in *Computer Sciences,* 50 Fed. Cl. at 393-96, determined that irrational discrimination in the treatment of "similarly situated" taxpayers constituted an abuse of discretion. *See also Conn. Ry. & Lighting Co.*, *supra* (concluding that basing the prospective or retroactive application of a new ruling on an arbitrary factor discriminated against the taxpayer, without inquiring as to the ruling's effect on competitors of the taxpayer).

Defendant cites *Mulholland v. United States*, 16 Cl. Ct. 252, 262 (Fed. Cl. 1989), for a list of cases holding that the IRS abused its discretion under Code section 7805(b) in three different factual situations, and then asserts that the IRS can abuse its discretion only in those situations. Def.'s Br. 12. The *Mulholland* court took this list from *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 981 (5th Cir. 1977). In summarizing the results of this list, *Anderson, Clayton,* at 981, concluded that the considerations relevant to a court's review of the exercise of the discretion to adopt retroactive regulations included "whether retroactivity would advance or frustrate the interest in equality of treatment among *similarly situated taxpayers* (emphasis added)." *Mulholland* also cited this portion of the *Anderson, Clayton* opinion. *Mulholland*, 16 Cl. Ct. at 262-63. Thus, even the case cited by Defendant indicates that similarly situated taxpayers, and not merely competitors, are entitled to similar treatment by the IRS.

incorrect. By providing that Rev. Rul. 2004-109 would apply prospectively only to certain taxpayers, the IRS gave the continuing benefit of Rev. Rul. 58-145 to those taxpayers until January 12, 2005. Moreover, the IRS did so whether or not Rev. Rul. 58-145 was settled law, whether or not cases or other subsequent developments had cast doubt on Rev. Rul. 58-145, and whether or not the chosen taxpayers actually had relied on Rev. Rul. 58-145.

Thus, the Court's review of Ford's abuse of discretion claim will focus on the IRS's decision to provide for the differential application of Rev. Rul. 2004-109, *i.e.*, on the administrative record and background of the IRS's promulgation of that ruling. More particularly, the Court will need to determine whether the IRS had a rational basis for its differential application of the ruling—or instead provided that the ruling would apply retroactively to Ford to gain an advantage in dealing with Ford's administrative refund claims, this litigation, and other similar cases.[22]

Most of the documents sought by Ford are part of the administrative record of Rev. Rul. 2004-109. They thus are relevant to the Court's consideration of Ford's abuse of discretion claim. Stated differently, the documents sought should shed light on whether the IRS lacked a rational basis for its differential application of Rev. Rul. 2004-109, provided that differential application to gain an advantage in dealing with administrative refund claims or litigation, or otherwise abused its discretion under Code section 7805(b).

In *IBM*, the Court of Claims made clear that the IRS's exercise of discretion under Code section 7805(b) is reviewable for abuse in the same manner as other discretionary administrative determinations. *IBM*, 170 Ct. Cl. at 367. Although the Court in *IBM* did not

---

[22] The Court may also wish to consider whether Rev. Rul. 2004-109's prospective application, and in particular the ruling's not becoming effective until 50 days after its publication date, might have been intended to favor professional athletes generally or certain professional athletes in particular.

describe that manner in any detail, the Court reviewed the IRS's course of conduct in dealing with the similarly situated taxpayers and noted that the IRS's choice must be supported by relevant considerations. In particular, the *IBM* court noted that the IRS immediately gave a favorable ruling to IBM's competitor Remington Rand but waited over two years to act on IBM's ruling request. The Court further noted that, during the pendency of IBM's ruling request, the IRS granted Remington Rand a refund for years prior to the issuance of Remington Rand's ruling. Most importantly, the Court observed that when the IRS revoked Remington Rand's ruling and issued a ruling to IBM, it provided that the revocation of Rand's ruling would be prospective but that IBM's negative ruling would be retroactive. Based on this differential treatment of the two taxpayers, the Court concluded that the IRS abused its discretion when it applied its negative ruling retroactively to IBM.

