IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

---

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION TO COMPEL DISCOVERY AND REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

---

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

**TABLE OF CONTENTS**

Page(s):

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Defendant should not be required to produce the background documents for Rev. Rul. 2004-109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. The background documents are not pertinent to Ford's claim that ratification bonuses do not constitute wages . . . . . . . . . . . . . . . . . . . . . . . . 3

2. The background documents are also irrelevant to Ford's abuse-of-discretion claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. The undue burden and expense of Ford's request for the background documents outweigh the probative value, if any, of the documents . . . . 11

B. The background documents for Rev. Rul. 58-145 are not discoverable . . . . . . . 13

C. The background documents for Rev. Ruls. 69-424, 71-532, and 74-108 are irrelevant to Ford's claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D. Defendant should not be required to produce documents concerning the interpretation or application of Rev. Rul. 58-145 and Rev. Rul. 2004-109 . . . . . 15

E. Defendant should not be required to produce documents concerning proposals to modify or rescind Rev. Rul. 58-145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F. Defendant does not oppose an order precluding it from using documents not produced, so long as the order applies only to non-published documents out of the public domain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

Page(s):

**Cases:**

*CSX Corp. v. United States*, 518 F.3d 1328 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 6

*Carl Zeiss Stiftung v. V.E.B. Cal Zeiss, Jena*, 40 F.R.D. 318 (D.D.C. 1966), *aff'd* 384 F.2d 989 (D.C. Cir. 1967), *cert. denied,* 389 U.S. 952 . . . . . . . . . . . . . . . . . . 5

*Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)

*Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388 (2001) . . . . . . . . . . . . . . . . . 8

*Connecticut Railway & Lighting Co.. v. United States*, 142 F. Supp. 907 (Ct. Cl. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251 (Ct. Cl. 1960) . . . . . . 8

*Groves v. United States,* 533 F.2d 1376 (5th Cir. 1976), *cert. denied,* 429 U.S. 1000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IBM v. United States*, 343 F.2d 914 (Ct. Cl. 1965), *cert. denied,* 382 U.S. 1028 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kerr-McGee Corp. v. United States*, 77 Fed. Cl. 309 (2007) . . . . . . . . . . . . . . . . . . . . . . 5

*Merck & Co. v. United States*, 24 Cl Ct. 73 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Minnesota Citizens Concerned for Life, Inc. v. Fed. Elec. Comm'n*, 936 F. Supp. 633 (D. Minn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Murphy v. Comm'r,* 469 F.3d 27 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pikeville Coal Co., et al. v. United States*, 37 Fed. Cl. 304 (1997) . . . . . . . . . . . . . . . . 10

*R.W. ex rel. Williams v. Delaware Dep't of Educ.*, No. 05-662, 2007 WL 2213598 (D. Del. Aug 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**TABLE OF AUTHORITIES**
**(continued)**

**Cases (continued):**

Page(s):

*Robinette v. Comm'r*, 439 F.3d 455 (8th Cir. 2006)

*Rosee v. Board of Trade of City of Chicago*, 36 F.R.D. 684 (N.D. Ill 1965) . . . . . . . . . . 4

*Sidell v. Commissioner*, 225 F.3d 103 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Social Security Bd. v. Nierotko*, 327 U.S. 358 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*STA of Baltimore – ILA Container Royalty Fund v. United States*, 621 F. Supp. 1567 (D. Md. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 2,4

*Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001) . . . . . . . . . . . . . . . 5, 7, 8, 15

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

§ 7805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

5 U.S.C. § 701 7805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**
**(continued)**

**Miscellaneous:**

Page(s):

Treas. Reg. § 601.601(d)(2)(v)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 69-424, 1969-2 C.B. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 71-532, 1971-2 C.B. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 74-108, 1974-1 C.B. 248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 2004-109, 2004-2 C.B. 958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rev. Rul. 2008-29, 2008-24 I.R.B. 149 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6 Moore's Federal Practice (3d ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

Order, *Jade Trading, LLC v. U.S.*, Fed. Cl. No. 03-2164 (August 15, 2005) . . . . . . . . 4-5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-658 T

(Judge Mary Ellen Coster Williams)

FORD MOTOR COMPANY,

Plaintiff

v.

