# In the United States Court of Federal Claims

No. 07-658T
(Filed: October 2, 2008)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | \* | |
| **FORD MOTOR COMPANY,** | \* | RCFC 26; Discovery; Relevance; |
| | \* | Burdensomeness; Federal |
| Plaintiff, | \* | Insurance Contributions Act, |
| | \* | 26 U.S.C. § 3101 et seq.; Revenue |
| v. | \* | Rulings. |
| | \* | |
| **THE UNITED STATES,** | \* | |
| | \* | |
| Defendant. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \*

Thomas D. Johnston, Shearman & Sterling, LLP, 801 Pennsylvania Avenue, NW, Washington, DC, for Plaintiff.

Jason Bergmann, U.S. Department of Justice, Tax Division, P.O. Box 26, Ben Franklin Station, Washington, DC, for Defendant.

---

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR PROTECTIVE ORDER
AND GRANTING PLAINTIFF'S CROSS-MOTION TO COMPEL
PRODUCTION OF DOCUMENTS OR PROPER ASSERTION OF PRIVILEGE**

---

**WILLIAMS,** Judge

In this action, Ford Motor Company (Ford) seeks a refund of $44,292,652 in taxes paid pursuant to the Federal Insurance Contributions Act, 26 U.S.C. § 3101 et seq. (FICA), which imposes an excise tax on wages.

The taxes at issue were imposed on payments Ford made to its employees to induce them to ratify collective bargaining agreements (CBAs). Ford contends that because the ratification inducement payments were not conditioned on the performance of services and had no relationship to services, these payments did not constitute wages within the meaning of FICA. Thus, squarely at issue in this case is the interpretation of the term "wages" under FICA.

This matter comes before the Court on Defendant's Motion for Protective Order and Plaintiff's Cross-Motion to Compel Production of Documents or Proper Assertion of Privilege. In the instant discovery dispute, Plaintiff is seeking documents relating to two revenue rulings which it claims illuminate the meaning of the statutory term "wages" -- Revenue Ruling 58-145, and the ruling revoking it, Revenue Ruling 2004-109. Because the Court concludes that the requested documents are relevant for discovery purposes, the Court denies Defendant's Motion for Protective Order and grants Plaintiff's Motion to Compel.[1]

**Background**

Revenue Ruling 58-145 concluded that signing bonuses paid to baseball players were not wages for income tax withholding purposes because they were not predicated on the performance of services or otherwise contingent on continuing employment. Rev. Rul. 58-145, 1958-1 C.B. 360. Revenue Ruling 58-145 remained the published opinion of the Internal Revenue Service (IRS) on contract signing bonuses for over 45 years. However, in 2004, the IRS issued Revenue Ruling 2004-109 during Ford's pursuit of its administrative claims underlying the instant refund action. Revenue Ruling 2004-109 involved two fact situations -- first, the baseball player's signing bonus considered in Revenue Ruling 58-145 and second, the facts of Ford's case, i.e., a bonus paid to employees to induce ratification of a CBA, where all employees received the same bonus amount on the CBA's effective date. Rev. Rul. 2004-109, 2004-2 C.B. 958. Revenue Ruling 2004-109 expressly revoked Revenue Rule 58-145 stating that the latter ruling had erred in its analysis by failing "to apply the correct definition of wages and to consider whether a bonus was paid in connection with establishing the employer-employee relationship." Id. Reexamining this matter, Revenue Ruling 2004-109 found that "[e]mployment encompasses the establishment, maintenance, furtherance, alteration or cancellation of the employer-employee relationship or any of the terms and conditions thereof," and that ratification bonus payments were compensation paid as remuneration for employment and were received as part of a bargain that established the terms and conditions of employment under the CBA. Id.

The IRS applied the change of position in Revenue Ruling 2004-109 prospectively to employees who were entering their initial employment. However, the Service also applied this Revenue Ruling retroactively to Ford because the CBA ratification did not entail initial employment.

Plaintiff not only seeks a refund of the taxes imposed on the CBA ratification bonuses, but also contends that Revenue Ruling 2004-109 has been erroneously applied here. Ford claims that the IRS issued Revenue Ruling 2004-109 only after other automobile parts manufacturers had filed similarly significant refund claims and after Congress had twice declined to amend the Internal Revenue Code to subject all contract signing bonuses to employment taxes. Further, Ford contends that the IRS' partially retroactive change of position during Ford's pursuit of its refund claims irrationally discriminates against Ford.

---

[1] The Court directs Plaintiff to narrow its discovery requests in accordance with representations in its papers. Pl.'s Mot. to Compel at 34.