Under both the Administrative Procedure Act ("APA") and the principles of administrative law more generally, judicial review of an administrative decision under the abuse of discretion standard should focus on the entire administrative record of that decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (concluding that abuse of discretion review under the APA should be based on the "full administrative record"); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (determining that the "focal point for judicial review" under the APA is "the administrative record already in existence").[23] Based on the nature of abuse of discretion review under the APA and more generally, the United States District Court for the District of Delaware, in *Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977), concluded that judicial review of the IRS's exercise of discretion under Code section 7805(b)

---

[23] Although Ford believes the administrative record of Rev. Rul. 2004-109 is relevant to the Court's review of the IRS's exercise of discretion, Ford also believes it is clear from the ruling's text that the ruling does not state any reason, much less a rational reason, for discriminating in favor of initial contracts of employment.

should be based on the "record relied upon by the Commissioner in deciding to apply the revocation retroactively." *Pierson*, 428 F. Supp. at 390. The District Court emphasized that the purpose of abuse of discretion review is to determine whether the "Commissioner considered all the relevant factors, did not consider irrelevant or inappropriate factors and did not make a clear error of judgment." *Id.* at 391. The *Pierson* court therefore concluded that the administrative record of the IRS's revocation of the private ruling there in issue, *i.e.*, "all documents and materials considered and/or relied upon directly or indirectly," were relevant. The *Pierson* court further concluded that claims of executive privilege with regard to the record were unlikely to outweigh the need of the plaintiff for the record. *Pierson*, 428 F. Supp. at 392. *See also Branerton v. Comm'r*, 64 T.C. 191 (1975) (holding that, because the taxpayer had to prove that procedures used by the IRS to calculate a bad debt reserve constituted an abuse of discretion, the taxpayer was entitled to relevant internal IRS documents).

Defendant seeks to distinguish *Pierson* by arguing that the District Court erred when it looked to the APA for guidance. The assertions made by the Defendant in this case once again starkly contrast with those made by Defendant in other tax cases. *Robinette v. Comm'r*, 439 F.3d 455 (8th Cir. 2006), and *Murphy v. Comm'r*, 469 F.3d 27 (1st Cir. 2006), considered the appropriate scope of judicial review of an IRS Appeals Officer's decision in a collection due process hearing. Such review, like the review of determinations under section 7805(b), is for abuse of discretion. In both *Robinette* and *Murphy*, Defendant asserted that, consistent with general principles of administrative law and the Administrative Procedure Act, the court's abuse of discretion review should not merely *focus* on the record before the agency at the time the decision was made—it should be *limited to* that record. The Courts of Appeals agreed in both cases.

Ford is not asserting that the Court's review should be *limited* to the administrative record of Rev. Rul. 2004-109. It is difficult to see, however, how the Court can review the IRS's discretionary action in Rev. Rul. 2004-109 without reviewing the administrative record of that action to determine how and why discretion was exercised. More generally, because abuse of discretion review generally focuses on the administrative record, it is difficult to see how that record could not even be relevant to this case.

In summary, the materials Ford seeks relating to the consideration and promulgation of Rev. Rul. 2004-109 are part of the administrative record or background of the decision to apply that ruling prospectively to some taxpayers and retroactively to others. Those materials thus are relevant to the Court's consideration of whether that decision was an abuse of discretion, particularly to the extent they can aid the Court in determining whether the IRS's choice was based on factors that were both relevant and permissible, or instead was based on a desire to gain an advantage in this litigation or avoid paying refund claims to Ford and other automakers.

The materials sought relating to the application and interpretation of Rev. Rul. 58-145 and Rev. Rul. 2004-109 also are likely to be relevant because they may shed light on the scope of relief from retroactivity granted by the later ruling. Those materials thus also may assist the Court in determining whether the prospective grant of relief to some taxpayers and the denial to others, such as Ford and its UAW employees, was an abuse of discretion.

For all these reasons, the materials sought in the Requests are relevant to the Court's determination of Ford's case.