UNITED STATES,

Defendant

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION TO COMPEL DISCOVERY AND REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT.

In its Cross-Motion and Response to Defendant's Motion for Protective Order, Ford argues generally that the documents it requested are relevant to its tax-refund claims. However, Ford fails to show specifically *how* those documents would impact the merit of its claims. The devil is in the detail, and Ford's argument falls apart on close examination.

Ford's Complaint raises two *legal* questions — whether ratification bonuses are "wages" under section 3121(a) of the Code and whether the IRS abused its discretion when publishing Revenue Ruling 2004-109. The outcome of those legal questions will turn on the Court's analysis of pertinent legal authority and Ford's factual situation. Some of that authority may include published IRS rulings. But Ford's discovery requests go further, seeking various IRS

documents that are unpublished, unofficial, and non-authoritative. The documents requested concern internal IRS deliberations preceding the publication of revenue rulings, occasions when the IRS may have considered whether to modify or rescind rulings, and occasions when the IRS interpreted or applied rulings.

There are two reasons why such information is beyond the scope of permissible discovery. First, discovery concerns facts, not law, and requests like Ford's that seek purely legal matters are out of bounds. Second, even if discovery concerning legal issues could be proper, the information Ford seeks here would be of no assistance to the Court in resolving the disputed legal issues in this case. Ford's brief disregards the many authorities cited in defendant's earlier brief, which provide that "unpublished opinions of agency staff" are simply "not pertinent." *E.g.*, *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993); *see generally* Defendant's Motion for Protective Order and Brief in Support Thereof at 19-20. Ford's requests do not, as they must, seek information "that is relevant to the claim or defense of any party." RCFC 26(b)(1).

Even if the Court were to determine that the documents sought by Ford's requests may be relevant, but are only marginally so, defendant's burden and expense of responding to the requests constitute an alternative ground for entry of a protective order. Accordingly, in evaluating each of Ford's requests, the Court should weigh defendant's burden and expense of compliance against the potential relevance (if any) of the documents that Ford seeks. Where the burden outweighs the likely benefit of the proposed discovery, a protective order should issue.

Finally, if, after weighing the potential relevance of the documents against the burdens to defendant, the Court orders defendant to respond to one or more of Ford's requests, the Court

should grant defendant a four-month enlargement of time within which to make formal assertions of privilege. Ford does not oppose defendant's request for such an enlargement.

## II. ARGUMENT

Ford's brief focuses almost exclusively on its requests for the background files of Revenue Ruling 2004-109. In so doing, Ford fails to address directly many of the other requests at issue on the parties' cross-motions. However, Ford's requests are not identical, and each must be considered independently. For that reason, defendant addresses all of the requests at issue in following sections of this brief.

### A. Defendant should not be required to produce the background documents for Rev. Rul. 2004-109.

#### 1. The background documents are not pertinent to Ford's claim that ratification bonuses do not constitute wages.

Request Nos. 1, 2, and 6 seek production of the background documents for Rev. Rul. 2004-109. Ford argues that the background documents are relevant to its claims because they "can help the Court determine the proper meaning of the statute" and "the degree of deference, if any, to give" to the ruling. (Pl. Br. at 19.) This argument does not withstand scrutiny.

At the outset, purely legal issues are beyond the scope of permissible discovery. Discovery is allowed under RCFC 26(b)(1) if the information sought is either "admissible at trial" or is "reasonably calculated to lead to the discovery of admissible evidence." Evidence is "relevant" under the Rules of Evidence if it has "any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Thus, in evaluating the documents that Ford seeks, the Court must determine that there is some proposition *of fact* made

more or less likely to be true by those particular documents.