2

## Discussion

Defendant seeks a protective order with respect to discovery of all documents relating to the revenue rulings. Under Rule 26(c) of the Rules of the United States Court of Federal Claims (RCFC), the party moving for a protective order must show good cause for its issuance. The requested documents concern the IRS' interpretation and application of the revenue rulings and the IRS' consideration of whether to modify or rescind a ruling. Defendant avers that the requests seek predecisional, deliberative documents which are not relevant.

## Relevance

When determining questions of relevance, the Court looks to RCFC 26(b)(1), which provides that, unless limited by court order, the parties may obtain discovery of any matter relevant to the claim or defense of a party that is not privileged. Jade Trading, LLC v. United States, 65 Fed. Cl. 487, 491 (2005). For the purposes of Rule 26, relevance is broadly construed. Katz v. Batavia Marine & Sporting Supplies, 984 F.2d 422, 424 (Fed. Cir. 1993). At this juncture, because the Court has not seen the documents at issue and cannot assess relevance with precision, the Court follows the approach sanctioned by the Supreme Court in United States v. Reynolds, 345 U.S. 1, 10-11 (1953), and assesses whether the Plaintiffs have "shown probable cause for discovery of the documents" without considering the applicability of privilege. Jade Trading, 65 Fed. Cl. at 491.

Defendant contends that the documents are not relevant because the issue of whether the ratification bonuses are wages raises a question of law exclusively for the Court to decide. In particular, Defendant posits that the "legal authority bearing on the scope of [the term] wages does not include unpublished documents that "were authored by individual IRS employees which do not constitute official interpretation of the IRS," and were not created with the objective of guiding the public. Def.'s Mot. for Protective Order at 5.

Plaintiff counters that because the documents concern the development, promulgation, interpretation and application of the two revenue rulings, they will help the Court determine the meaning of wages in the context of this case. Published revenue rulings such as those implicated in this case can be cited as precedent and apply to all taxpayers. See 26 C.F.R. § 601.601(d)(2)(v)(d) (noting that revenue rulings are "precedents to be used in the disposition of other cases and may be cited and relied upon for that purpose"). Plaintiff contends that the IRS has published conflicting precedential guidance on the standard for determining whether contract signing and ratification bonuses are wages for FICA purposes. Revenue Ruling 58-145 provided that whether a contract signing bonus constitutes wages depends on whether the bonus is contingent on the performance of services or continued employment. Revenue Ruling 2004-109 revoked this interpretation by providing that all payments made by an employer to an employee are wages, unless the employee provides separate and adequate consideration for the payments that is not dependent on the employer-employee relationship. In determining whether Ford's ratification bonuses are wages, the Court will be required to determine how much weight or deference both rulings should receive. As such, documents illuminating the IRS' own assessment of these rulings are relevant for discovery

purposes.

In a similar context in Jade Trading, this Court found that the documents relied upon by the IRS in formulating a regulation and in revealing the interpretation of a statutory term could illuminate the agency's interpretation of the law at the time of the transaction at issue and were relevant for discovery purposes. 65 Fed. Cl. at 492, 493. The Court expressly rejected the same argument Defendant lodges here, i.e., that because the determination of the validity of the regulation is purely a legal determination for the Court to make, the documents underlying the promulgation of the regulation are not relevant for the Court's consideration. Instead, in Jade Trading, this Court reasoned that "in the context of evaluating or applying [a Treasury Regulation], the Court must ascertain the degree of deference to afford it, as well as the reasonableness of the IRS' interpretation of it." Id. at 492. As this Court in Jade Trading recognized:

> The Marriott Court found that documents relating to IRS' ongoing consideration and interpretation of a revenue ruling were relevant to the issue of whether the IRS had abandoned a longstanding interpretation of [a statute] recognizing that 'conflicting interpretations of the law might constitute an important framework for the matters at issue.'

Id. at 493 (quoting Marriott Int'l Resorts v. United States, 61 Fed. Cl. 411, 416 (2004)); see also Vons Cos. v. United States, 51 Fed. Cl. 1, 21 (2001). Further, as this Court recognized in Jade Trading, documents "relating to IRS' construction of [the statutory term at issue] would potentially be relevant to the extent they embody the IRS' interpretations of this term at any point in time pertinent to this action." 65 Fed. Cl. at 492. Here, as in Jade Trading and Marriott, Plaintiff alleges that Defendant's interpretation of a statutory term contradicts its historic constructions of that term. As such, it is appropriate for the Court to permit discovery of documents illuminating Defendant's interpretation.