**B. Ordering Defendant to Produce or to Properly Claim Privilege with Respect to the Documents Sought Would Not Subject Defendant to Undue Burden or Expense.**

Defendant asserts that the Court should bar the production sought on grounds of undue burden and expense. Defendant so far has identified approximately 2600 pages of potentially responsive documents and approximately 852 potentially responsive emails (with 223 electronic documents attached). The vast majority of the documents identified by Defendant—approximately 2300 pages of the documents and all of the emails and attachments—apparently constitute the background file of, or otherwise relate to the development and issuance of, Rev. Rul. 2004-109. The vast majority of the identified documents thus should help the Court decide whether the IRS abused its discretion when it decided to apply Rev. Rul. 2004-109 prospectively to certain taxpayers but retroactively as to Ford. Given the relevance or likely relevance of these documents, the dollar amounts at stake, and the resources of the parties, requiring Defendant to produce or review this amount of material would not be unduly burdensome.

Defendant particularly objects to Request 3, which covers documents relating to the IRS's or Treasury's consideration of the modification or revocation of Rev. Rul. 58-145, and to Requests 10, 11, 15, and 16, which seek documents concerning the IRS's or Treasury's interpretation of Rev. Ruls. 58-145 and 2004-109. Defendant notes that the IRS does not keep its files arranged by subject matter and that Rev. Rul. 58-145 was in existence for almost 50 years.

As Ford's counsel explained to Defendant's counsel during their July 2, 2008 telephonic conference, Ford envisions its requests for documents relating to the interpretation, application, and reconsideration of Rev. Rul. 58-145 as analogous to a RCFC 30(b)(6) request. Ford does not expect Defendant to search every file at the IRS or Treasury for relevant

documents. Ford's expectation is that Defendant will canvas IRS or Treasury officials with knowledge of Rev. Rul. 58-145 and similar employment tax issues for cases or projects in which the modification or revocation of that ruling likely would have been considered.

If Defendant were willing to admit that at least some of the materials sought by Ford are relevant, Ford could continue to work with Defendant to narrow the scope of Requests 10, 11, 15, and 16. Ford certainly does not want Defendant to look for every revenue agent's consideration of contract signing or ratification bonuses over the last 50 years. Ford does want to know about any interpretations or applications of Rev. Rul. 58-145 or Rev. Rul. 2004-109, made at a relatively high level, which could be considered to constitute the IRS's policy with respect to the application of those rulings. For example, if the IRS regularly applied Rev. Rul. 58-145 to contracts that were *not* for initial employment, or to bonuses paid to persons *other* than baseball players, that would be relevant to the Court's determination of Ford's claims in this case.

Even if Defendant were required to search multiple files in multiple locations without the assistance of a central index, that would not render Ford's requests unduly burdensome. Such efforts are common in commercial litigation and are often requested by Defendant.[24] Furthermore, "the mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship . . . does not of itself require denial of the motion. Rule 26(c) [of the Federal Rules of Civil Procedure] speaks of 'undue burden or expense' and discovery should be allowed unless the hardship is unreasonable in light of the

[24] In fact, Defendant in this case has served Ford with two requests for production. The 57 individual document requests contained therein will require Ford to review large masses of documents in multiple locations. A true copy of Defendant's First Requests for Production, dated July 24, 2008, is attached to the Declaration of Thomas D. Johnston as Exhibit B. A true copy of Defendant's Second Requests for Production, dated August 7, 2008, is attached to the Declaration of Thomas D. Johnston as Exhibit C.

benefits to be secured from the discovery." 8A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2214 (3d ed. 2008) (citations omitted). As a district court has remarked in the context of filing systems, "the fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents . . . is not a sufficient reason to prevent disclosure of otherwise discoverable material." *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991) (ordering defendant to produce documents related to 213 cases similar to plaintiff's). *See also Eley v. Herman*, 2005 U.S. Dist. LEXIS 30476 (N.D. Ind. Nov. 21, 2005) (concluding that the defendant could not rely on a jail's practice of filing inmates' requests for the Bible or Qu'ran within separate inmate files to resist plaintiff's requests as unduly burdensome).

In *Jade Trading*, Defendant made an undue burden claim similar to the claim it is making in this case. The Court rejected the claim, pointing out that the interpretation of the term at issue was "critical" and "the benefit of production . . . outweighs the burden or expense." *Jade Trading*, 65 Fed Cl. at 493 (2005). The same conclusion should apply in this case, particularly because the materials sought will be relevant to Ford's abuse of discretion claim in this case.