The purpose of discovery is to "allow ultimate resolution of disputed issues to be based on full and accurate understanding of true *facts*." 6 Moore's Federal Practice, § 26.02 at 26-30 (3d ed. 2008) (emphasis added). For that reason, requests like Ford's that seek information related to legal issues, instead of questions of fact, are beyond the scope of permissible discovery. *See Minnesota Citizens Concerned for Life, Inc. v. Fed. Elec. Comm'n*, 936 F. Supp. 633 (D. Minn. 1996) (denying request for discovery of administrative record where plaintiff's claim was "purely a legal question"); *R.W. ex rel. Williams v. Delaware Dep't of Educ.*, No. 05-662, 2007 WL 2213598, at *3 (D. Del. Aug 2, 2007) (". . . factual discovery is not relevant to pure legal questions . . ."). The background documents are beyond the scope of discovery on that ground alone. *See Groves v. United States*, 533 F.2d 1376, 1380 (5th Cir. 1976) (affirming order denying discovery of background documents for revenue ruling on ground that materials are not relevant to legal questions), *cert. denied*, 429 U.S. 1000.

In claiming that the background documents will "help the Court determine the proper meaning of the statute" (Pl. Br. at 19), Ford ignores the authorities cited by defendant, which hold that unpublished statements by agency staff are simply not pertinent to a court's interpretation of a statute's meaning. *See, e.g., Sidell v. Commissioner*, 225 F.3d 103, 110-111 (1st Cir. 2000); *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993); *Rosee v. Bd. of Trade of City of Chicago*, 36 F.R.D. 684, 689 (N.D. Ill 1965). This Court agreed with those authorities in its second discovery order in *Jade Trading, LLC v. United States*:

> In the instant case, production of the deliberative documents will not advance the accuracy and integrity of fact finding. Rather, the documents address solely internal government debate on matters of law – the scope and content of a regulation and the interpretation of a legal term. Both the validity of the

> regulation and the interpretation of the term 'liabilities' can be adjudicated by the court without resort to the Government's predecisional debate and opinion.

Order, *Jade Trading, LLC v. United States*, Fed Cl. No. 03-2164, at 5-6 (August 15, 2005).

Ford's argument that the background documents are necessary to determine "the degree of deference" (Pl. Br. at 19) to give to Rev. Rul. 2004-109 is also wrong. While some discovery opinions have suggested that background documents could be relevant to this task, Ford points to no occasions when courts resolving the *merits* of some disputed legal question have relied on background documents to determine the deference due to a revenue ruling. As defendant explained in its earlier brief, Ford's argument is akin to a suggestion that, in determining the weight to be given to a court's opinions, one should consider the opinions' drafts, law clerks' bench memoranda, and judges' handwritten notes. *See Carl Zeiss Stiftung v. V.E.B. Cal Zeiss, Jena*, 40 F.R.D. 318, 325-26 (D.D.C. 1966), *aff'd* 384 F.2d 989 (1967), *cert. denied* 389 U.S. 952; *United States v. American Telephone and Telegraph Co.*, 524 F. Supp. 1381, 1387 (D.D.C. 1981).

Whatever deference is given to Rev. Rul. 2004-109 will be determined by the Court after considering "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ." *Kerr-McGee Corp. v. United States*, 77 Fed. Cl. 309, 315-16 (2007) (*quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).[1] Rev. Rul. 2004-109 contains a lengthy

---

[1] Ford notes that, in a different action involving *Delphi Corp.*, where Second Circuit law governs, the government has argued that revenue rulings are entitled to deference under the standard set forth in *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). That standard is higher than the standard of deference applied by this Court. *See Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 6 (2001) (recognizing that some courts, including the Southern District of New York, have given *Chevron* deference to revenue rulings).

legal analysis, and the text of that analysis provides the proper and sufficient context for the Court to determine how much deference is appropriate. Ford counters that Rev. Rul. 2004-109 is entitled to little deference, because it was published after Ford brought the administrative proceedings that underlie its tax refund claims and is merely the IRS's litigating position. (Pl. Br. at 24.) However, Ford does not need the background documents to make this argument, as the filing dates of Ford's amended returns and the revenue ruling's publication date are a matter of record.