In addition, Plaintiff contends that some requested documents constitute the "administrative record" or the background of IRS' exercise of discretion in issuing Revenue Rule 2004-109 and thus must be considered by the Court in assessing whether that exercise had a rational basis. Pl.'s Cross Mot. to Compel Prod. at 4. Documents that would constitute a de facto administrative record for Revenue Ruling 2004-109 are highly relevant and must be produced in this litigation. To the extent that any of the documents comprising such "administrative record" are subject to a privilege, Defendant shall prepare a proper privilege log and invoke any pertinent privileges in accordance with law. See Marriott Int'l Resorts v. United States, 437 F.3d 1302 (Fed. Cir. 2006).

**Burdensomeness**

Defendant contends that it has thus far identified approximately 2600 pages of potentially responsive documents and approximately 852 potentially responsive emails (with 223 electronic documents attached). Defendant claims "the extreme burden and expense of assembling, reviewing

and making claims of privilege for the volume of requested documents constitutes an additional reason for the Court to enter a protective order." Def.'s Mot. for Protective Order at 6. In particular, Defendant asserts:

> Ford's requests purport to require the IRS to comb through fifty years of history for all occasions where it interpreted, applied, or considered whether to modify or revoke a 1958 revenue ruling. A Herculean effort would be necessary to comply. And, while Ford's other requests are less expansive, they would still require defendant to spend months assembling, reviewing, and redacting documents, drafting privilege logs, and preparing declarations making formal assertions of privilege. These burdens dwarf the potential relevance (if any) of the discovery that Ford seeks.

Id.

Pursuant to RCFC 26(b)(2)(C)(iii), the Court may limit discovery if:

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

RCFC 26(b)(2)(C); see also, A-G Innovations, Inc. v. United States, 82 Fed. Cl. 69, 77-78 (2008); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2008.1 (2d ed. 1994) (explaining that when deciding whether discovery should be limited, courts have taken a "common-sense approach to both the importance of the case and the propriety of undertaking the expense of requested discovery without treating the factors spelled out . . . [in FRCP 26] as talismans").

In deciding whether to limit discovery, a trial court should "consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Rowlin v. Alabama, 200 F.R.D. 459, 461 (M.D. Ala. 2001)).

As the Court of Federal Claims has explained, in order to prevail on an objection to allegedly burdensome discovery:

> the objecting party must do more than "simply intone [the] familiar litany that the [discovery sought is] burdensome, oppressive, or overly broad." The objecting party bears the burden of demonstrating

5

> "specifically how, despite the broad and liberal construction of afforded [sic] the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."

Pacific Gas & Elec. Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005) (quoting Lamoureux v. Genesis Pharmacy Servs., Inc., 226 F.R.D. 154, 158 (D. Conn. 2004) (internal citations and quotations omitted)).

Here, the Court has determined that the requested discovery is relevant and potentially necessary to the just resolution of this action. The number of documents identified to date, while large, does not pose an undue burden here, given the importance and novelty of the issue presented, the legal principle and amount at stake, and the Plaintiff's willingness to narrow its requests. In this latter vein, Plaintiff represented:

> If the Defendant were willing to admit that at least some of the materials sought by Ford are relevant, Ford could continue to work with Defendant to narrow the scope of requests 10, 11, 15, and 16. Ford certainly does not want Defendant to look for every revenue agent's consideration of contract signing or ratification of bonuses over the last 50 years. Ford does want to know about any interpretations or applications of Rev. Rul. 58-145 or Rev. Rul. 2004-109, made at a relatively high level, which could be considered to constitute the IRS's policy with respect to the application of those rulings. For example, if the IRS regularly applied Rev. Rul. 58-145 to contracts that were *not* for initial employment, or to bonuses paid to persons *other* than baseball players, that would be relevant to the Court's determination of Ford's claims in this case.

Pl.'s Mot. to Compel at 34. Now that the Court has determined the requested information to be relevant for discovery purposes, it takes Plaintiff at its word and directs Ford to narrow its requests consistent with its representation.

As an alternative position, Defendant requested a four-month enlargement of time in which to make formal assertions of privilege in response to Ford's requests. Plaintiff does not oppose this enlargement. As such, the Court grants Defendant's request.

## Conclusion

1. Defendant's motion for protective order is **denied**.

2. Plaintiff's cross-motion to compel is **granted**. However, as Plaintiff suggested,

counsel for Plaintiff shall confer with counsel for Defendant and narrow Requests for Production Nos. 10, 11, 15 and 16. Plaintiff shall serve the narrowed requests by **October 15, 2008.**

3. Defendant's request for an enlargement of time within which to lodge any privilege claims is **granted**. Defendant shall file its privilege logs and appropriate declarations invoking the privilege no later than **February 3, 2009**. See Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302 (Fed. Cir. 2006).

      s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**