**1. The requirements of asserting the deliberative process privilege do not render Ford's requests unduly burdensome.**

The potentially privileged nature of some of the materials sought should neither inform the Court's determination of relevance nor lead the Court to conclude that ordering Defendant properly to assert privilege would be unduly burdensome. As noted above, Defendant effectively is asking the Court to conclude that the materials sought should not be produced on grounds of privilege—even though Defendant so far has refused to assert that claim in a manner

that can meaningfully be challenged by Ford and reviewed by the Court, and even though Defendant admits in its sample "log" that not all documents are privileged.[25]

In *Marriott*, the Court of Federal Claims explained that the Government must follow specific requirements to invoke executive privilege. The purpose of these potentially cumbersome requirements is to "ensur[e] that the privilege is invoked only when absolutely necessary." *Marriott*, 61 Fed. Cl. at 419. On the appeal of that case, the Federal Circuit disagreed with the determination that the privilege must be invoked by the agency head, but fully agreed that the privilege should only be invoked with care and after a thorough review. *Marriott*, 437 F.3d at 1307.

Because privileges inhibit judicial truth-seeking, courts must be vigilant to ensure that privileges remain carefully circumscribed to their purpose. The procedures required by courts to prevent abuse of the deliberative process privilege should not be used in this litigation as an excuse to avoid production of *all* potentially relevant documents. Against this background, Defendant has failed to demonstrate that the number of responsive documents is so overwhelming as to make review and assertion of privileges an undue burden. In this day of electronic datarooms and document productions that often stretch into the thousands, if not hundreds of thousands of documents, review of 2600 pages of materials—which could easily fit into a single box—and 850 emails with attachments is not unduly burdensome. The Court of Federal Claims has rejected undue burden arguments in cases with similar facts and a similar number of documents in issue. *See Marriott*, 437 F.3d at 1307 (privilege claimed for 339 documents, a subset of relevant documents); *Jade Trading*, 65 Fed Cl. at 490-91 (privilege claimed for over 400 documents). Finally, not all of the relatively small number of documents

---

[25] *See* n. 13 *supra*.

identified by the Government will be both pre-decisional and deliberative, and thus not all of the documents will require the logging procedure described by the Defendant.

**2. Ford will not oppose a reasonable enlargement of time to assert privilege if the Court considers an enlargement appropriate.**

If the Court rejects Defendant's relevance objections, Defendant requests in the alternative that the Court grant a four-month enlargement of time to allow Defendant to assert privilege. Ford will not contest a reasonable enlargement if the Court concludes that it is appropriate. Ford has indicated its willingness to give Defendant ample time to respond to Ford's Requests.

## IV. CONCLUSION

Ford first filed the administrative refund claims leading to this case eight years ago, in part based on the IRS's published guidance in Rev. Rul. 58-145. After Ford began pursuing its claims, after other automakers and auto parts manufacturers began pursuing similar claims, and after Congress twice declined to enact the President's proposals to subject all signing bonuses to withholding and employment taxes, the IRS then decided to publish Rev. Rul. 2004-109. That ruling not only reversed the IRS's longstanding interpretation of "wages," but did so in a manner that discriminated between similarly-situated taxpayers by making the ruling prospective for some taxpayers but retroactive for Ford and its UAW employees.

The documents sought in the Requests are relevant to Ford's claims, both in determining the proper interpretation of the term wages and in determining whether the differential application of Rev. Rul. 2004-109 was an abuse of discretion. In the context of modern litigation, the document review and production Ford has requested is neither burdensome nor disproportionate to its need.

For all these reasons, Ford respectfully requests that the Court deny the Defendant's motion for protective order and grant Ford's cross-motion to compel, by requiring Defendant to produce the documents sought or by ordering Defendant properly to claim any privilege sought. If the Court instead grants Defendant's motion, Ford respectfully requests that the Court issue an order precluding Defendant from using in this case documents within the scope of the Requests.

Dated: August 18, 2008

Respectfully submitted,

s/ Thomas D. Johnston____
Thomas D. Johnston
Attorney of Record for Plaintiff
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 508-8022
Facsimile: (202) 508-8100

Of Counsel:

Ian C. Friedman
Natalie Waites
Shearman & Sterling LLP
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004

Ronald A. Lang
Tami L. Lopez
Office of Tax Counsel
Ford Motor Company
The American Road
Dearborn, MI 48121