Whether Ford's ratification bonuses are "wages" under section 3121(a) of the Code will not turn on the minutiae of the revenue ruling's background files but will instead be determined by the Court's consideration of pertinent legal authorities. Rather than unpublished emails sent back and forth between individual IRS employees, the Court will review published judicial opinions such as *Social Security Bd. v. Nierotko*, 327 U.S. 358, 365-66 (1946) (holding that, under FICA, "services" include "not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer"), *CSX Corp. v. United States*, 518 F.3d 1328, 1333 (Fed. Cir. 2008) (holding that "as long as the payment in question is remuneration for the overall employment relationship, it is properly encompassed within the term 'wages' under section 3121(a) of FICA"), and *STA of Baltimore – ILA Container Royalty Fund v. United States*, 621 F. Supp. 1567, 1574-75 (D. Md. 1985) (holding that payments to longshoremen under collective bargaining agreement to compensate for loss of employment opportunities were "wages" because they were "part of the agreed remuneration for

---

Accordingly, barring a change in governing law, defendant does not intend to argue that Rev. Rul. 2004-109 is entitled to *Chevron* deference in this proceeding.

services performed by the employees"). The documents requested by Ford will not aid the Court's consideration of this issue.

**2. The background documents are also irrelevant to Ford's abuse-of-discretion claim.**

Rather than challenging the decision by the IRS to apply Rev. Rul. 2004-109 retroactively, which Ford now concedes was proper (Pl. Br. at 28), Ford clarifies that its abuse-of-discretion claim is one of "disparate treatment" (Pl. Br. at 25.) Ford asserts that there was no rational basis for Rev. Rul. 2004-109 to apply retroactively to its ratification bonuses but only prospectively to "any signing bonus, sign-on fee, or similar amount paid to an employee in connection with the employee's initial employment . . . provided the amount is paid under facts and circumstances that are substantially the same as in Rev. Rul. 58-145 or Rev. Rul. 74-108." Rev. Rul. 2004-109, 2004-2 C.B. 958.

Ford is essentially arguing that the IRS made an error of law with respect to some taxpayers, and Ford must therefore receive the benefit of that error as well. That argument rests on thin legal ground. Such disparate treatment claims, if they are cognizable at all, apply only in limited factual circumstances. There is not, as Ford suggests (*see* Pl. Br. at 27-28 & n.21), "a 'least common denominator' notion of federal taxation, in which the law that the Congress actually enacts can be short-circuited and disregarded any time the IRS has afforded a single taxpayer or even a group of taxpayers treatment more favorable than the law provides." *Vons*, 51 Fed. Cl. at 10 n.10. When the merits of this disparate-treatment claim are briefed, defendant will further address the fallacies in Ford's argument.

Ford contends that the background documents for Rev. Rul. 2004-109 are relevant to this disparate-treatment claim, because they "should shed light on whether the IRS lacked a rational

basis for its differential application of Rev. Rul. 2004-109." (Pl. Br. at 29.) However,, Ford misstates the nature of this Court's review on Ford's claim for disparate treatment.

It is axiomatic that "tax refund cases are *de novo* proceedings" in which the "court's determination of plaintiff's tax liability must be based on the facts and merits presented to the court and does not require (or even ordinarily permit) this court to review findings or a record previously developed at the administrative level." *Vons*, 51 Fed. Cl. at 6. Assuming, for argument's sake, that there even exists such a claim for disparate treatment under applicable law, that, too, will be a *de novo* review of the exercise of discretion by the IRS, rather than review of an administrative record under the Administrative Procedure Act, 5 U.S.C. § 706.

In *none* of the so-called disparate-treatment cases cited in Ford's brief did courts conclude that a ruling's retroactive application was inappropriate based on a review of the ruling's background files. Instead, those courts reviewed the texts of the rulings, evaluated the rulings' effects on the parties, and considered whether there was a rational basis for any differences in treatment.[2] The Court should do the same here. The Court should review the texts of the affected rulings and consider whether there is a rational basis for treating signing bonuses paid to baseball players under initial employment contracts differently from ratification bonuses paid to auto workers under collective bargaining agreements.

---

[2] *E.g.*, *Computer Sciences Corp. v. United States*, 50 Fed. Cl. 388, 393-98 (2001) (decision based on the language of challenged revenue ruling, its application to hypothetical facts, and comparison of that ruling with prior revenue ruling); *IBM v. United States*, 343 F.2d 914, 921-25 (Ct. Cl. 1965) (decision based on comparison of private letter rulings given to IBM and Remington Rand, Inc., and the fact that IBM and Remington were the only two competitors in a market to sell the devices affected by the rulings); *Exchange Parts Co. of Fort Worth v. United States*, 279 F.2d 251, 254 (Ct. Cl. 1960) (decision based solely on language of two revenue rulings); *Connecticut Railway & Lighting Co. v. United States*, 142 F. Supp. 907, 908-09 (Ct. Cl. 1956) (decision based solely on language of two revenue rulings)

*Pierson v. United States*, 428 F. Supp. 384 (D. Del. 1977), which Ford cites in support of its position, was not a disparate-treatment case at all. There, the taxpayer challenged the retroactive revocation by the IRS of a private letter ruling earlier issued to the same taxpayer. *Id.* at 386-87. The taxpayer did not claim that it had been improperly denied some benefit that the IRS gave to a different taxpayer. *Id.* Instead, the "essence of the plaintiff's abuse of discretion claim" was whether the taxpayer's original ruling request omitted or misstated facts. *Id.* at 289-90. On that basis, *Pierson* determined "that the judicial review standard of abuse of discretion will require a thorough review of the record relied upon by the Commissioner in deciding to apply the revocation retroactively." *Id.* at 390. There, the taxpayer's claims arguably put the content of the administrative record in issue. But *Pierson* provides no authority to consider the revenue ruling's background files to resolve Ford's claim.

Ford attempts to draw an analogy between its disparate-treatment claim in this case and judicial review of an IRS Appeals Officer's decision in a collection-due-process hearing. (*See* Pl. Br. at 31.) Section 6330 provides that a taxpayer may request a hearing, before the IRS Office of Appeals, to contest an IRS levy on "any property or right to property." The taxpayer may obtain "judicial review" of the outcome of that hearing by appealing "such determination to the Tax Court." § 6330(d)(1). Any such judicial review is not *de novo*, but is limited to the record created before the agency. *See Robinette v. Comm'r*, 439 F.3d 455, 460-61 (8th Cir. 2006); *Murphy v. Comm'r*, 469 F.3d 27, 31 (1st Cir. 2000).

Publication of an IRS revenue ruling is hardly the same as a collection-due-process hearing. In the hearing, the affected taxpayer participates in the creation of the administrative record that is ultimately reviewed. § 6330(c). And the Code provides for a statutory right of

appeal of such a determination to the United States Tax Court. § 6330(d)(1). In contrast, the Code provides simply that the IRS "may prescribe the extent, if any, to which any ruling . . . relating to the internal revenue laws shall be applied without retroactive effect." § 7805(b). The Code does not provide specifically for judicial review of the IRS's decision concerning retroactivity, nor does the affected taxpayer have any right to participate in any decision-making by the IRS.

More germane are cases concerning judicial review of the exercise of discretion by the IRS under section 482 of the Code to allocate income and deductions between related taxpayers Section 482 permits the Commissioner to " distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among" related taxpayers "in order to prevent evasion of taxes or clearly to reflect the income" of such taxpayers. When a taxpayer challenges a section 482 allocation in a tax-refund suit, "the proceeding is *de novo*." *Pikeville Coal Co., et al. v. United States*, 37 Fed. Cl. 304, 309 (1997). It is not "a quasi appellate review of an administrative determination." *Merck & Co. v. United States*, 24 Cl Ct. 73, 79 (1991).

Regardless, the Administrative Procedure Act cannot govern this Court's review of a decision under section 7805(b) to prescribe the retroactive effect of an IRS revenue ruling. The APA expressly precludes review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Here, the Commissioner of Internal Revenue's authority is discretionary. *See* § 7805(b)(8) ("The Secretary may prescribe the extent, if any, to which any ruling (including any judicial decision or any administrative determination other than by regulation) relating to the internal revenue laws shall be applied without retroactive effect."). Thus, the Commissioner's decision cannot be reviewed under the APA.

For the above-stated reasons, Ford's suggestion that the Court must review the revenue ruling's background files in order to resolve Ford's disparate-treatment claim is unpersuasive. However, even if the Court were to agree with Ford, *all* of the background documents for Rev. Rul. 2004-109 would not automatically be discoverable. Ford's disparate-treatment claim focuses only on the penultimate section of the ruling, entitled "Application." Under Ford's theory, *only* those background documents that concern the drafting of that section or considerations of the ruling's prospective or retroactive application would be pertinent. The remaining background documents would still be beyond the scope of discovery.

**3. The undue burden and expense of Ford's request for the background documents outweigh the probative value, if any, of the documents.**

In determining whether to enter a protective order, the Court weighs the likely benefit of the proposed discovery against defendant's burden or expense of responding to the requests. 6 Moore's Federal Practice, § 26.60[5] at 26-433 (3d ed. 2008). Given the questionable relevance of the background documents, and the months of work that must be performed to review and make formal assertions of privilege with respect to the many documents requested, defendant respectfully submits that a protective order should issue.

Ford suggests that defendant's undue-burden argument "subvert[s] the relevance inquiry" by "asking the Court to conclude that the materials should not be produced on grounds of privilege" even though defendant has not yet made any formal assertion of privilege for the withheld documents. (Pl. Br. at 21-22.) But Ford misstates defendant's argument.

It is beyond dispute that the background documents are both pre-decisional and deliberative. Thus, defendant may, if necessary, invoke the deliberative-process privilege in response to Ford's requests. But defendant is not doing so at this juncture and is not contending

that the Court should determine that the documents are privileged without requiring the privilege to be formally invoked. Defendant maintains, instead, that the burden and expense of requiring defendant to make a formal claim of privilege should weigh against the benefit, if any, of the proposed discovery to determine whether defendant must required to respond to the requests. If privilege had no potential application here, it would still be necessary to weigh the burden of production against the questionable relevance of the materials sought. Defendant's argument is one of undue burden, not privilege.

In balancing the burden and expense against the likely benefit of the proposed discovery, the Court need not make an all-or-nothing decision on these cross-motions. In resolving the present motions, the Court could determine as a preliminary matter that the background documents are likely to be irrelevant and, if warranted, revisit the question when the parties file their anticipated cross-motions for summary judgment. A full summary-judgment record, coupled with a proper affidavit under RCFC 56(f), would permit the Court to determine definitively whether consideration of the background documents would be necessary to resolve Ford's tax-refund claims.

Alternatively, the Court could require defendant to make a formal claim of privilege for some subset of the background documents. The Court could then review the subset of documents *in camera* and, in resolving defendant's privilege claims, evaluate those documents' relevance in assessing whether "the need for disclosure here outweighs the harm that would result from opening up the Government's deliberative and pre-decisional files to inspection." *Jade* Order, *supra*, at 5. After reviewing the sample documents, the Court could determine conclusively that the documents are irrelevant and that it would be fruitless to require defendant

to log the remainder. Or the Court could order defendant to log additional documents. Defendant has already prepared a privilege log for a sample of ten e-mail documents and their attachments, and subject to the availability of the Deputy Associate Chief Counsel (Procedure and Administration), defendant should be able to make a formal claim of privilege for those documents in short order.

**B. The background documents for Rev. Rul. 58-145 are not discoverable.**

Request No. 9 seeks production of the background documents for Rev. Rul. 58-145. If the Court concluded that the background documents for Rev. Rul. 2004-109 are irrelevant to Ford's claims, then the background documents for Rev. Rul. 58-145 would be irrelevant for the same reasons. However, even if the Court were to deny defendant's motion for protective order with respect to the Rev. Rul. 2004-109 documents, a protective order should still issue for the Rev. Rul. 58-145 documents.

Ford's arguments for production of the background documents for Rev. Rul. 2004-109 simply do not apply to the background documents for Rev. Rul. 58-145. Ford's abuse-of-discretion claim challenges the retroactive or prospective application of Rev. Rul. 2004-109, not Rev. Rul. 58-145. Nor does defendant ask the Court to give deference to Rev. Rul. 58-145. Based on these distinctions, the background documents for Rev. Rul. 58-145 are even more remote from Ford's claims than the background documents for Rev. Rul. 2004-109.

Rev. Rul. 58-145 could be relevant here only if its "facts and circumstances are substantially the same" as Ford's situation, and if the ruling's analysis has not been undermined by "subsequent legislation, regulations, court decisions, and revenue rulings." Treas. Reg. § 601.601(d)(2)(v)(d). To determine whether the facts are substantially the same, the Court will

compare Ford's circumstances with the situation described in the text of Rev. Rul. 58-145. IRS background documents will not add to or detract from whether the facts are substantially the same, and the opinion of IRS employees, if there are any, on that question would be irrelevant. Whether Rev. Rul. 58-145 has been undermined by subsequent authority will depend on a comparison of the analysis in the revenue ruling with any later authorities. Again, the background documents would be unhelpful.

**C. The background documents for Rev. Ruls. 69-424, 71-532, and 74-108 are irrelevant to Ford's claims.**

Request Nos. 12, 13, and 14 seek production of the background documents for Revenue Rulings 69-424, 71-532, and 74-108, respectively. Revenue Ruling 69-424 concerns tuition payments made to a college by a minor league baseball club on behalf of one of its players, pursuant to an employment contract between the player and the club. Revenue Ruling 71-532 modified Revenue Ruling 69-424 and limited its application to wages paid after January 1, 1970. And Revenue Ruling 74-108 addressed a signing bonus paid to a professional soccer player in exchange for a covenant not to compete. These published rulings have no bearing on whether payments to existing employees to ratify a collective bargaining agreement are wages. Their background files are even more unconnected to Ford's claims in this case.

**D. Defendant should not be required to produce documents concerning the interpretation or application of Rev. Rul. 58-145 and Rev. Rul. 2004-109.**

Request Nos. 10 and 11 seek all documents that related either to the "application of" or to "the IRS's and/or Treasury's interpretation, analysis, assessment, or consideration of the application of" Rev. Rul. 58-145. Request Nos. 15 and 16 seek the same documents for Rev.

Rul. 2004-109. These documents are not only irrelevant to Ford's claims, but it would also be unduly burdensome to require defendant to respond to Ford's requests

To the extent that Ford's requests seek published IRS documents that concern the interpretation or application of Rev. Rul. 58-145, such documents have either been produced in connection with other requests or Ford can locate them itself after a modicum of legal research. In addition, to the extent that Ford's requests seek unpublished IRS documents, such documents do not constitute legal authority and are therefore not relevant to Ford's tax-refund claims. In that connection, the Court has held that requests seeking documents relating to the application of revenue rulings to particular factual situations do not seek information that is "relevant or likely to lead to the discovery of admissible evidence."[3] *Vons*, 51 Fed. Cl. 1, 23-24.

Ford's requests could implicate audits or examinations of taxpayers who paid or received signing bonuses over the past fifty years; administrative claims for tax refund in which the taxation of signing bonuses were at issue; closing agreements, ruling requests, and offers in compromise involving taxpayers who paid or received signing bonuses; and litigation involving other taxpayers in which the ruling was discussed. (Decl. Shepherd, ¶ 27.) It would require a

---

[3] In its earlier brief, defendant noted that Ford's requests could be construed to seek documents created in connection with the defense of similar lawsuits by other auto manufacturers and the resolution of the administrative claims that preceded them. Defendant maintained that such documents are irrelevant, and Ford did not respond to defendant's argument. Likewise, defendant noted that Ford's requests could be construed to seek documents concerning Revenue Ruling 2008-29, 2008-24 I.R.B. 1149, which was recently published and which cited Rev. Rul. 2004-109. Defendant maintained that such documents are irrelevant, and Ford again did not respond. It therefore appears that Ford does not oppose (or has no basis to oppose) entry of a protective order which provides that defendant is not required to produce such documents.

Herculean effort for defendant to assemble and review these documents. (*See* Decl. Shepherd, ¶¶ 25-34.)

Recognizing that its discovery requests are extraordinarily broad, Ford now suggests that the requests do not mean what they say. Ford tries to rewrite its requests to seek only "interpretations or applications made at a relatively high level, which could be considered to constitute the IRS's policy with respect to application of those rulings." (Pl. Br. at 34.) But Ford's rewritten requests would provide no clarity as to when interpretations or applications either would be "at a relatively high level" or would "constitute the IRS's policy." The IRS promulgates regulations and publishes revenue rulings, which are authoritative statements of IRS policy. The IRS also publishes private letter rulings, technical advice memoranda, field service advisories, and general counsel memoranda, which are not authoritative but might also be considered to constitute IRS policy. Ford can locate such published documents itself on Lexis or Westlaw. Other than those documents, Ford's provides no guidance as to which documents it purports to seek or what sort of search it would require defendant to conduct in order to locate them.

**E. Defendant should not be required to produce documents concerning proposals to modify or rescind Rev. Rul. 58-145.**

Ford's Request No. 3 seeks documents concerning the "IRS's and/or Treasury's examination, assessment, analysis, or consideration of the modification, revision, or revocation of Rev. Rul. 58-145." In connection with that request, Ford states that it expects "that Defendant will canvas IRS or Treasury officials with knowledge of Rev. Rul. 58-145 and similar employment tax issues for cases or projects in which the modification or revocation of the ruling

likely would be considered." (Pl. Br. at 34.) Defendant has already conducted such a search. (*See* Decl. Shepherd, ¶¶ 19-24.)

Defendant identified all IRS publications that cited or considered Rev. Rul. 58-145 as authority. In addition to revenue rulings that are covered by other Ford requests, those publications include various general counsel memoranda and field service advisories, among other documents. (Decl. Shepherd, ¶ 21.) Defendant has attempted to locate background documents for each of those IRS publications in order to determine whether they contain any responsive documents. Those background documents, to the extent they even exist, would be located in off-site storage facilities or in IRS field offices. A search for such documents is underway but has not yet been concluded. (Decl. Shepherd, ¶ 22.) Defendant respectfully submits that it should be excused from continuing this search. Even if there existed any unpublished background documents for general counsel memoranda, field service advisories, or other publications that discuss Rev. Rul. 58-145, none would be authoritative and none could have any effect on the merit of Ford's claims.

Defendant also conferred with Marie Cashman of the Office of Chief Counsel, Internal Revenue Service, and Kevin Knopf of the Office of Tax Policy, Department of Treasury, in an effort to determine whether there have been any additional projects that may have considered whether to modify or revoke Revenue Ruling 2004-109. (Decl. Shepherd, ¶ 24.) Ms. Cashman and Mr. Knopf are the employees at the Internal Revenue Service and Department of Treasury respectively who would be most likely to have knowledge of any such projects. Neither was aware of any projects other than those that defendant already identified.[4]

---

[4] In further meet-and-confer discussions subsequent to the filing of Ford's motion to compel discovery, Ford's counsel asked defendant to confer with additional IRS employees in an

### F. Defendant does not oppose an order precluding it from using documents not produced, so long as the order applies only to non-published documents out of the public domain.

As the alternative to Ford's motion to compel discovery, Ford requests "that the Court issue an order precluding Defendant from using in this case any documents within the scope of the Requests." (Pl. Br. at 5.) In the abstract, defendant does not oppose Ford's request. Defendant does not intend to use any non-published IRS documents when the Court addresses the merits of Ford's claims. However, Ford's requests are exceedingly broad, and it is possible that defendant would rely on published authorities (whether authored by the IRS, or published by a court, in a law journal, or elsewhere) that technically could be responsive to Ford's requests, if Ford's requests are broadly construed. Thus, any preclusion order should be limited to non-published IRS or Department of Treasury documents that are out of the public domain and that could not be located during library research in the ordinary course.

## IV. CONCLUSION

For the reasons stated above and in defendant's earlier brief, defendant respectfully requests that the Court enter a protective order excusing it from producing documents in response to the requests at issue or, in the alternative, a four-month enlargement of time for making formal assertions of privilege.

---

effort to determine whether they know of any additional projects of which Ms. Cashman or Mr. Knopf may not have been aware. Defendant has agreed to do so in an attempt to narrow the scope of the parties' discovery dispute, not because defendant believes that any such documents would be discoverable. Defendant believes that a protective order should issue to excuse it from continuing its search.

Respectfully submitted,

s/Jason Bergmann

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section

s/Steven I. Frahm

Of Counsel

September 8, 2008